# Appendix 3B

USCA4 Appeal: 20-8    Doc: 2-5    Filed: 05/22/2020    Pg: 2 of 75

**Case No.**

$$\rule{40em}{1.5pt}$$

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

_____

**IN RE COREY JOHNSON,**

**Movant**

_____

**APPLICATION FOR AUTHORIZATION TO FILE
A SUCCESSIVE MOTION UNDER 28 U.S.C. § 2255
PURSUANT TO _JOHNSON V. UNITED STATES_, 135 S. CT. 2551 (2015)**

_____

Donald P. Salzman
Skadden Arps Slate Meagher & Flom, LLP
1440 New York Ave. NW
Washington, DC 20005
(202) 371-7983
donald.salzman@skadden.com

*Attorney for Petitioner*

502a

Movant, Corey Johnson,[1] through undersigned counsel, respectfully asks this Court, pursuant to 28 U.S.C. § 2244(b)(3), to authorize him to file the attached successive Motion to Vacate Conviction Under 28 U.S.C. § 2255(h)(2) Pursuant to *Johnson v. United States,* 135 S. Ct. 2551 (2015) (Appendix 1) (hereafter "Application"). Mr. Johnson makes this request so that he may immediately assert a challenge to his convictions for using or carrying a firearm during and in relation to a "crime of violence," in violation of 18 U.S.C. § 924(c).

On May 20, 2016, Corey Johnson filed a similar Application for Authorization to File a Successive Motion Under 28 U.S.C. § 2255 Pursuant to *Johnson v. United States*, 135 S. Ct. 2551 (2015) (hereafter "Prior Application"), which was denied by this Court by an Order dated June 6, 2016. Order Denying Motion for Authorization to File Successive Habeas Petitions, *In re Johnson*, No. 16-4 (4th Cir. June 6, 2016). However, as explained below, since Corey Johnson's Application was denied, other panels of this Court have granted numerous applications for authorization to file successive § 2255 motions in cases involving 18 U.S.C. § 924(c), including a recent order involving predicate act violent felony convictions for attempted murder and assault with intent to murder. Moreover, after issuing its June 6, 2016 Order in Corey Johnson's case, another panel of this

---

[1] Mr. Johnson's actual first name is "Corey" but it was misspelled as "Cory" in his indictment, in various pleadings filed before this Court, and in the subsequent decisions following his convictions. Mr. Johnson is using the correct spelling of his name in this pleading.

Court issued a lengthy memorandum opinion and order granting an application to file a successive § 2255 motion in a case involving 18 U.S.C. § 16(b), a statute with a mirror image residual clause to section 924(c). Because these recent decisions have authorized the filing of successive § 2255 motions in cases involving the identical statutory residual force clause that forms the basis of Corey Johnson's § 924(c) convictions, Mr. Johnson respectfully requests that the Court grant his Application.

Specifically, Corey Johnson seeks to challenge his § 924(c) convictions under *Johnson v. United States,* 135 S. Ct. 2551 (2015), and *Welch v. United States,* 136 S. Ct. 1257 (2016). *Johnson* held that the residual clause of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), is unconstitutionally vague. From *Johnson,* it follows that 18 U.S.C. § 924(c)(3)(B), which defines the "crime of violence" element for purposes of a § 924(c) offense, is also unconstitutionally vague. Thus, after *Johnson,* Corey Johnson's § 924(c) convictions cannot be sustained.

In *Welch,* the Supreme Court expressly held that *Johnson* applies retroactively to cases on collateral review such as Corey Johnson's. *Welch,* 136 S. Ct. at 1265. Further, Corey Johnson has filed this application and the attached § 2255 motion within one year after the Supreme Court issued its decision in *Johnson* on June 26, 2015.

3

504a

As explained below, Mr. Johnson can make the *prima facie* showing required by 28 U.S.C. §§ 2244(b)(3) and 2255(h)(2). This Court therefore should allow the district court an opportunity to consider the merits of his application.

## INTRODUCTION

On February 3, 1993, Corey Johnson was convicted of twenty-seven counts in the above-captioned indictment, including five counts of using or carrying a firearm during and in relation to a crime of violence or a drug trafficking crime in violation of 18 U.S.C. § 924(c) and seven counts of intentional killings committed in the course of a continuing criminal enterprise in violation of 21 U.S.C. § 848(e)(1), each of which was a separate crime of violence. He was also convicted of eleven additional counts of murder, maiming, or assault in the course of a racketeering influenced and corrupt organizations activity in violation of 18 U.S.C § 1959(a), which were also separate crimes of violence. The jury subsequently sentenced Mr. Johnson to seven separate death sentences as a result of his convictions for crimes of violence.

Post-*Johnson,* however, intentional killings under 21 U.S.C. § 848(e)(1)(A) do not qualify as a categorical "crime of violence" within the meaning of § 924(c), nor do murders, maiming, and assaults under 18 U.S.C. 1959(a). This is explained in much greater detail in Part I of Mr. Johnson's proposed successive § 2255 motion. Because § 848 murder is not a "crime of violence" within the

4

constitutionally valid construction of § 924(c), Mr. Johnson is innocent of the § 924(c) offenses.  As explained in Part III of his proposed successive § 2255 motion, Corey Johnson's death sentences are similarly void because they were certainly influenced by his improper conviction for multiple § 924(c) offenses, and he must be resentenced by a jury for those convictions.

As explained in detail in Part IA of Mr. Johnson's proposed § 2255 motion, the relevant portion of § 924(c) includes two alternative clauses defining a "crime of violence."  The first, § 924(c)(3)(A), is commonly referred to as the "force" or "elements" clause.  It applies to any felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another[.]"  The second, § 924(c)(3)(B), is commonly referred to as the residual clause.  It applies to any felony "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."

This second definition, the residual clause, is indistinguishable in all material respects from the residual clause of the ACCA that the Supreme Court in *Johnson* deemed unconstitutionally vague.  *See Johnson,* 135 S. Ct. at 2557.  Courts have already invalidated a residual clause identical to that in § 924(c).  The residual clause of 18 U.S.C § 16(b) is the mirror image of the residual clause in § 924(c), and the Fifth, Seventh and Ninth Circuits have all struck it down following

5

*Johnson.  See United States v. Vivas-Ceja,* 808 F.3d 719 (7th Cir. 2015); *Dimaya v. Lynch,* 803 F.3d 1110 (9th Cir. 2015).

Still further, a number of district courts have considered § 924(c)'s residual clause itself and have found it void for vagueness in light of *Johnson.  See United States v. Bundy*, No. 3:16-cr-00051-BR, 2016 U.S. Dist. LEXIS 75812 (D. Or. June 10, 2016); *United States v. Smith*, No. 2:11-cr-00058-JAD-CWH, 2016 U.S. Dist. LEXIS 65543 (D. Nev. May 18, 2016); *United States v. Luong*, No. 2:99-00433 WBS, 2016 U.S. Dist. LEXIS 53151 (E.D. Cal. April 20, 2016); *United States v. Lattanaphom,* __ F. Supp. 3d __, 2016 WL 393545 (E.D. Cal. Feb. 2, 2016); *United States v. Edmundson,* __ F. Supp. 3d __, 2015 WL 9311983 (D. Md. Dec. 30, 2015).  These cases compel the same result in Mr. Johnson's case. Because § 924(c)'s residual clause is void for vagueness, it cannot constitutionally define a "crime of violence" for purposes of a § 924(c) conviction.

Furthermore, as explained in detail in Part IIB of Mr. Johnson's successive § 2255 motion, intentional killing under 21 U.S.C. § 848(e)(1)(A) and homicide, maiming, and assault under 18 U.S.C. § 1959(a) do not categorically qualify as "crimes of violence" under the remaining force or elements clause because they can be committed without the use of force, much less violent physical force.  A defendant can also be convicted of homicide pursuant to § 848(e)(1)(A) if the intentional killing is actually perpetrated by another person, if the defendant

6

"commands, induces, procures, or causes" the killing.  And under § 1959(a), a defendant can be convicted of murder committed by an accomplice even if the defendant did not participate in the killing under a felony murder principle, or can be convicted of felony murder, maiming, or assault during the commission of a felony that itself did not require the use of force.[2]  Thus, homicide under § 848 and intentional killing, maiming, and assault under § 1959(a) do not require as essential elements the use, attempted use, or threatened use of physical force by the defendant.

Because § 924(c)'s residual clause is unconstitutional, Mr. Johnson's § 924(c) convictions and his death sentences pursuant to § 848(e)(1)(A): (1) violate due process; (2) violate the laws of the United States and result in a fundamental miscarriage of justice; and (3) were entered in excess of the district court's jurisdiction.  However, because Mr. Johnson previously pursued a collateral attack on his conviction and sentence under 28 U.S.C. § 2255, he may not pursue relief based upon his *Johnson* claim in the district court without this Court's authorization.

Corey Johnson urges this Court to authorize him to file the attached successive § 2255 motion asserting a *Johnson* claim.  Such authorization is appropriate when the petitioner makes a "*prima facie* showing" that his proposed

---

[2] *See, e.g. United States v. Gardner*, No. 14-4533 (4th Cir. May 18, 2016).

claim relies on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h)(2).

After *Welch*, issued on April 18, 2016, and *In re Hubbard*, No. 15-276, 2016 U.S. App. LEXIS 10348 (4th Cir. June 8, 2016), there can be no dispute that *Johnson* announced a new substantive rule of constitutional law that applies retroactively to cases on collateral review. Mr. Johnson has made the required *prima facie* showing that he should be authorized to pursue a successive § 2255 motion.

## PROCEDURAL HISTORY

### A.    Conviction and Sentencing.

Mr. Johnson and six co-defendants, Richard Tipton, James H. Roane, Jr., Vernon L. Thomas, Jerry R. Gaiters, Sterling Hardy, and Sandra Reavis, were jointly charged in this Court with conspiracy to possess with intent to distribute more than 50 grams of cocaine base under 21 U.S.C. § 841(a)(1) (Count 1). In addition, some but not all of the defendants were separately charged with: (i) engaging in a continuing criminal enterprise (hereafter "CCE") in violation of 21 U.S.C. § 848 (Count 2); (ii) while engaged in a CCE, knowingly, intentionally and unlawfully killing nine separately named individuals in violation of 21 U.S.C. § 848(e)(1)(A) (Counts 3, 5, 8, 11, 17, 18, 19, 24, and 25); (iii) knowingly,

8

509a

intentionally, and unlawfully causing the murder of ten separately named individuals as part of an enterprise engaged in racketeering activity in violation of 18 U.S.C. § 1959 (Counts 4, 7, 10, 13, 14, 21, 22, 23, 27, and 28); (iv) using or carrying a firearm during and in relation to a crime of violence or a drug trafficking crime in in violation of 18 U.S.C. § 924(c) (Count 6, 9, 12, 15, 20, and 26); (v) knowingly, intentionally, and unlawfully maiming two separately named individuals in violation of 18 U.S.C. § 1959 (Counts 29 and 30); (vi) knowingly, intentionally, and unlawfully committing assault resulting in serious bodily injury to an individual in violation of 18 U.S.C. § 1959 (Count 16); (vii) knowingly and intentionally distributing cocaine base in violation of 21 U.S.C. § 841(a)(1) (Count 31); and (viii) knowingly and intentionally possessing with intent to distribute more than 50 grams of cocaine base in violation of 21 U.S.C. § 841(a)(1) (Counts 32 and 33).  The government sought the death penalty against Mr. Tipton, Mr. Johnson, and Mr. Roane pursuant to 21 U.S.C. § 848(e)(1) and the jury returned death verdicts against all three men.[3]  Mr. Johnson, specifically, was sentenced to death by the jury on seven counts for the § 848 offenses.

---

[3] The Presentence Report prepared in Mr. Johnson's case is attached as Appendix 2.  The sentencing phase transcripts from his case are attached as Appendices 3A to 3H.

9

### B.    Direct Appeal.

Mr. Johnson timely appealed to the Fourth Circuit, raising various issues relating to the guilt and penalty phases of his trial.  The court of appeals rejected all of his arguments and affirmed his convictions and death sentences.  *United States v. Tipton et. al.*, 90 F.3d 861 (4th Cir. 1996).  The United States Supreme Court denied certiorari.  *Roane v. United States,* 520 U.S. 1253 (1997).

### C.    Previous § 2255 Motion.

Following the denial of certiorari, Mr. Johnson timely filed a motion for collateral relief under 28 U.S.C. § 2255 and later filed several amendments to that motion.[4]  He asserted in the motion and in the amendments to the motion the following claims: (i) error during the jury selection process on a variety of grounds; (ii) prosecutorial misconduct in violation of Mr. Johnson's due process rights on numerous grounds during the jury selection and during the guilt and sentencing phases of the trial; (iii) insufficient evidence to prove Mr. Johnson was a supervisor in a CCE conspiracy; (iv) ineffective assistance of counsel by his trial and appellate attorneys on a variety of grounds during the guilt and sentencing phases of the trial; and (v) constitutional challenges to his death sentences on

---

[4] Mr. Johnson's initial § 2255 motion was docketed under criminal case number 3:92CR68 and civil case number 3:97CV895.  Mr. Johnson's original § 2255 motion and three amended motions he filed are attached as Appendices 4A to 4D.

various grounds.  The district court denied relief.  *United States v. Roane*, No. 3:92CR68 (E.D. Va. May 1, 2003).

The Fourth Circuit affirmed the denial of relief.  *Roane v. United States,* 378 F.3d 382 (4th Cir. 2004).  The United States Supreme Court denied certiorari.  *Johnson v. United States,* 546 U.S. 810 (2005).

### D.    Previous Application for Authorization to File Successive § 2255 Motion.

As noted above, on June 6, 2016, this Court denied Mr. Johnson's Prior Application.

### E.    *Johnson v. United States.*

On June 26, 2015, the Supreme Court issued its decision in *Johnson,* 135 S. Ct. 2551.  With *Johnson,* the Supreme Court overruled *Sykes v. United States,* 131 S. Ct. 2267 (2011), and *James v. United States,* 550 U.S. 192 (2007), finding ACCA's residual clause too vague to provide adequate notice under the Due Process Clause of the Fifth Amendment.  Specifically, *Johnson* held that "the indeterminacy of the wide-ranging inquiry required by the residual clause both denies fair notice and invites arbitrary enforcement by judges," therefore "[i]ncreasing a defendant's sentence under the clause denies due process of law." 135 S. Ct. at 2557.

**F.**    *Welch v. United States.*

After *Johnson* was decided, federal prisoners throughout the country sought to challenge their ACCA-enhanced sentences, as well as convictions and sentences imposed under materially indistinguishable residual clauses, such as that in 18 U.S.C. § 924(c).  This led to conflict over whether *Johnson* announced a new substantive rule, which would apply retroactively to cases on collateral review, or whether it only announced a new procedural rule, which would not necessarily apply retroactively.

On April 18, 2016, the Supreme Court resolved the issue, finding *Johnson*'s rule substantive and thus applicable retroactively to cases on collateral review. *Welch,* 136 S. Ct. at 1265; *see Hubbard*, 2016 U.S. App. LEXIS 10348, at *22 (authorizing filing of successive § 2255 motion pursuant to *Johnson* and *Welch*); *see also* Order Granting Motion for Authorization to File Successive Habeas Application, *In re Clark*, No. 16-941 (4th Cir. June 16, 2016); *see* cases cited *infra* note 6.  After *Johnson* and *Welch,* Mr. Johnson's § 924(c) convictions cannot be sustained, for the reasons stated in detail in his attached § 2255 motion.  Mr. Johnson again requests authorization from this Court to file a successive § 2255 motion in the district court.

## LEGAL STANDARDS

This Court should grant Mr. Johnson's application for authorization to file a successive § 2255 motion in the district court because his motion is predicated on *Johnson,* and the Supreme Court expressly held in *Welch* that *Johnson* announced a new substantive rule that applies retroactively to cases on collateral review. Indeed, this Court's recent decision in *Hubbard* confirms that the Supreme Court held exactly as such.

**A.      Mr. Johnson can make a sufficient showing of possible merit to warrant fuller exploration by the district court.**

The gatekeeping provision of the Antiterrorism and Effective Death Penalty Act of 1996 allows a federal prisoner to apply for leave to file a successive § 2255 motion based on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable."  28 U.S.C. § 2255(h)(2).  Under this provision, a federal prisoner must make a *prima facie* showing that the motion to be filed is based on: (1) a new rule of constitutional law; (2) that was previously unavailable; (3) and has been made retroactive by the Supreme Court to cases on collateral review.  *See Tyler v. Cain,* 533 U.S. 656, 662 (2001).

This Court has specified that, "*prima facie* showing" of the three requirements to merit the filing of a successor petition under § 2255(h)(2) means "simply a sufficient showing of possible merit to warrant a fuller exploration by

13

the district court." *In re Williams*, 330 F.3d 277, 281 (4th Cir. 2003) (citation omitted). To be clear, the "showing of possible merit" does not refer to the merits of the claims asserted in the petition. Rather, this standard only "relates to the possibility" that the gatekeeping "requirements for the filing of a second or successive petition" under § 2255(h)(2) will be satisfied. *Id*. at 282. In other words, an applicant need only make a prima facie showing that the § 2255(h)(2) standard is met—not a prima facie showing that his claim has merit.

Just two days after Mr. Johnson's Prior Application was denied, this Court reiterated in a case involving 18 U.S.C § 16(b) (a statute with a residual clause identical to 28 U.S.C. § 924(c)), that while this determination "'may entail a cursory glance at the merits . . . the focus of the inquiry must always remain on the [§ 2255(h)(2)] standards.'" *Hubbard*, 2016 U.S. App. LEXIS 10348, at *12 (quoting *Williams*, 330 F.3d at 281. Rejecting the government's "merits" arguments as premature given that the "cursory glance" standard poses "an almost insurmountable hurdle" for the government at the successive application authorization stage, the Court granted the petitioner's application to file a successive habeas petition. *Hubbard*, 2016 U.S. App. LEXIS 10348, at *12 (internal quotation marks omitted) (citation omitted).[5] In addition, on June 16,

---

[5] The *Hubbard* court also rejected the government's claim that the rule in *Johnson* does not apply to § 924(c) even though its decision turned on § 16(b), noting that the language of the residual clause in both statutes is "identical," 2016 U.S. App.

14

2016, this Court issued a similar grant in a case involving the application of §

924(c) to predicate crimes of attempted murder and assault with intent to murder.

Order Granting Motion for Authorization to File Successive Habeas Application,

*In re Clark*, No. 16-941 (4th Cir. June 16, 2016).  Based on these recent decisions,

Mr. Johnson easily satisfies the gatekeeping requirements of § 2255(h)(2).

Accordingly, for the reasons explained below, Corey Johnson respectfully requests

that the Court grant his Application because his § 924(c) convictions and the

procedural posture of his case are indistinguishable from the cases in which the

Court recently granted applications.

### 1. *Johnson* **announced a new rule of constitutional law that was previously unavailable.**

First, the Supreme Court's decision in *Johnson* announced a new rule.  A

case announces a new rule if its result was not "*dictated* by precedent existing at

the time the defendant's conviction became final."  *Chaidez v. United States,* 133

S. Ct. 1103, 1107 (2013) (quoting *Teague v. Lane,* 489 U.S. 288, 301 (1989)).  In

*Johnson,* the Supreme Court expressly overruled its prior decisions in *Sykes* and

*James*, which had held that ACCA's residual clause was not void for vagueness.

*See Johnson,* 135 S. Ct. at 2563 ("Our contrary holdings in *James* and *Sykes* are

overruled.").  As the Supreme Court has made clear, "[t]he explicit overruling of

LEXIS 10348, at *9 n.3, and stating that the Court has "previously treated
precedent respecting one as controlling analysis of the other."  *Id*. (citing *United
States v. Fuertes*, 805 F.3d 485, 500 (4th Cir. 2015).

an earlier holding no doubt creates a new rule." *Whorton v. Bockting,* 549 U.S. 406, 416 (2007) (citation omitted). Further, the Supreme Court has put to rest any possible dispute on this front. In *Welch v. United States,* announced on April 18, 2016, the Court proclaimed: "It is undisputed that *Johnson* announced a new rule." 136 S. Ct. at 1264. *Welch* also put to rest any dispute that *Johnson'*s rule is one of "constitutional law," or that this rule was previously unavailable to Mr. Johnson. *See id.; see also Hubbard*, 2016 U.S. App. LEXIS 10348, at *11-12.

### 2. *Johnson* is retroactive, and the Supreme Court has "made" it retroactive to cases on collateral review.

*Welch* also answers the final question this Court must consider before authorizing Mr. Johnson to file his successive § 2255 motion. In *Welch,* the Supreme Court explained that *Johnson*'s rule is substantive, because that rule means the residual clause "can no longer mandate or authorize any sentence. *Johnson* establishes, in other words, that 'even the use of impeccable factfinding procedures could not legitimate' a sentence based on that clause." 136 S. Ct. at 1265 (quoting *United States* v. *United States Coin & Currency*, 401 U. S. 715, 724 (1971)). As such, the Court held, "*Johnson* is thus a substantive decision and so has retroactive effect under *Teague* in cases on collateral review." *Id.*; *accord Woods,* 805 F.3d at 1154.

To be clear, even though *Johnson* was a case involving the ACCA, *Welch*'s ruling that *Johnson* is retroactive applies in all contexts on collateral review. Indeed, as this Court held in *Hubbard*, "the government has cited no case to support the proposition that a rule can be substantive in one context but procedural in another." *Hubbard*, 2016 U.S. App. LEXIS 10348, at *19. Therefore, *Johnson* is equally retroactive to § 924(c) challenges.

In any event, *Johnson* as applied to § 924(c), is substantive, and therefore, retroactive because it narrows the scope of 18 U.S.C. § 924(c), and "necessarily carr[ies] a significant risk that a defendant stands convicted of an act that the law does not make criminal." *Schriro v. Summerlin,* 542 U.S. 348, 352 (2004) (internal quotation marks omitted). Section 924(c) criminalizes using or carrying a firearm during and in relation to a "crime of violence." After *Johnson,* certain predicate offenses cannot be categorized as "crimes of violence" consistent with the Due Process Clause. *Johnson* therefore alters what conduct § 924(c) makes criminal.

Here, Mr. Johnson stands convicted of an act that the law does not make criminal, because *Johnson* establishes that the so-called "crime of violence" underlying his § 924(c) conviction cannot constitutionally be considered a crime of violence. *See Bousley v. United States,* 523 U.S. 614, 620 (1998). Indeed, in the past month, this Court has granted over 30 applications to authorize a successive §

17

2255 motion based on a *Johnson* challenge to a § 924(c) conviction.[6]

**B.    Mr. Johnson is entitled to authorization under 28 U.S.C. § 2255(h)(2).**

The analysis above demonstrates that Mr. Johnson has made the *prima facie* showing required under 28 U.S.C. § 2244(b)(3)(C), and his application satisfies § 2255(h)(2) because he has made a "sufficient showing of possible merit to warrant a fuller exploration by the district court."

---

[6] *See* Orders Granting Motion for Authorization to File Successive Habeas Application in the following cases: *In re Ashley*, No. 16-623 (4th Cir. June 8, 2016); *In re Bell*, No. 16-559 (4th Cir. June 1, 2016); *In re Bias*, No. 16-619 (4th Cir. May 19, 2016); *In re Blanks*, No. 16-560 (4th Cir. May 26, 2016); *In re Brown*, No. 16-561 (4th Cir. May 31, 2016); *In re Dale*, No. 16-544 (4th Cir. May 31, 2016); *In re Dolly*, No. 16-581 (4th Cir. May 24, 2016); *In re Harris*, No. 16-621 (4th Cir. June 1, 2016); *In re Henley*, No. 16-602 (4th Cir. May 27, 2016); *In re Hines*, No. 16-573 (4th Cir. May 26, 2016); *In re Holmes*, No. 16-566 (4th Cir. May 25, 2016); *In re Johnson*, No. 16-572 (4th Cir. May 26, 2016); *In re Jones*, No. 16-583 (4th Cir. May 19, 2016); *In re Jones*, No. 16-567 (4th Cir. May 26, 2016); *In re Kelly*, No. 16-593 (4th Cir. June 3, 2016); *In re Laloudakis*, No. 16-597 (4th Cir. June 2, 2016); *In re Lazaro*, No. 16-596 (4th Cir. June 1, 2016); *In re Legrand*, No. 16-737 (4th Cir. May 31, 2016); *In re Martin*, No. 16-586 (4th Cir. May 24, 2016); *In re May*, No. 16-598 (4th Cir. June 6, 2016); *In re Mitchell*, No. 16-582 (4th Cir. May 26, 2016); *In re Myers*, No. 16-600 (4th Cir. May 27, 2016); *In re Nero*, No. 16-628 (4th Cir. June 8, 2016); *In re Purvis*, No. 16-587 (4th Cir. May 18, 2016); *In re Rice*, No. 16-591 (4th Cir. May 18, 2016); *In re Royal*, No. 16-583 (4th Cir. June 1, 2016); *In re Royal*, No. 16-629 (4th Cir. June 2, 2016); *In re Scott*, No. 16-595 (4th Cir. June 7, 2016); *In re Smith*, No. 16-388 (4th Cir. May 13, 2016); *In re Spence*, No. 16-653 (4th Cir. May 19, 2016); *In re Youmans*, No. 16-633 (4th Cir. May 23, 2016); *In re Robinson*, No. 16-731 (4th Cir. June 16, 2016); *In re Clark*, No. 16-941 (4th Cir. June 16, 2016); *United States v. Bell*, No. 8:07-cr-00160-PJM (D. Md. June 15, 2016); *see also* Order Granting Motion to Dismiss, *United States v. Bundy*, No. 3:16-cr-00051-BR (D. Or. June 10, 2016 (holding that section 924(c) residual clause is void for vagueness).

WHEREFORE, because Mr. Johnson has presented a *prima facie* showing of a tenable claim that all the requirements of § 2255(h)(2) are satisfied, he respectfully requests that his application be granted and that he be authorized forthwith to file in the United States District Court for the Eastern District of Virginia the attached successive motion pursuant to 28 U.S.C. § 2255.

Respectfully submitted,

/s/Donald P. Salzman
Donald P. Salzman
1440 New York Ave. NW
Washington, DC 20005
(202) 371-7983
donald.salzman@skadden.com

Counsel for Corey Johnson

19

## CERTIFICATE OF SERVICE

I hereby certify that on June 17, 2016, the foregoing Application for

Authorization to File a Successive Motion Under 28 U.S.C. § 2255 Pursuant to

*Johnson v. United States*, 135 S. Ct. 2551 (2015) was served on the following by

Federal Express:

Richard D. Cooke
Assistant United States Attorney
for the Eastern District of Virginia
919 E Main St, Suite 1900
Richmond, VA  23219

/s/Donald P. Salzman
Donald P. Salzman

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | | |
|---|---|---|
| **COREY JOHNSON,**[1] | : | |
| **Movant** | : | |
| | : | |
| **v.** | : | **Case No. 3:92CR68** |
| | : | |
| | : | |
| **UNITED STATES OF AMERICA,** | : | |
| **Respondent.** | : | |

### MOTION TO VACATE CONVICTION UNDER 28 U.S.C. § 2255
### PURSUANT TO *JOHNSON V. UNITED STATES*, 135 S. CT. 2551 (2015)

Movant, Corey Johnson, through his undersigned counsel, hereby files a motion to set aside the judgment against him on Counts 9, 12, 15, 20, and 26, in case number in the above-captioned case, pursuant to 28 U.S.C. § 2255. As explained below, Mr. Johnson's convictions under 18 U.S.C. § 924(c) must be vacated in light of the Supreme Court's recent decisions in *Johnson v. United States,* 135 S. Ct. 2551 (2015) and *Welch v. United States,* 136 S. Ct. 1257 (2016).

### INTRODUCTION

On February 3, 1993, Corey Johnson was convicted of twenty-seven counts in the above-captioned indictment, including five counts of using or carrying a firearm during and in relation to a crime of violence or a drug trafficking crime in violation of 18 U.S.C. § 924(c), seven counts charging federal homicide offenses in violation of 21 U.S.C. § 848(e)(1), and eleven counts of murder, maiming, and assault in violation of 18 U.S.C. § 1959(a). The jury subsequently sentenced Mr. Johnson to seven death sentences, one for each count under § 848(e)(1).

---

[1] Mr. Johnson's actual first name is "Corey" but it was misspelled as "Cory" in his indictment, in various pleadings filed before this Court, and in the subsequent decisions following his convictions. Mr. Johnson is using the correct spelling of his name in this pleading.

On June 26, 2015, the Supreme Court held in *Johnson* that the residual clause of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), is unconstitutionally void for vagueness. That clause, the Court held, cannot constitutionally define a "crime of violence" for purposes of the ACCA's sentence-enhancing provisions. *Johnson,* 135 S. Ct. at 2557. On April 18, 2016, the Supreme Court held that *Johnson* announced a new substantive rule that applies retroactively to cases on collateral review. *Welch,* 136 S. Ct. at 1265.

The residual clause of § 924(c), the crime of violence statute under which Corey Johnson was convicted, is materially indistinguishable from the clause *Johnson* invalidated. After *Johnson,* intentional killing, as defined by 21 U.S.C. § 848(e)(1) and murder, maiming, assault pursuant to 18 U.S.C. § 1959(a), the predicates for the § 924(c) crimes with which Mr. Johnson was charged, categorically fail to qualify as "crimes of violence." Therefore, Mr. Johnson's § 924(c) convictions are invalid. Once these convictions have been vacated, Corey Johnson is entitled to be resentenced on his remaining convictions.

The relevant portion of § 924(c) includes two alternative clauses defining "crimes of violence." The first, § 924(c)(3)(A), is commonly referred to as the "force" or "elements" clause. It applies to any felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another[.]" The second, § 924(c)(3)(B), is commonly referred to as the residual clause. It applies to any felony "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."

This second definition, the residual clause, is indistinguishable in all material respects from the residual clause of the ACCA that the Supreme Court in *Johnson* deemed unconstitutionally vague. *See Johnson,* 135 S. Ct. at 2557. Indeed, at least three federal courts

2

of appeals have applied *Johnson* to invalidate the residual clause of another statute, 18 U.S.C. § 16(b), a clause that is identical to that of § 924(c).[2] *See United States v. Vivas-Ceja,* 808 F.3d 719, 722-23 (7th Cir. 2015); *Dimaya v. Lynch,* 803 F.3d 1110, 1117-20 (9th Cir. 2015).  And relying on those circuits' reasoning, a number of district courts have held § 924(c)'s residual clause to be void for vagueness as well.  *See United States v. Bundy,*  2016 U.S. Dist. LEXIS 75812 (D. Or. June 10, 2016); *United States v. Smith*, 2016 U.S. Dist. LEXIS 65543 (D. Nev. May 18, 2016); *United States v. Luong*, 2016 U.S. Dist. LEXIS 53151 (E.D. Cal. April 20, 2016); *United States v. Lattanaphom,* __ F. Supp. 3d __, 2016 WL 393545, *3-4, *6 (E.D. Cal. Feb. 2, 2016); *United States v. Edmundson,* __ F. Supp. 3d __, 2015 WL 9311983, *3 (D. Md. Dec. 30, 2015).

These cases compel the same result in Corey Johnson's case.  Because § 924(c)'s residual clause is void for vagueness, it cannot constitutionally define "crimes of violence" for purposes of § 924(c) convictions.

Furthermore, intentional killing under 21 U.S.C. §848(e)(1) and murder, maiming, and assault under 18 U.S.C  § 1959(a) do not categorically qualify as "crimes of violence" under the remaining force clause.  This is because under both § 848(e)(1) and 18 U.S.C  § 1959(a), the killing can be accomplished by non-violent means, as can maiming and assault under § 1959.  For example, both homicide crimes can be committed by withholding a person's life-preserving

---

[2] Like § 924(c)(3), § 16 defines a "crime of violence" as:

    (a)    an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

    (b)    any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 16.

3

medication or locking someone in a car on a hot day. Section 848 can also be committed by the accused counseling, commanding or inducing someone else to kill another individual. And § 1959 can be violated by murders involving the felony murder doctrine without the specific intent to kill and can be based on felonies that do not require the use of physical force. Similarly, § 1959 maiming and assault offenses do not require the actual use of violent physical force. Sections 848(e)(1) and 1959(a) therefore do not require as essential elements the use, attempted use, or threatened use of physical force. Intentional killing under § 848(e)(1) and murder, maiming, and assault under § 1959 categorically fail to qualify as "crimes of violence," and Mr. Johnson's convictions under § 924(c) cannot stand.

Because § 924(c)'s residual clause is unconstitutional, Mr. Johnson's § 924(c) convictions and the death sentences he received after the sentencing phase of his trial (1) violate due process; (2) violate the laws of the United States and result in a fundamental miscarriage of justice; and (3) were entered in excess of the district court's jurisdiction. Further, Corey Johnson is entitled to relief under 28 U.S.C. § 2255(h)(2) because *Johnson* established a "new rule of constitutional law" that has been "made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h)(2).

Accordingly, Mr. Johnson respectfully asks this Court to grant his § 2255 motion and vacate his § 924(c) convictions and death sentence.

Below, Mr. Johnson provides more detailed support for this motion.

4

## STATEMENT OF RELEVANT FACTS

### A.    Conviction and Sentencing.

Mr. Johnson and six co-defendants, Richard Tipton, James H. Roane, Jr., Vernon L. Thomas, Jerry R. Gaiters, Sterling Hardy, and Sandra Reavis, were jointly charged in this Court with conspiracy to possess with intent to distribute more than 50 grams of cocaine base under 21 U.S.C. § 841(a)(1) (Count 1). In addition, some but not all of the defendants were separately charged with (i) engaging in a continuing criminal enterprise (hereafter "CCE") in violation of 21 U.S.C. § 848 (Count 2); (ii) while engaged in a CCE, knowingly, intentionally and unlawfully causing the murder of nine separately named individuals in violation of 21 U.S.C. § 848(e)(1)(A) (Counts 3, 5, 8, 11, 17, 18, 19, 24, and 25); (iii) knowingly, intentionally, and unlawfully causing the murder of ten separately named individuals as part of an enterprise engaged in racketeer-influenced and corrupt organizations (hereafter "RICO") activity in violation of 18 U.S.C. § 1959 (Counts 4, 7, 10, 13, 14, 21, 22, 23, 27, and 28); (iv) using or carrying a firearm during and in relation to a crime of violence or a drug trafficking crime in violation of 18 U.S.C. § 924(c) (Counts 6, 9, 12, 15, 20, and 26); (v) knowingly, intentionally, and unlawfully maiming two separately named individuals as part of an enterprise engaged in RICO activity in violation of 18 U.S.C. § 1959 (Counts 29 and 30); (vi) knowingly, intentionally, and unlawfully committing assault resulting in serious bodily injury to an individual as part of an enterprise engaged in RICO activity in violation of 18 U.S.C. § 1959 (Count 16); (vii) knowingly and intentionally distributing cocaine base in violation of 21 U.S.C. § 841(a)(1) (Count 31); and (viii) knowingly and intentionally possessing with intent to distribute more than 50 grams of

5

cocaine base in violation of 21 U.S.C. § 841(a)(1) (Counts 32 and 33).[3] The government sought

the death penalty against Mr. Tipton, Mr. Johnson, and Mr. Roane pursuant to 21 U.S.C. §

848(e)(1) and the jury returned death verdicts against all three men. Mr. Johnson, specifically,

was sentenced to death by the jury on seven counts for the § 848 murder offenses.

### B.      Direct Appeal.

Mr. Johnson timely appealed to the Fourth Circuit, raising various issues relating to the

guilt and penalty phases of his trial. The court of appeals rejected all of his arguments and

affirmed his convictions and death sentence. *United States v. Tipton et. al.*, 90 F.3d 861 (4th Cir.

1996). The United States Supreme Court denied certiorari. *Roane v. United States,* 520 U.S.

1253 (1997).

### C.      Previous § 2255 Motion.

Following the denial of certiorari, Mr. Johnson timely filed a motion for collateral relief

under 28 U.S.C. § 2255 and later filed several amendments to that motion.[4] He asserted in the

motion and in the amendments to the motion the following claims: (i) error during the jury

selection process on a variety of grounds; (ii) prosecutorial misconduct in violation of Mr.

Johnson's due process rights on numerous grounds during the jury selection and during the guilt

and sentencing phases of the trial; (iii) insufficient evidence to prove Mr. Johnson was a

supervisor in a CCE conspiracy; (iv) ineffective assistance of counsel at the trial and appellate

---

[3] Prior to trial, Mr. Thomas' case was severed from his co-defendants' cases and, after Mr. Tipton, Mr. Roane, and Mr. Johnson were tried, Mr. Thomas was tried and convicted in a separate trial. Although the Government originally sought the death penalty against Mr. Thomas, it later withdrew its death notice prior to trial. The Government did not seek the death penalty against Mr. Gaiters, Mr. Hardy, or Ms. Reavis. Mr. Gaiters and Mr. Harvey pled guilty before trial. Ms. Reavis was tried jointly with Mr. Tipton, Mr. Roane, and Mr. Smith, and she was convicted of the one count charged against her.

[4] Mr. Johnson's initial § 2255 motion was docketed under criminal case number 3:92CR68 and civil case number 3:97CV895.

6

stages on a variety of grounds during the guilt and sentencing phases of the trial; and (v)

constitutional challenges to his death sentences on various grounds. This Court denied relief.

*United States v. Roane*, No. 3:92CR68 (E.D. Va. May 1, 2003).

The Fourth Circuit affirmed the denial of relief. *Roane v. United States,* 378 F.3d 382

(4th Cir. 2004). The United States Supreme Court denied certiorari. *Johnson v. United States,*

546 U.S. 810 (2005).

### D.    *Johnson v. United States.*

On June 26, 2015, the Supreme Court issued its decision in *Johnson,* 135 S. Ct. 2551. In

*Johnson,* the Supreme Court overruled *Sykes v. United States,* 131 S. Ct. 2267 (2011) and *James*

*v. United States,* 550 U.S. 192 (2007), finding ACCA's residual clause too vague to provide

adequate notice under the Due Process Clause of the Fifth Amendment. Specifically, *Johnson*

held that "the indeterminacy of the wide-ranging inquiry required by the residual clause both

denies fair notice and invites arbitrary enforcement by judges," therefore "[i]ncreasing a

defendant's sentence under the clause denies due process of law." 135 S. Ct. at 2557.

### E.    *Welch v. United States.*

After *Johnson* was decided*,* federal prisoners throughout the country sought to challenge

ACCA-enhanced sentences, as well as convictions and sentences imposed under materially

indistinguishable residual clauses, such as that in 18 U.S.C. § 924(c). This led to conflict over

whether *Johnson* announced a new substantive rule, which would apply retroactively to cases on

collateral review, or whether it only announced a new procedural rule, which would not

necessarily apply retroactively. On April 18, 2016, the Supreme Court resolved the issue,

finding  *Johnson*'s rule substantive and thus applicable retroactively to cases on collateral

review. *Welch,* 136 S. Ct. at 1265. After *Johnson* and *Welch,* Corey Johnson's § 924(c)

convictions cannot be sustained.

## ARGUMENT

I.  **In light of *Johnson,* Corey Johnson's § 924(c) convictions cannot be sustained because the predicate crimes underlying those convictions do not qualify as "crimes of violence."**

Mr. Johnson's convictions for using or carrying a firearm during and in relation to

"crimes of violence" are void because the "crime of violence" element cannot be satisfied here.

After *Johnson,* the predicate offenses of federal intentional killing, murder, maiming, and assault

cannot, as a matter of law, qualify as "crimes of violence" for purposes of § 924(c). As

explained below, intentional killing under 21 U.S.C. § 848(e)(1) and murder, maiming, and

assault under 18 U.S.C. § 1959(a) categorically fail to qualify as predicate "crimes of violence"

under § 924(c) because they do not meet the definition of the force clause and because the

unconstitutional residual clause cannot define a valid federal crime.

A.  **Section 924(c)'s residual clause is materially identical to ACCA's residual clause and therefore like ACCA's clause is unconstitutionally void for vagueness.**

Section 924(c) defines a "crime of violence" in two ways:

(3)  For purposes of this subsection, the term "crime of violence" means an offense that is a felony and –

(A)  has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(B)  that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3).

8

The first clause, § 924(c)(3)(A), is known as the force or elements clause.  The second, § 924(c)(3)(B), is the residual clause.

The ACCA, 18 U.S.C. § 924(e), provides for an enhanced penalty for those convicted of possessing a firearm after sustaining three or more convictions for a "serious drug offense" or a "violent felony."  ACCA's definition of  "violent felony" includes the residual clause struck down in *Johnson,* a clause that is materially indistinguishable from that in § 924(c)'s residual clause.  The ACCA defines a "violent felony" as:

> [A]ny crime punishable by imprisonment for a term exceeding one year . . . that
>
> (i)    has as an element the use, attempted use, or threatened use against the person of another, or
>
> (ii)    is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*[.]

18 U.S.C. § 924(e)(2)(B) (emphasis added).

Section 924(c)'s residual clause suffers from the same flaws that rendered ACCA's residual clause unconstitutionally vague under the required categorical approach.  As with ACCA's residual clause, § 924(c)'s clause "require[s] courts to assess the hypothetical risk posed by an abstract generic version of the offense." *Welch,* 136 S. Ct. at 1262.  "[T]he 'indeterminacy of the wide-ranging inquiry' made the residual clause more unpredictable and arbitrary in its application than the Constitution allows." *Id.* (quoting *Johnson,* 135 S. Ct. at 2557).

The constitutional guarantee of due process, the *Johnson* Court found, cannot tolerate "condemn[ing] someone to prison for 15 years to life," the punishment prescribed under ACCA, based upon "so shapeless a provision." *Johnson,* 135 S. Ct. at 2560.  Likewise, due process

9

cannot tolerate condemning a person to death based upon § 924(c)'s equally shapeless residual clause.

Moreover, courts have already invalidated a residual clause identical to that in § 924(c). The residual clause of 18 U.S.C § 16(b) is the mirror image of that of § 924(c), and the Fifth, Seventh and Ninth Circuits have all struck it down following *Johnson.  See United States v. Fuertes*, 805 F.3d. 485, 498-500 (4th Cir. 2015); *see also United States v. Vivas-Ceja,* 808 F.3d 719 (7th Cir. 2015); *Dimaya v. Lynch,* 803 F.3d 1110 (9th Cir. 2015).  Still further, a number of district courts have considered § 924(c)'s residual clause itself and have found it void for vagueness in light of *Johnson.  See United States v. Bundy,* 2016 U.S. Dist. LEXIS 75812 (D. Or. June 10, 2016); *United States v. Smith*, 2016 U.S. Dist. LEXIS 65543 (D. Nev. May 18, 2016); *United States v. Luong*, 2016 U.S. Dist. LEXIS 53151 (E.D. Cal. April 20, 2016); *United States v. Lattanaphom,* __ F. Supp. 3d __, 2016 WL 393545 (E.D. Cal. Feb. 2, 2016); *United States v. Edmundson,* __ F. Supp. 3d __, 2015 WL 9311983 (D. Md. Dec. 30, 2015).  This Court should do the same.

### 1. *Johnson* expressly overruled the "ordinary case" approach to determining whether a felony qualifies as a "crime of violence."

The Supreme Court began its analysis in *Johnson* by noting that the so-called categorical approach mandates the use of a two-step framework to determine whether a crime is a violent felony within the meaning of ACCA.  *Johnson,* 135 S. Ct. at 2557, 2562.  As the Seventh Circuit described it: "In the first step, the court must determine 'the kind of conduct that the crime involves in "the ordinary case"'" as opposed to the facts on the ground in the defendant's . . . case." *Vivas-Ceja,* 808 F.3d at 721 (quoting *Johnson,* 135 S. Ct. at 2557).  The second step also depends on the ordinary case.  Specifically, the "court must gauge whether that ordinary case of the crime 'presents a serious potential risk of physical injury.'" *Id.*

10

But this required approach to ACCA's residual clause "conspire[d] to make it unconstitutionally vague." *Johnson,* 135 S. Ct. at 2557.  The first step is problematic, the *Johnson* Court explained, because too much uncertainty exists about what constitutes the "ordinary case" of a crime.  *Id.*  "The residual clause offers no reliable way to choose between [] competing accounts of what 'ordinary' . . . involves."  *Id.* at 2558.  In fact, the Court explained further, statistical analysis of reported cases, Google, and gut instinct are all equally unreliable in identifying the "ordinary case."  *Id.* at 2557 (quoting *United States v. Mayer,* 560 F.3d 948, 952 (9th Cir. 2009) (Kozinski, J., dissenting from denial of rehearing en banc)).

The second step, too, is fatally flawed because even if the "ordinary case" could indeed be determined, there would still be too much "uncertainty about how much risk it takes" before such "ordinary case" should be deemed sufficiently serious to be categorized as a violent felony. *Vivas-Ceja,* 808 F.3d at 722 (quoting *Johnson,* 135 S. Ct. at 2558).

Significantly, the Court's critique of the second step did not turn on the type of risk specified in ACCA's invalidated residual clause, namely, the "serious potential risk of *physical* injury."  Rather, as with the first step, the Court's analysis turned on the shapeless "ordinary case" inquiry: "It is one thing to apply an imprecise 'serious potential risk' standard to real-world facts; it is quite another to apply it to a judge-imagined [ordinary case] abstraction."  *Johnson,* 135 S. Ct. at 2558.  Risk assessment, the Court made clear, is not inherently unconstitutional. *See id.* at 2561.  But because risk assessment under ACCA's residual clause is based not on the facts of the actual case but on the amorphous "ordinary case," the clause is unconstitutionally vague.  The indeterminacy, unpredictability, and arbitrariness inherent in the "ordinary case" analysis is simply more than the Due Process Clause can bear, held the Court.  *Id.* at 2558.

11

*Johnson* thus upended not just ACCA's residual clause, but also the "ordinary case" analysis compelled by such a statutory framework. In other words, the only way to apply the residual clause is to use the "ordinary case" analysis, and the "ordinary case" analysis is impossible to apply in a constitutional manner.

## 2. For the reasons identified in *Johnson,* § 924(c)(3)(B) also is unconstitutionally vague.

Notwithstanding that § 924(c)'s residual clause is not a mirror image of ACCA's, the two clauses are functionally the same. The difference in exact wording does not affect the constitutional analysis that shows both to be void for vagueness.

For one thing, courts regularly equate ACCA's "violent felony" definition with other statutes defining crimes of violence, including 18 U.S.C. § 16(b), which as noted above is identical to § 924(c)(3)(B). *See, e.g., Chambers v. United States,* 555 U.S. 122, 133 n.2 (2009) (Alito, J., concurring) (collecting cases); *see also United States v. Ayala*, 601 F.3d 256, 267 (4th Cir. 2010) (relying on an ACCA case to interpret the definition of a crime of violence under § 924(c)(3)(B)); *United States v. Aragon*, 983 F.2d 1306, 1314 (4th Cir. 1993) (same).

Further, although the risk at issue in ACCA is risk of injury while the risk at issue in § 924(c) is that physical force will be used, both statutes require that risk be assessed via the "ordinary case" method. It is this analytical framework that infects both statutes with a due process problem.

Under § 924(c), just as under ACCA, courts must follow the same two-step process. First, the court must envision the "ordinary case" embodied by a felony. Second, the court must assess the quantum of risk posed by such "ordinary case." As the Fourth Circuit explained in the context of reviewing § 16(b) (which is identical to § 924(c)):

12

> [E]very set of conceivable facts covered by first-degree burglary does not have to present a serious risk of injury for it to qualify as a crime of violence. It is sufficient if "the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another." *James,* 550 U.S. at 208. As long as an offense is of a type that, *by its nature,* presents a substantial risk that physical force against the person or property of another may be used, it satisfies the requirements of 18 U.S.C. § 16(b).

*United States v. Avila,* 770 F.3d 1100, 1107 (4th Cir. 2014) (emphasis added). At least three circuits have held that because the shapeless "ordinary case" approach applies to cases under § 16(b), that statute's residual clause is void after *Johnson. See Vivas-Ceja,* 808 F.3d at 722-23; *Dimaya,* 803 F.3d at 1117-20.

It follows that the same analysis applies to the identical residual clause of § 924(c), and thus *Avila* controls here. Even more, consistent with *Avila*, in *Fuertes*, 805 F.3d at 498, 500 n.6, the Fourth Circuit directly applied the "ordinary case" inquiry to the § 924(c) residual clause. *See also United States v. Naughton*, 621 F. App'x. 170, 178 (4th Cir. 2015) (applying the ordinary case inquiry to § 924(c)(3)(B)). Thus, as Judge Grimm explained in *Edmundson*, the "§ 924(c) residual clause suffers from exactly the same double indeterminacy as the ACCA residual clause." *Edmundson*, 2015 WL 9311983, at *4. Section 924(c)'s residual clause, just like that of § 16(b) and ACCA, suffers from the "double indeterminacy" that the *Johnson* court held the Due Process Clause cannot tolerate.

Indeed, in the course of litigating *Johnson,* the United States conceded that the residual clauses contained in ACCA and § 16(b) (and necessarily in the identical § 924(c)) pose the same problem:

> Although Section 16 refers to the risk that force will be used rather than that injury will occur, it is equally susceptible to petitioner's central objection to the residual clause. Like the ACCA, Section 16 requires a court to identify the ordinary case of the commission of the offense and to make a commonsense judgment about the risk of confrontations and other violent encounters.

13

Supplemental Brief for the United States at 22-23, *Johnson v. United States,* No. 13-7120 (U.S. Mar. 30, 2015), 2015 WL 1284964.  The United States was correct in its analysis, and this Court should hold it here to the same concession.

In sum, § 924(c), like ACCA, requires courts to apply "ordinary case" analysis to assess the risk involved in a  predicate offense.  Because this analysis involves the same flawed steps that brought down the ACCA residual clause, § 924(c)(3)(B) also cannot survive constitutional scrutiny.  Under the due process principles articulated in *Johnson*, § 924(c)'s residual clause cannot be used to support a conviction under that statute.  Mr. Johnson's convictions under § 924(c)—and the jury's decision to impose death sentences that was certainly influenced by the multiple convictions for using firearms in relation to those crimes of violence—must be overturned because the convictions turn on a determination that the predicate murders and other predicate crimes with which he was charged are "crime[s] of violence."  And federal homicides, maiming, and assaults, the section that follows will demonstrate, qualify as crimes of violence only under the unconstitutional residual clause; they cannot satisfy the remaining force or elements clause.

> **B.** **Homicide convictions pursuant to § 848(e)(1)(A) and § 1959(a) and maiming and assault convictions under § 1959(a) fail to qualify categorically as "crimes of violence" under the force clause of § 924(c) because they may be committed without the use of violent or strong physical force.**
>
> **1. The categorical approach applies to determining whether an offense qualifies as a "crime of violence" under the force clause.**

In determining whether an offense qualifies as a "crime of violence" under the force clause of § 924(c), courts must employ the categorical approach.  *See Descamps v. United States,* 133 S. Ct. 2276, 2283 (2013).  This approach requires that courts "look only to the statutory definitions—*i.e.*, the elements—of a defendant's [offense] and *not* to the particular facts

14

535a

underlying [the offense]." *Id.* In addition, under the categorical approach, an offense can only qualify as a "crime of violence" if all of the criminal conduct covered by a statute, including the least culpable conduct, matches or is narrower than the "crime of violence" definition. *See, e.g., United States v. Torres-Villalobos,* 487 F.3d 607, 616 (8th Cir. 2007); *see also United States v. Torres-Miguel,* 701 F.3d 165, 167 (4th Cir. 2012). If the most innocuous conduct penalized by a statute does not constitute a "crime of violence," then the statute categorically fails to qualify as a "crime of violence."

Given this, an offense will qualify as a "crime of violence" under the force clause of § 924(c) only if it has, as an element, "the use, attempted use, or threatened use of physical force" against another person. 18 U.S.C. § 924(c)(3)(A). "Physical force," in turn, has two requirements. First, "physical force" must involve *violent* force—that is, "strong physical force," which is "capable of causing physical pain or injury to another person." *Johnson v. United States,* 559 U.S. 133, 140 (2010). Second, the use of such force "must be intentional, not just reckless or negligent." *United States v. Dixon,* 805 F.3d 1193, 1197 (9th Cir. 2015); *see also Leocal v. Ashcroft,* 543 U.S. 1, 12-13 (2004).

It is not enough that the statute includes some requirement of specific intent, such as the intent to deprive a person of property, or even the intent to cause injury. To qualify as a crime of violence under the "force" or "elements" clause, the statute must have as a required element the intent to use strong physical force.

Applying these standards to Mr. Johnson's case requires vacatur of both his convictions under § 924(c) and the corresponding death sentences he received as a result of his convictions for his crimes of violence constituting intentional killing under 21 U.S.C. § 848(e)(1). As detailed below, the predicate offenses for which Mr. Johnson was convicted categorically fail to

15

qualify as crimes of violence under § 924(c)'s force clause because intentional killing under this statutory provision may be perpetrated without the use of violent or physical force. Mr. Johnson's other convictions for murder, maiming, and assault also fall short of qualifying as crimes of violence for identical reasons.

      **2.  The federal homicide statutes do not require the use or threatened use of violent physical force.**

Section 848(e)(1)(A) establishes the death penalty as one of the penalties for a murder committed in the course of a continuing criminal enterprise. Specifically, § 848(e)(1)(A) states:

> any person engaging in or working in furtherance of a continuing criminal enterprise, or any person engaging in an offense punishable under section 841(b)(1)(A) of this title or section 960(b)(1) of this title who intentionally kills or counsels, commands, induces, procures, or causes the intentional killing of an individual and such killing results, shall be sentenced to any term of imprisonment, which shall not be less than 20 years, and which may be up to life imprisonment, or may be sentenced to death[.]

Similarly, 18 U.S.C. § 1959 prohibits murder in connection with a RICO conspiracy under specific circumstances. Neither of these homicide offenses categorically require the use of violent physical force to sustain a conviction and neither can satisfy § 924(c)'s force clause.

Intentional homicide can be committed without any physical touching of the victim, much less the use of any force. "[H]uman experience suggests numerous examples of intentionally causing physical injury without the use of force, such as a doctor who deliberately withholds vital medicine from a sick patient." *Chrzanoski v. Ashcroft,* 327 F.3d 188, 195-96 (2d Cir. 2003) (analyzing Connecticut's third degree assault statute that could criminalize an "injury caused not by physical force, but by guile, deception, or even deliberate omission . . . [by the] placement of a tranquilizer in the victim's drink[]" (citation omitted)). Other examples of intentional killings without force are locking someone in a hot car, withholding food from them, or poisoning them. *See Torres-Miguel*, 701 F.3d at 169-70 (citing *United States v. Cruz-*

16

*Rodriguez*, 625 F.3d 274, 277 (5th Cir. 2010); *United States v. Perez-Vargas,* 414 F.3d 1282, 1286 (10th Cir. 2005) (analyzing Colorado's third-degree assault with a deadly weapon statute that could be violated by exposing someone to hazardous chemicals). These intentional acts—withholding medication or food, leaving someone locked in a dangerous place, or poisoning—by their nature can be committed surreptitiously through deceit or by acts that involve no physical contact with or force against the victim.

The Fourth Circuit's decision in *Torres-Miguel* is directly on point. In that case, the Fourth Circuit unequivocally held that the threat of any physical injury, even "death or serious injury" does not *necessarily* require the use or threatened use of physical force, let alone "violent force." 701 F.3d at 168. The issue in *Torres-Miguel* was whether the defendant's prior conviction for the California crime of willfully threatening to commit a crime which "*will result in death or great bodily injury to another*" qualified as a violent felony under a force clause materially indistinguishable from that in § 924(c). *Id.* at 167 (citing Cal. Penal Code § 422(a)). The court held, without qualification, that "[a]n offense that *results* in physical injury, but does not involve the use or threatened use of force, simply does not meet the . . . definition of crime of violence." *Id*. at 168. "[A] crime may *result* in death or serious injury," the court explained, "without involving *use* of physical force." *Id.*

Referencing decisions from various federal courts of appeals, the *Torres-Miguel* court identified many possible ways in which physical injury—even death—may result without the use or threatened use of "violent force." *Id.* at 168-69 (collecting cases). "For example, as the Fifth Circuit has noted, a defendant can violate statutes like § 422(a) by threatening to poison another, which involves no use or threatened use of force." *Id.* (citing *Cruz-Rodriguez,* 625 F.3d at 276 (5th Cir. 2010)).

17

The reasoning in these cases applies equally to intentional killing under § 848(e)(1)(A) and murder under § 1959 because the statutes fail to require the use of physical force, and certainly do not require the "violent force" that is a prerequisite to constitutional application of the force clause. *See United States v. Rice,* 813 F.3d 704, 707 (8th Cir. 2016) (Kelly, J., dissenting) (citing *Johnson,* 559 U.S. at 139).

Thus, because "the full range of conduct" covered by § 848(e)(1)(A) and § 1959 do not require "violent force," they categorically cannot qualify as "crimes of violence" under § 924(c)(3)'s force clause. *See Torres-Miguel,* 701 F.3d at 171. And it makes no difference that the possibility of violating the homicide statutes without the use or threat of violent force may be slim. Because that possibility exists, this Court cannot, as a matter of law, find that § 848(e)(1)(A) intentional killing and § 1959 murder are "crimes of violence."

### 3. Section 848(e)(1)(A) fails to satisfy the force clause because it authorizes the death penalty for an intentional killing committed by a person other than the defendant.

Section 848(e)(1)(A) permits a jury to sentence a member of a CCE to death even if the accused does not intentionally take the life of the victim him or herself. Instead, death is an available punishment under this provision if "[a]ny person engaging in or working in furtherance of a continuing criminal enterprise . . . counsels, commands, induces, procures, or causes the intentional killing of an individual and such killing results[.]" The murders for which Corey Johnson was convicted that served as predicate violent felonies for his convictions under § 924(c), therefore, categorically, do not satisfy the force clause of that statute.

Causing another person participating in a continuing criminal enterprise to commit an intentional killing—whether through an agreement, through some sort of inducement, or by way of an order or command—simply does not meet the force requirement necessary for a § 924(c)

18

conviction. This type of behavior is the equivalent of a conspiracy, because it does not require the actual violent physical force to be committed by the individual charged with the § 924(c) offense, but instead involves persuading in some fashion another person to commit the murder. Conspiracies never qualify as "crimes of violence" under the force clause, no matter what the object is of the conspiracy. *See United States v. Melvin*, No. 13-4857, slip op. at 2-3 (4th Cir. Oct. 26, 2015) (per curiam) (finding conspiracy to commit robbery with a dangerous weapon not a violent felony); *United States v. Gonzalez-Ruiz*, 794 F.3d 832 (7th Cir. 2015) (finding conspiracy to commit armed robbery not violent felony); *United States v. Luong*, 2016 WL 1588495 (E.D. Cal. Apr. 20, 2016) (conspiracy to commit Hobbs Act robbery not 924(c) crime of violence); *United States v. Edmundson*, __ F. Supp. 3d__ 2015 WL 9311983 (D. Md. Dec. 30, 2015) (same).[5]

The jury in Corey Johnson's case was expressly instructed that it could convict him of the § 848 murders if it found that "Cory [sic] Johnson . . . . while engaged in or working in furtherance of a Continuing Criminal Enterprise, intentionally killed, *counseled, commanded, induced, procured, or caused the intentional killing of certain individuals*." (emphasis added). Trial Tr. vol. 16, 3215, Feb. 2, 1993. Similarly, nowhere on the verdict form that the jury used to record its verdicts related to Corey Johnson was the jury asked to find whether Corey Johnson killed any of the victims himself; instead the verdict form was couched in passive language, as this representative example of the verdict form related to Count 8 shows:

> Do you find that the government has proven, beyond a reasonable doubt, that a
> Continuing Criminal Enterprise existed as charged in the indictment?

---

[5] Cases before the Supreme Court's 2015 *Johnson* decision also held conspiracy charges did not meet the force requirement, *See United States v. White*, 571 F.3d 365 (4th Cir. 2009); *United States v. Fell*, 511 F.3d 1035 (10th Cir. 2007); *United States v. Gore*, 636 F.3d 728 (5th Cir. 2011); *United States v. Chandler*, 743 F.3d 648 (9th Cir. 2014) (implies conspiracy does not satisfy force clause or enumerated offenses).

19

\* \* \*

If you indicated that a Continuing Criminal Enterprise <u>did</u> exist, you must now determine whether defendant CORY [sic] JOHNSON is Guilty or Not Guilty of the crime of engaging in that continuing criminal enterprise as charged in Count 2, and enter your finding below.

\* \* \*

Count 8: Killing of Peyton Maurice Johnson while Engaged In or Working in Furtherance of a Continuing Criminal Enterprise

\* \* \*

_____
(Guilty or Not Guilty)

Verdict at 1-2.

Because § 848 permits a murder conviction based on the intentional killing by a person other than the defendant—if encouraged, directed, or in some other way, caused by the defendant—it cannot qualify as a "crime of violence" under § 924(c)'s force clause.[6]

> **4. Section 1959(a) fails to satisfy the force clause because it encompasses felony murder that can be committed by another person and felony murders, maimings, and assaults without the use of violent physical force.**

Like convictions for intentional killings covered by § 848, murder convictions pursuant to § 1959(a) do not require that the accused actually commit the homicide. In addition, murder

---

[6] Neither 21 U.S.C. § 848 nor 18 U.S.C. § 1959 are divisible statutes and, therefore, application of the categorical approach requires finding that these provisions fail to require violent or physical force for a defendant to be convicted of an § 848 intentional killing or a § 1959 murder, maiming, or assault. *See Taylor v. United States,* 495 U.S. 575, 602 (1990) (modified categorical approach therefore applies to only "a narrow range of cases"—those involving statutes encapsulating separate proscriptions, at least one of which constitutes a crime of violence); *Johnson v. United States*, 559 U.S. 133 (2010)*; United States v. Del Carmen Gomez,* 690 F.3d 194 (4th Cir. 2012) (Maryland child abuse statute not divisible). However, even under the modified categorical approach, a murder conviction under § 848 would fail to satisfy the force clause because the jury instructions and verdict form permitted the jury to find that someone else committed the § 848 murders for which it convicted Corey Johnson.

20

under this statute can encompass felony murder based on the commission of underlying felonies, which themselves do not necessarily require the use of violent physical force, and maiming and assault similarly can be committed without force. For these reasons, § 1959(a) does not satisfy the categorical approach and Corey Johnson's convictions for the § 1959 offenses cannot qualify as crimes of violence under § 924(c)'s force clause.

Section 1959(a) convictions include conduct that is encompassed by the doctrine of felony murder. *United States v. Palacios*, 1999 U.S. App. LEXIS 5206 *5-6 (2nd Cir. Mar. 4, 1999). In fact, § 1959(a) convictions for murder can be sustained even when the accused did not participate in the killing or intend to kill. Id. at *6-7 ("Edwin need not have intended to kill Vulfson or even have participated in his killing; so long as the victim was killed 'in the course of and in furtherance of' the robbery"). Thus, for the same reasons why § 848 intentional killings fail the categorical approach because they encompass acts committed by others, as explained in section B.3. above, § 1959(a) too fails that categorical analysis due to the felony murder doctrine.

Moreover, the fact that murders under § 1959(a) may be committed in the perpetration of, or an attempt to perpetrate, felony offenses is an additional reason why § 1959(a) murders do not constitute crimes of violence pursuant to § 924(c). This is true because the underlying felonies for first degree felony murder do not necessarily require the use or threatened use of violent physical force. For example, first-degree murder may be committed in the attempt to perpetrate a robbery, which categorically fails to qualify as a "violent felony" under the ACCA "force" clause because robbery does not always require violent touching. *See, e.g. United States v. Gardner*, No. 14-4533 (4th Cir. May 18, 2016). This is true for two independent reasons: (1) the offense can be committed by putting someone in fear of injury to *property* rather than violent

21

physical force against a person, and (2) the offense can also be accomplished by nothing more than a larceny combined with *de minimis* force, i.e., offensive touching or putting someone in fear of an offensive touching, combined with an assault).[7]

Maiming and assault under § 1959(a) fail for exactly the same reason. Although there have been federal prosecutions for maiming offenses, there do not appear to be reported published decisions analyzing the elements of maiming under § 1959(a).[8] However, maiming is a form of assault that does not require actual violent physical force. *See United States v. Royal*, 731 F.3d 333, 341-42 (4th Cir. 2013). Moreover, the intent to maim element does not convert assault into a "violent felony" because it can be accomplished merely by causing *injury* rather than the use of strong physical force. The Fourth Circuit's decision in *Torres-Miguel*, 701 F.3d at 168, is directly on point. There, the Fourth Circuit unequivocally held that the threat of *any physical injury,* even "serious bodily injury or *death*," does not necessarily require the use of physical force – let alone "violent force."

Because a § 1959(a) murder does not require the use or threatened use of violent physical force, but can be committed by causing death during the commission of a felony, and because maiming and assault under § 1959(a) also do not require the use of violent force, they do not qualify as crimes of violence under § 924(c)'s force clause.

---

[7] *See, e.g., Giles v. State*, 8 Md. App. 721, 723 (1970) (holding that Maryland robbery can be accomplished simply by putting someone in fear of "injury to the person *or to the property, as for example, a threat to burn down a house*." (emphasis added)); *see also Snowden v. State*, 321 Md. 612, 618 (1991) (explaining that Maryland robbery is a larceny combined with an assault).

[8] The closest federal offense appears to be 18 U.S.C. § 114, which involves maiming within maritime and territorial jurisdiction. In relevant part, that statute states that : "Whoever . . . with intent to torture . . . maim, or disfigure, cuts, bites, or slits the nose, ear, or lip, or cuts out or disables the tongue, or puts out or destroys an eye, or cuts off or disables a limb or any member of another person. . ." shall face imprisonment.

22

**II.    Mr. Johnson is entitled to relief under 28 U.S.C. § 2255 because his claim under *Johnson* is cognizable, timely, and satisfies the successive petition requirements of § 2255(h)(2).**

**A.    Mr. Johnson's claim is cognizable under § 2255(a).**

A federal prisoner may obtain relief under 28 U.S.C. § 2255(a) if his conviction "was imposed in violation of the Constitution or laws of the United States," or is in excess of this Court's jurisdiction. Mr. Johnson's convictions violate the Due Process Clause of the Fifth Amendment, violate federal law, and exceed this Court's jurisdiction. This Court therefore should grant him relief under § 2255(a).

First, for all the reasons explained above, Mr. Johnson's convictions on the § 924(c) charges violate due process because they depended on the unconstitutionally vague residual clause. Second, as also explained above, 21 U.S.C. § 848(e)(1)(A) and 18 U.S.C. § 1959(a) categorically cannot satisfy § 924(c)'s force clause. Mr. Johnson's indictment therefore failed to state an offense under § 924(c), and Mr. Johnson now stands convicted of offenses that are no longer criminal. His convictions, therefore, violate the laws of the United States and result in a fundamental miscarriage of justice. This is precisely the type of error that is cognizable under § 2255(a). *See Davis v. United States,* 417 U.S. 333, 346-47 (1974) (holding that when an intervening decision establishes that a prisoner was convicted of "an act that the law [no longer] make[s] criminal," "such a circumstance 'inherently results in a complete miscarriage of justice' and 'present(s) exceptional circumstances' that justify collateral relief under § 2255").

Third, Mr. Johnson's convictions exceed this Court's jurisdiction because not only did the indictment fail to state § 924(c) offenses, but also it affirmatively alleged conduct that is outside that statute's reach. That is, Counts 9, 12, 15, 20 and 26 of the indictment alleged that Mr. Johnson used or carried a firearm during or in relation to crimes of violence or a drug

23

trafficking offenses. Because the crimes of violence alleged in the indictment, including intentional killing under § 848 and murder, maiming, and assault under § 1959, as discussed above, categorically cannot qualify as "crimes of violence" for purposes of § 924(c), this Court had no jurisdiction to try Mr. Johnson on those offenses. In turn, § 924(c) convictions can never be sustained based on the underlying homicide, maiming, and assault offenses pursuant to § 848 and § 1959, no matter what the facts are.

Simply put, Counts 9, 12, 15, 20, and 26 altogether fail to state § 924(c) offenses. Mr. Johnson's conviction on those counts therefore are a legal nullity that were entered in excess of this Court's jurisdiction, and they must be vacated. *See United States v. Brown,* 752 F.3d 1344, 1352 (11th Cir. 2014) (a jurisdictional defect exists "when the indictment affirmatively alleges conduct that does not constitute a crime at all because that conduct falls outside the sweep of the charging statute" (citation omitted)); *United States v. Barboa,* 777 F.2d 1420, 1423 n.3 (10th Cir. 1985).

### B.      Mr. Johnson's motion for relief is timely.

Section 2255(f) requires that § 2255 motions be filed within a one-year limitations period. That period runs from the latest applicable triggering event. 28 U.S.C. § 2255(f). Among these triggers is "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review[.]" *Id.,* § 2255(f)(3).

The Supreme Court decided *Johnson* on June 26, 2015. Corey Johnson has filed this application within one year of that date. Further, on April 18, 2016, the Supreme Court expressly made *Johnson*'s new rule retroactively applicable to cases on collateral review. *Welch v. United States,* 136 S. Ct. 1257, 1265 (2016). This motion therefore is timely filed.

**C.    Mr. Johnson's successive § 2255 motion satisfies the requirements of 28 U.S.C. § 2255(h)(2) because *Johnson* announced a new, previously unavailable rule of constitutional law, and the Supreme Court has made *Johnson* retroactive to cases on collateral review.**

Section 2255(h)(2) imposes a gatekeeping restriction on second or successive motions. Before filing such a motion, the petitioner must obtain permission to do so from the appropriate circuit court of appeals. *See* 28 U.S.C. § 2255(h)(2). The court of appeals must certify that the successive motion contains a claim based on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." *Id.*; *see also* 28 U.S.C. § 2244(b)(3)(C).

Mr. Johnson files this successive § 2255 motion after having requested authorization to do so from the Fourth Circuit under § 2255(h)(2). Because Mr. Johnson has made a *prima facie* showing that he has satisfied § 2255(h)(2), the Fourth Circuit's certification should be forthcoming. *See In re Williams*, 330 F.3d 277, 281 (4th Cir. 2003). Mr. Johnson can do more than make out a *prima facie* showing, however. He can demonstrate conclusively that his motion meets all the requirements of § 2255(h)(2). To do so, he need only point to the Supreme Court's recent decision in *Welch.* There, the Supreme Court itself held that *Johnson* announced a new constitutional rule, that this rule was previously unavailable, and that *Johnson*'s rule is substantive and applies retroactively to cases on collateral review. *Welch,* 136 S. Ct. at 1265.

25

**III.    Mr. Johnson's invalid § 924(c) convictions also invalidate his death sentences on the convictions upon which the jury returned sentences of death.**

Mr. Johnson was convicted of committing seven separate intentional killings for which the jury returned verdicts pursuant to 21 U.S.C. § 848(e)(1)(A).[9] The invalidation of Mr. Johnson's § 924(c) convictions requires that he be resentenced on all of the other counts which contributed to the jury's death sentences.

When a defendant has been convicted and sentenced on multiple charged offenses, one of which subsequently is invalidated, he must be resentenced on the valid conviction "unless it can be ascertained from the record that a trial court's sentence on a valid conviction was not affected" by the invalid offense. *Bourgeois v. Whitley,* 784 F.2d 718, 721 (5th Cir. 1986). The Eighth Circuit has explained that "the critical issue" in this inquiry "is whether the sentence imposed [on the valid count] might have been different if the sentencing judge had known at the time of the sentencing that the . . . conviction [on another count] was invalid." *James v. United States,* 476 F.2d 936, 937 (8th Cir. 1973) (per curiam).

This principle applies with equal force in the case of jury sentencing. The record in Mr. Johnson's case shows at least a reasonable likelihood that the inclusion of the unconstitutional § 924(c) counts influenced the jury's decision to sentence him to death on the § 848 counts. Each of the § 924(c) counts in the indictment references § 848. More importantly, immediately after being instructed on the meaning of a "crime of violence" under § 924(c) for the use of a firearm in relation to any crime of violence or drug trafficking offense, Corey Johnson's jury was instructed that:

> The offenses alleged in Counts Three, Four, Five, Seven, Eight, Ten, Eleven,
> Thirteen, Fourteen, Sixteen, Seventeen, Eighteen, Nineteen, Twenty-one, Twenty-

---

[9] The jury also convicted Corey Johnson of murder pursuant to 18 U.S.C. § 1959 on Counts 10, 13, 14, 21, 22, 23, 24, 25, 27, and 28.

two, Twenty-three, Twenty-four, Twenty-five, Twenty-seven, Twenty-eight, Twenty-nine, Thirty, Thirty-one, and Thirty-three are crimes of violence or drug trafficking crimes.[10]

Of those offenses, Counts 8, 11, 17, 18, 19, 24, and 25 allege violations of § 848(e)(1)(A), which are the charges on which the jury returned death sentences for Corey Johnson. And Counts 10, 13, 14, 21, 22, 23, 27, 28, 29, and 30 are the other charges on which the jury convicted Corey Johnson of crimes of violence pursuant to § 1959. Yet none of those crimes actually constitute crimes of violence for purposes of § 924(c).

This starkly shows that Mr. Johnson's jury was allowed to consider not just that he participated in murders, but that those murders and other assaults were "crimes of violence" for purposes of § 924(c). The jury was told that those "crimes of violence" were so egregious that using a gun in connection with them amounted to separate felonies. And yet, those so-called "crimes of violence" were not crimes at all, and should never have been presented to the jury, during either stage of Mr. Johnson's trial. It is inconceivable that the cumulative weight of the multiple § 924(c) crimes of violence upon which the jury was instructed to deliberate, none of which actually constituted a crime, did not impact the jury's decision to impose a sentence of death on the crimes of violence constituting the § 848 murders.

Given the likelihood that the invalid convictions influenced the jury's sentencing verdict on the remaining counts, this Court must order that Mr. Johnson be resentenced by a jury. As the Supreme Court recently made clear in *Hurst v. Florida,* 136 S. Ct. 616 (2016), the Sixth Amendment requires that a jury, and not the court, determine whether a defendant should be sentenced to death. *Hurst,* 136 S. Ct. at 624. The Court was unequivocal: "The Sixth

---

[10] Trial Tr. vol. 16, 3223, Feb. 2, 1993.

27

Amendment protects a defendant's right to an impartial jury. This right required Florida to base [the defendant's] death sentence on a jury's verdict, not a judge's fact finding." *Id.*

After *Hurst,* any death sentence rendered by a court is unconstitutional. An appellate or post-conviction court that finds non-structural error in the defendant's death sentence therefore must remand for a new penalty phase before a jury. It may not engage in post hoc reweighing, or otherwise make its own determination about whether the defendant deserves a death sentence. To the extent any prior Supreme Court decisions, such as *Brown v. Sanders,* 546 U.S. 212, 224-25 (2006), *Stringer v. Black,* 503 U.S. 222, 237 (1992), or *Clemons v. Mississippi,* 494 U.S. 738, 745-46 (1990), authorized such judicial refashioning of a compromised death sentence, *Hurst* necessarily overruled them.

What is more, given the unparalleled need for reliability in capital sentencing, allowing Mr. Johnson's death sentence on the remaining counts to stand despite the jury's exposure to the invalid § 924(c) counts and their prejudicial elements would implicate the Eighth Amendment. The Supreme Court's decision in *Johnson v. Mississippi,* 486 U.S. 578 (1988), provides an instructive analogy. There, the Court held that when a prior conviction used as aggravation in support of a death sentence has subsequently been overturned, the defendant's death sentence violates the Eighth Amendment. As the Court explained, "[t]he fundamental respect for humanity underlying the Eighth Amendment's prohibition against cruel and unusual punishment gives rise to a special need for reliability in the determination that death is the appropriate punishment in any capital case." *Id.* at 584 (internal quotation marks omitted) (citations omitted).

Because the petitioner's prior conviction in *Johnson v. Mississippi* was invalid, the Court deemed it "apparent that the [prior] conviction provided no legitimate support for the death

28

sentence imposed on petitioner." *Id.* at 586. Equally apparent, the Court said, was "that the use of that conviction in the sentencing hearing was prejudicial." *Id.*

And while the prosecutor in *Johnson v. Mississippi* had repeatedly pointed to the prior conviction in his closing argument, the Supreme Court said the now-voided conviction's use as aggravation would have violated the Eighth Amendment no matter what. "Even without that express argument, there would be a possibility that the jury's belief that petitioner had been convicted of a prior felony would be 'decisive' in the 'choice between a life sentence and a death sentence.'" *Id.* (quoting *Gardner v. Florida,* 430 U.S. 349, 359 (1977)).

The same principles apply here. The unconstitutional § 924(c) convictions had a profoundly prejudicial impact on Mr. Johnson's case as a whole, and undermines confidence in his death sentences on the remaining counts.

Mr. Johnson likely was prejudiced even before his case ever reached the jury. When the Department of Justice considered whether to authorize the death penalty against Mr. Johnson, it was presented with an indictment alleging five separate § 924(c) counts and seven capital offenses for crimes of violence, including federal intentional killing, plus additional murder, maiming, and assault offenses, all of which fail the Supreme Court's categorical approach to the force element of those crimes. The Department's capital-case review process was skewed by the presence of the unconstitutional charges, just as the jury's sentencing decision was skewed in *Johnson v. Mississippi.*

This Court should vacate Mr. Johnson's sentence in its entirety and order that he be resentenced before a jury on only the remaining counts after his § 924(c) convictions are vacated.

29

## CONCLUSION AND PRAYER FOR RELIEF

For all the reasons set forth above, Mr. Johnson respectfully asks this Court to vacate his convictions and sentences on Counts 9, 12, 15, 20, and 26, the invalid charges under 18 U.S.C. § 924(c). Mr. Johnson further requests the following relief:

a) That this Court vacate his death sentences on Counts 8, 11, 17, 18, 19, 24, and 25 and remand this case for a new penalty phase trial on those counts.

b) That this Court grant him leave to amend this motion, including by submitting a supplemental memorandum of law to support it.

c) That this Court schedule a status conference on this motion at the Court's earliest convenience, and order that he be personally present at such conference.

d) Any other relief that may be necessary to correct Mr. Johnson's invalid conviction and sentence.

Dated: June 17, 2016                    Respectfully submitted,


/s/  Darren M. Welch
Darren M. Welch,      VA Bar #: 45985
Skadden Arps Slate Meagher & Flom, LLP
1440 New York Avenue, NW
Washington, DC 20005
Ph: (202) 371-7804
Fax: (202) 661-8267
Email: darren.welch@skadden.com

Donald P. Salzman*
Skadden Arps Slate Meagher & Flom, LLP
1440 New York Avenue, NW
Washington, DC  20005
Ph: (202) 371-7983
Fax: (202) 661-9063
Email: donald.salzman@skadden.com
 * pro hac vice to be filed

*Counsel for Corey Johnson*

30

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

1440 NEW YORK AVENUE, N.W.
WASHINGTON, D.C.  20005-2111
———
TEL: (202) 371-7000
FAX: (202) 393-5760
www.skadden.com

DIRECT DIAL
(202) 371-7983
DIRECT FAX
(202) 661-9063
EMAIL ADDRESS
DONALD.SALZMAN@SKADDEN.COM

FIRM/AFFILIATE OFFICES
————
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEW YORK
PALO ALTO
WILMINGTON
————
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SÃO PAULO
SEOUL
SHANGHAI
SINGAPORE
TOKYO
TORONTO

Monday, June 20, 2016

Patricia Connor, Clerk of the Court
United States Court of Appeals for the Fourth Circuit
1100 East Main Street, 5th Floor
United States Courthouse Annex
Richmond, Virginia 23219

Re: *In re Corey Johnson*, Appellate No. 16-13

Dear Ms. Connor:

I respectfully request that you allow this letter to serve as a motion to supplement Corey Johnson's Application to File a Successive Motion Under 28 U.S.C. § 2255 Pursuant to *Johnson v. United States*, 135 S. Ct. 2551 (2015) (hereafter "Application") in the above-captioned case with the following supplemental authority.  Specifically, Mr. Johnson would like to call the Court's attention to *In re Jackson*, No. 16-10 (4th Cir. June 16, 2016), *In re Basham*, No. 16-5 (4th Cir. June 17, 2016), and *In re Fulks*, No. 16-9 (4th Cir. June 17, 2016), in which the Court, on the day before Corey Johnson filed his pending Application (*Jackson*) and on the same afternoon that he filed his pending Application (*Basham* and *Fulks*), authorized three petitioners to file second or successive § 2255 motions in the district court in federal capital cases.

The petitioner in *In re Jackson*, *In re Basham*, and *In re Fulks* were each convicted and sentenced to death for using a firearm during a federal "crime of violence." The underlying crimes of violence in the *Jackson* case were murder, kidnapping, and aggravated sexual assault. The underlying crimes of violence in the *Basham* case were carjacking resulting in death and kidnapping resulting in death.  The underlying crimes of violence in the *Fulks* case were carjacking and kidnapping.

Respectfully submitted,

/s/Donald P. Salzman
Donald P. Salzman
1440 New York Ave. NW
Washington, DC 20005
(202) 371-7983
donald.salzman@skadden.com

Counsel for Corey Johnson

## **CERTIFICATE OF SERVICE**

I certify that on June 20, 2016 the foregoing letter of supplemental authority was served on all parties or their counsel of record through the court's CM/ECF system.

/s/Donald P. Salzman
Donald P. Salzman

IN THE UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

|  |  |  |
|---|---|---|
| | ) | |
| In re: CORY JOHNSON | ) | |
| | ) | No. 16-13 |
| Movant | ) | |
| | ) | |

**United States' Response to Application for Successive § 2255**

Defendant Corey Johnson seeks leave to file a successive habeas petition under 28 U.S.C. § 2255, invoking *Johnson v. United States*, 135 S. Ct. 2551 (2015), to challenge his convictions under 18 U.S.C. § 924(c).  On May 19, 2016, he sought permission from this Court to file a successive § 2255 under *Johnson* in no. 16-4, and after this Court requested and received a response from the United States, this Court denied him authorization for leave to file a successive § 2255 on June 6, 2016.  Dkt. no. 10.  Then, on June 20, 2016, defendant filed the same motion again, while citing additional cases to support his same arguments.

One threshold question is whether a defendant's serial filing of the same application for a successive § 2255 is permitted, and it should not be.  *See In re Williams*, 330 F.3d 277, 282 (4th Cir. 2003) (defendant's "recycled" claims from previous application for successive habeas petition were barred under 28 U.S.C. § 2244(b)(1)).  Section 2244(b)(1) provides, "A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed."  Of course, § 2244(b)(1) refers to "§ 2254 petitions,"

1

and this Court has not squarely held whether § 2244(b)(1) also controls successive § 2255 applications. *United States v. Winestock*, 340 F.3d 200, 205 (4th Cir. 2003) (citing Sixth and Seventh Circuit precedent applying § 2244(b)(1) to successive § 2255s but declining to decide issue). But the case for applying § 2241(b)(1) to § 2255s has considerably strengthened since *Winestock* left the issue open, with courts of appeals repeatedly invoking § 2241(b)(1) in § 2255 litigation. *See, e.g., United States v. Lee*, 792 F.3d 1021, 1023 (8th Cir. 2015); *United States v. Winkelman*, 746 F.3d 134, 135 (3d Cir. 2014); *Simpson v. United States*, 721 F.3d 875, 876 (7th Cir. 2013); *In re Liddell*, 722 F.3d 737, 738 (6th Cir. 2013) (per curiam); *Gallagher v. United States*, 711 F.3d 315, 315 (2d Cir. 2013) (per curiam).

Moreover, defendant's approach would create an improper evasion of the statutory bar in 28 U.S.C. § 2244(b)(3)(E) on rehearing for denial of an application and would constitute an improper abuse of the writ of habeas corpus. Under defendant's approach, although the government could not seek further review of a ruling *granting* authorization to file a successive § 2255, a defendant who was *denied* permission to file a successive § 2255 could simply refile the application multiple times, updating his arguments with each new filing. *Cf. Magwood v. Patterson*, 561 U.S. 320, 337-38 (2010) (discussing relationship between AEDPA standards and pre-AEDPA abuse-of-writ standards); *Felker v. Turpin*, 518 U.S. 651, 664 (1996) (citing *McCleskey v. Zant*, 499 U.S. 467 (1991), and noting abuse AEDPA standards are "well

within the compass of this evolutionary process" for the doctrine of abuse of the writ).

But regardless of § 2244(b)(1)'s procedural bar to defendant's refiled application, defendant's application still plainly fails on its own right. Defendant's application runs straight into the problem—among others—that his § 924(c) convictions have separate drug-trafficking predicates within the meaning of § 924(c)(2) supporting each of his § 924(c) convictions. In *Johnson*, the Supreme Court invalidated as unconstitutionally vague the residual clause of the Armed Career Criminal Act's definition of a violent felony. But § 924(c)(2)'s definition of "drug trafficking crime" does not even arguably resemble the ACCA's residual clause.

Defendant's first application ignored both § 924(c)(2)'s standard and that his § 924(c) convictions are supported by drug-trafficking predicates. The United States pointed out this flaw in defendant's argument in the government's response, and this Court denied defendant's application. In his second application, filed in no. 16-13, defendant again ignores that he has separate drug-trafficking predicates within the meaning of § 924(c)(2) supporting each of his § 924(c) convictions. These drug-trafficking predicates preclude authorization. Indeed, the drug-trafficking predicates show that his claim should be denied *even under the principal new authority that he now cites.*

This Court recently concluded that a defendant whose § 924(c) count was based on federal bank robbery could not obtain authorization for a successive § 2255 under *Johnson* to challenge that § 924(c) count because "federal armed bank robbery is

a crime of violence . . . under the 'force clause' of 18 U.S.C. § 924(c)(3)(A)," and hence "the holding of *Johnson* is inapplicable." *In re Hubbard*, ---F.3d---, 2016 WL 3181417, *2 (4th Cir. June 8, 2016) (citing *United States v. McNeal*, 818 F.3d 141, 151-57 (4th Cir. 2016)).  This conclusion applies *a fortiori* to a § 924(c) conviction based on a drug-trafficking predicate.  *Johnson* does not open the door to successive § 2255s invoking *Johnson* to challenge § 924(c) convictions based on drug-trafficking predicates, for *Johnson* has nothing to do with classifying drug-trafficking crimes. Even on direct appeal, this Court has rejected challenges to § 924(c) convictions based on *Johnson* when the § 924(c) conviction was supported by a drug-trafficking predicate. *United States v. Hare*, 820 F.3d 93, 105-06 (4th Cir. 2016).

A defendant seeking permission to file a successive § 2255 must show that "it appears reasonably likely that the motion satisfies the stringent requirements for the filing of a second or successive petition." *In re Williams*, 330 F.3d 277, 281 (4th Cir. 2003) (citations and internal brackets omitted).  But even under the prima-facie standard, this Court will not "authorize a successive § 2255 motion that is plainly barred as a matter of law." *In re Vassell*, 751 F3d 267, 271 (4th Cir. 2014) (rejecting that defendant satisfied prima facie showing for successive § 2255 when claim was barred by statute of limitations).  Although defendant appears to believe that *In re Hubbard* rejects this point—an issue discussed in greater detail below—*Hubbard* in fact concluded that the defendant's challenge in that case *to his § 924(c) conviction* did not pass muster, even at the stage of a prima facie showing, because *Johnson* could not

4

557a

provide a basis for relief. *Hubbard* could not, and did not seek to, overrule earlier circuit precedent, such as *Vassell*.

In the government's view, defendant's claim fails for additional reasons as well. Although *Hubbard* itself precludes authorization in this case, very recent published precedent from other circuits further supports the government's view that, even at the prima facie stage, the standards for obtaining leave to file a successive § 2255 under *Johnson* and § 2255(h)(2) are not readily satisfied.

Moreover, regardless of the view a court takes of § 2255(h)(2) and *Johnson* at the prima facie stage, defendant's claim fails to satisfy the statute of limitations in § 2255(f)(3)—a defense that may be considered at this stage under *In re Vassell*. Each of these points is discussed below.

## I.

Defendant and two codefendants were sentenced to death in 1993 after more than three weeks of trial and sentencing proceedings. Their convictions and death sentences were affirmed on direct appeal. *United States v. Tipton*, 90 F.3d 861 (4th Cir. 1996), *cert. denied*, 520 U.S. 1253 (1997). And their challenges to their convictions and death sentences were also denied under § 2255. *United States v. Roane*, 378 F.3d 382 (4th Cir. 2004), *cert. denied*, 546 U.S. 810 (2005). Defendants remain today subject to valid death sentences.

Defendant's criminal conduct was exceptionally serious—even for homicide defendants. As this Court noted in defendant's direct appeal, the jury convicted him

"of all seven of the capital murders with which he was charged under [21 U.S.C.] § 848(e)." *Tipton*, 90 F.3d at 869. Defendant was "also convicted of conspiracy to possess cocaine base with the intent to distribute (21 U.S.C. § 846), engaging in a CCE (21 U.S.C. § 848(a)), eleven counts of committing acts of violence (including the seven killings charged under § 848(e)) in aid of racketeering activity (18 U.S.C. § 1959), five counts of using a firearm in relation to a crime of violence or drug trafficking offense (18 U.S.C. § 924(c)), and two counts of possession of cocaine base with the intent to distribute (21 U.S.C. § 841(a)(1))." *Tipton*, 90 F.3d at 869-70.

Notably, as both defendant's indictment and the jury instructions reflected, defendant's five convictions under § 924(c) each had multiple predicate offenses that included both crimes of violence and drug-trafficking offenses. Defendant's § 924(c) offenses are as follows:

| § 924(c) count | Date | Predicate offenses |
| --- | --- | --- |
| Count 9 | Jan. 14, 1992 | Count 1 (21 U.S.C. § 846)<br>Count 8 (21 U.S.C. § 848(e)(1)(A))<br>Count 10 (18 U.S.C. § 1959) |
| Count 12 | Jan. 29, 1992 | Count 1 (21 U.S.C. § 846)<br>Count 11 (21 U.S.C. § 848(e)(1)(A))<br>Count 13 (18 U.S.C. § 1959) |
| Count 15 | Feb. 1, 1992 | Count 1 (21 U.S.C. § 846)<br>Count 14 (18 U.S.C. § 1959)<br>Count 16 (18 U.S.C. § 1959) |
| Count 20 | Feb. 1, 1992 | Count 1 (21 U.S.C. § 846)<br>Counts 17-19 (21 U.S.C. § 848(e)(1)(A))<br>Counts 21-23 (18 U.S.C. § 1959) |

Count 26          Feb. 19, 1992          Count 1 (21 U.S.C. § 846)
                                         Counts 24-25 (21 U.S.C. § 848(e)(1)(A))
                                         Counts 27-30 (18 U.S.C. § 1959)

In his application for a successive § 2255 motion, defendant challenges only his convictions under § 924(c)—counts 9, 12, 15, 20, and 26.  Defendant did not receive a death sentence on those counts, and he fails to show that the existence of the § 924(c) counts—as opposed to the facts supporting those counts—affected the death sentence imposed for his convictions under § 848.

## II.

### 1.    *Defendant's § 924(c) counts are supported by valid drug-trafficking predicates not even arguably affected by* **Johnson.**

Defendant's application for a successive § 2255 should be denied because defendant still has valid *drug-trafficking* predicates for each of his § 924(c) convictions. The indictment charged the drug-trafficking predicates for the § 924(c) counts; the jury instructions identified both crimes of violence *and drug-trafficking offenses* as predicates for the § 924(c) counts, trial tr. at 3222-23; and he was found guilty of the relevant drug-trafficking predicates.

Critically, both count 1, charging a violation of 21 U.S.C. § 846, and counts 8, 11, 17-19 , and 24-25, charging violations of 21 U.S.C. § 848(e)(1)(A), qualify as drug-trafficking offenses.  Section 924(c)(2) defines a "drug-trafficking crime" for § 924(c). Section 924(c)(2) provides, "For purposes of this subsection, the term 'drug trafficking crime' means any felony punishable under the Controlled Substances Act (21 U.S.C. § 801 et seq.). . . ."  Defendant's predicate offenses under 21 U.S.C.

7

§ 848(e)(1)(A) satisfy § 924(c)(2) because § 848(e) is a felony punishable under the Controlled Substances Act. *Cf. United States v. Nelson*, 484 F.3d 257 (4th Cir. 2007) (applying analogous reasoning that § 924(c) may count as a felony drug offense under § 841(b)(1)(B)). In short, defendant's § 924(c) convictions in counts 9, 12, 20, and 26 are all supported by convictions under § 848(e)(1)(A), as charged in counts 8, 11, 17, 18, 19, 24, and 25 of the indictment.

Defendant's § 924(c) conviction in count 15 is also supported by a predicate offense charged in count 1, a violation of 21 U.S.C. § 846. Section 846 is, of course, another violation of the Controlled Substances Act and hence counts as a drug-trafficking crime. Although this Court held in defendant's direct appeal that count 1 merged with another drug-trafficking offense, count 2, charging a violation of § 848, *see Tipton*, 90 F.3d at 891, that merger offers defendant no relief. Both § 846 charged in count 1 and § 848 charged in count 2 are drug-trafficking offenses, and regardless, a separate § 846 conviction need not stand as a separate offense to sustain the § 924(c) conviction. *See, e.g., United States v. Hopkins*, 310 F.3d 145, 152-53 (4th Cir. 2002) (affirming § 924(c) conviction where charged predicate was assault with a weapon under 18 U.S.C. § 111(b), even though jury convicted only on lesser included offense of § 111(a), assault without a weapon).

As noted above, even on direct appeal, this Court has rejected challenges to § 924(c) convictions based on *Johnson* when the § 924(c) conviction was supported by a drug-trafficking predicate offense. *Hare*, 820 F.3d at 105-06. And each of

8

defendant's five § 924(c) convictions included a separate drug-trafficking offense listed in the indictment as predicates for each respective § 924(c), and the jury found defendant guilty of those drug-trafficking offenses.  Specifically, defendant was convicted of the drug-trafficking crimes charged under 21 U.S.C. § 846 and § 848(e)(1)(A) in counts 1, 8, 11, 17, 18, 19, 24, and 25.  This point alone terminates defendant's argument that he should be permitted to file a successive § 2255.  This Court will not "authorize a successive § 2255 motion that is plainly barred as a matter of law." *In re Vassell*, 751 F.3d at 271.  To the extent defendant quarrels with the jury instructions, first, under this Court's precedent, the classification of an offense as a crime of violence or drug-trafficking crime is for the court, not the jury, *United States v. Adkins*, 937 F.2d 947, 950 n.2 (4th Cir. 1991), and second, a successive § 2255 cannot be authorized for an alleged error in jury instructions.

> 2. *The prima facie standard for receiving permission to file a successive § 2255 permits a court to deny permission when Johnson has no application to the case and indeed should be viewed as placing even more stringent limits.*

In *Welch v. United States*, 136 S. Ct. 1257 (2016), the Supreme Court held that *Johnson*'s invalidation of the residual clause of the Armed Career Criminal Act is retroactive in ACCA cases.  In the months after *Welch* was decided, the federal courts of appeals have differed on how they have applied *Welch* and *Johnson* when a defendant files an application with a court of appeals for permission to file a successive § 2255.  One starting point, however, is that all circuits agree that a ruling from a court of appeals *granting* permission to file a successive § 2255 does not

conclusively resolve the merits of any issue presented by the successive § 2255. This Court of course agrees. "[T]he 'showing of possible merit'" required to satisfy the prima-facie standard "relates to the possibility that the claims in a successive application will satisfy 'the stringent requirements for the filing of a second successive petition,' not the possibility that the claims will ultimately warrant a decision in favor of the applicant." *In re Williams*, 330 F.3d at 282. But as discussed below, the standard of "possible merit" does not collapse the standards for a successive § 2255 so that those standards are effectively equivalent to evaluating whether it is "possible" that a defendant could have prevailed if the defendant were on direct appeal with a *Johnson* claim.

Relatedly, the standard for an application to file a successive § 2255 is not so low that no merits determination may be made at all. No circuit appears to have concluded that it is impossible, at the prima facie stage, to evaluate whether *Johnson* could afford relief in a defendant's case. The standard is not that permissive. As the Eighth Circuit explained yesterday, "A movant surely cannot be authorized to pursue a claim unrelated to the new rule simply by citing *Johnson* and *Welch* and claiming that his motion 'contains' a new rule." *Donnell v. United States*, ---F.3d---, 2016 WL 3383831, *1 (8th Cir. June 20, 2016). Similarly, although the Supreme Court has placed limits under the Eighth Amendment on punishment for juveniles and has made certain Eighth Amendment rules retroactive, *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016), that does not mean a defendant who was 40 years old at the time of his

10

crime can receive authorization for a successive § 2255 by citing *Montgomery* in his application. This Court's opinions in *Vassell*, and *Hubbard* establish that this Court has not interpreted the prima-facie standard to permit authorization of such applications—or of a challenge like defendant's where § 924(c) convictions are supported by valid drug-trafficking predicates. *See also In re Thomas*, ---F.3d---, 2016 WL 3000325, *3 (11th Cir. May 25, 2016) (denying application for successive § 2255 motion challenging ACCA sentence where defendant's sentence was supported by prior convictions that did not depend on the ACCA's residual clause).

Once it is established as evidently common ground among the circuits—and certainly in this Circuit—that (a) a ruling finding that the prima facie standard was met is not an ultimate determination of the merits, but (b) a court at the prima facie stage may determine whether the defendant's claim under the new rule has "possible merit" and could potentially apply to the defendant's case, there remain the questions of what—in addition—must be shown at the prima facie stage under § 2255(h)(2) and how those standards apply to claims under *Johnson*. Again, an application for a successive § 2255 is not the equivalent of a determination that a defendant's claim could have possible merit in a direct appeal. And on direct appeal, a division of authority on an issue in other circuits and a lack of precedent in this circuit *bars* relief for unpreserved claims that seek to extend *Johnson* to new topics. *See, e.g., United States v. Graham*, ---F.3d---, 2016 WL 3068018, *1 n.1 (4th Cir. May 31, 2016) (en banc). *Cf. United States v. Frady*, 456 U.S. 152, 166 (1982) ("We reaffirm the well-settled principle

11

that to obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal.").

On how an application for permission to file a successive § 2255 differs from determination of possible merit on direct appeal, the circuits have differed, although none of the difference ultimately help defendant.

The most recent published opinion on this topic is the Eighth Circuit's opinion in *Donnell*, which accords with the government's reading of authorization for a successive § 2255. In *Donnell*, the defendant sought to challenge his guideline sentence under *Johnson* in an application for a successive § 2255. The Eighth Circuit noted two hurdles to the defendant receiving authorization: First, "Whether an advisory sentencing guideline is susceptible to a vagueness challenge is an open question in this circuit." *Donnell*, 2016 WL 3383831 at *1. But that barred a successive petition because "the post-conviction court must announce a second new rule that extends *Johnson* to the sentencing guidelines," something the Supreme Court had not itself done in expanding the substantive right created by *Johnson*. *Id.* Second, the newly extended application of *Johnson* to the guidelines must be made retroactive by the Supreme Court, but again, that may not be done by a lower court in a successive § 2255. "Donnell's successive motion seeks to assert a new right that has not been recognized by the Supreme Court or made retroactive on collateral review." *Id.* at *3.

12

Last Friday, in two published opinions, the Fifth Circuit agreed with the approach taken by the Eighth Circuit on extending *Johnson* to both § 924(c) and the guidelines. *In re Fields*, ---F.3d---, 2016 WL 3383460 (5th Cir. June 17, 2016) (per curiam) (denying application for successive § 2255 challenging § 924(c) conviction); *In re Arnick*, ---F.3d---, 2016 WL 3383487 (5th Cir. June 17, 2016) (per curiam) (decision after circulation to all active judges in circuit). As *Arnick* explained, "federal courts of appeals disagree on whether *Johnson* applies to the Guidelines, demonstrating that the Supreme Court has not decided the question." *Id.* (citations omitted). "Further, even if *Johnson* does implicate Section 4B1.2(a)(2), the Supreme Court has not addressed whether this arguably new rule of criminal procedure applies retroactively to cases on collateral review." *Id.* Again, this reading of successive applications matches the government's reading of the applicable statutes.

Like the Fifth and Eighth Circuits, the Eleventh Circuit has denied applications for successive § 2255s challenging guideline sentences in published opinions. *In re Griffin*, ---F.3d---, 2016 WL 3002293, *5 (11th Cir. May 25, 2016) (per curiam) (denying application to file successive § 2255 that sought to extend *Johnson* to sentence imposed under mandatory guidelines and concluding extension was barred in successive habeas petition even apart from circuit precedent rejecting vagueness challenges to guidelines). But, parting ways from the approach of the Fifth and Eighth Circuits, the Eleventh Circuit has authorized successive § 2255s challenging § 924(c) convictions that may have been based on the crime of violence definition in

13

§ 924(c)(3)(B), *In re Pinder*, ---F.3d---, 2016 WL 3081954 (11th Cir. June 1, 2016), although the Eleventh Circuit has declined to authorize successive § 2255 petitions challenging § 924(c) convictions where the predicate offense satisfies § 924(c)(3)(A), such as a substantive offense of Hobbs Act robbery, *In re Fleur*, ---F.3d---, 2016 WL 3190539 (11th Cir. June 8, 2016) (per curiam).

Meanwhile, following this Court's approach in *Hubbard* toward authorizing a successive petition challenging a guideline challenge, the Tenth Circuit has issued a published opinion authorizing a successive § 2255 challenging a guideline sentence under *Johnson*. *In re Encinias*, ---F.3d---, 2016 WL 1719323 (10th Cir. Apr. 29, 2016). Other circuits have both denied and authorized successive § 2255s under *Johnson* in unpublished orders, as this Court has as well.

Also worth noting is that two petitions for writs of certiorari have been pending in the Supreme Court challenging denials of relief in first § 2255s for guideline challenges under *Johnson*—with one case originating from the Eleventh Circuit, *Travis Beckles v. United States*, no. 15-8544, and one from the Third Circuit, *Alfrederick Jones v. United States*, no. 15-8629. In both cases, Federal Defenders have requested that the Supreme Court summarily reverse in light of *Johnson* and *Welch*, arguing that such a ruling would open the door to all § 2255s challenging the guidelines by June 26, 2016. On June 8, 2016, Beckles and Jones notified the Supreme Court of this Court's ruling in *Hubbard*.

But even though the Supreme Court scheduled the *Beckles* and *Jones* petitions for the June 2, June 9, June 16, and now June 23 conferences, the Court has not summarily reversed at this point and appears unlikely to act on the petitions before next week and June 27, 2016. Briefs and the dockets for those cases are available here: http://www.scotusblog.com/case-files/cases/beckles-v-united-states/ and here: http://www.scotusblog.com/case-files/cases/jones-v-united-states-3/ Any outcome of those petitions other than a prompt summary reversal before next week undercuts the idea that the Supreme Court has, itself, already decided that *Johnson* applies to the guidelines *and* is retroactive in guidelines cases. Why would the Court deny certiorari, precluding relief for a defendant, or fail to grant, vacate, and remand in light of *Welch*, or fail even to act on a certiorari petition by the date posited as the relevant statute of limitations for an issue that the Court had already decided?

And this last point leads back to two critical questions that these successive § 2255 applications raise and that lie at the heart of the published circuit opinions just reviewed above. First, which court must decide whether *Johnson*'s vagueness rule extends outside the context of the ACCA's residual clause? The Supreme Court or a lower court? Second, which court must decide whether a particular extension of *Johnson* is retroactive? Again, the Supreme Court or a lower court? As to the latter retroactivity question, this Court has concluded in line with Supreme Court precedent that the Supreme Court itself must be the one that makes the retroactivity determination. A successive § 2255 requires, as relevant here, that a defendant be

15

entitled to relief under "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h)(2). This standard is satisfied "only when the Supreme Court declares the collateral availability of the rule in question." *United States v. Thomas*, 627 F.3d 534, 536 n.1 (4th Cir. 2010) (quoting *In re Vial*, 115 F.3d 1192, 1197 (4th Cir. 1997) (en banc); citing *Tyler v. Cain*, 533 U.S. 656, 662 (2001)).

This Court's opinion in *Hubbard* concluded—at the prima facie stage—that the Supreme Court in *Welch* already decided the retroactivity question of *Johnson* in the guidelines context, even though neither *Johnson* nor *Welch* discussed the guidelines, and even though other circuits now disagree on that question. Although this pleading is not the place to develop the government's arguments on the retroactivity question in detail, the United States respectfully disagrees with *Hubbard*'s prima facie determination of that question and was unable to seek further review because an authorization to file a successive petition "shall not be appealable and shall not be the subject of a petition for rehearing or for a writ of certiorari." § 2244(b)(2)(E).

But there is a separate question not squarely addressed by *Hubbard*. This Court does not appear to have resolved whether § 2255(h)(2) requires that the Supreme Court itself must also be the Court that extends substantively a right into a new area—an issue distinct from the retroactivity question. Notably, though, this Court has held that § 2255(f)(3), which provide the applicable statute of limitations in this case, does expressly require that the *Supreme Court* be the Court extending a new

16

substantive right.  Further underscoring that point, this Court has held that

§ 2255(f)(3)—unlike § 2255(h)(2)—does *not* require that the Supreme Court decide the

retroactivity of the new right.  Thus, this Court has held "that § 2255(f)(3) does not

require that the initial retroactivity question be decided in the affirmative *only* by the

Supreme Court." *Thomas*, 627 F.3d at 536.  Given that § 2255(f)(3) expressly refers

twice to the Supreme Court recognizing a right, and that § 2255(f)(3) is *not* referring to

the retroactivity determination, as this Court held in *Thomas*, it follows that

§ 2255(f)(3) does require the Supreme Court must make the determination of

extending a right to a new area.  And the plain language of § 2255(f)(3) itself makes

clear that the Supreme Court must be the Court that recognizes the new right being

asserted.  Section 2255(f)(3) runs the one-year statute of limitations from "the date on

which the right asserted was initially recognized by the Supreme Court, if that right

has been newly recognized by the Supreme Court and made retroactively applicable to

cases on collateral review."  As the Supreme Court has observed, under § 2255(f)(3),

when the Supreme Court "decides a case recognizing a new right, a federal prisoner

seeking to assert *that right* will have one year from [the Supreme Court's] decision

within which to file his § 2255 motion."  *Dodd v. United States*, 545 U.S. 353, 358–59

(2005) (emphasis added).

True, § 2255(f)(3) refers to when the Supreme Court "initially" recognized the

right, but the role of that language is to prevent defendants from keeping the statute

of limitations endlessly open just because later Supreme Court opinions repeat a right

17

already recognized in a particular context in an earlier opinion. This Court's opinion in *Vassell* illustrates that principle in the context of Eighth Amendment challenges to juvenile sentences. But in keeping with the limitations described above, this Court has explained, "Section 2255(f)(3) does not authorize [the court] to read between the lines of a prior opinion to discern whether that opinion, by implication, made a new rule retroactively applicable on collateral review." *United States v. Mathur*, 685 F.3d 396, 401 (4th Cir. 2012).

Here, defendant cannot show that the Supreme Court itself has extended *Johnson* to 924(c)(3)(B), and hence the defendant's challenge to his long-final conviction cannot fit under § 2255(f)(3). If the Supreme Court itself had already decided *Johnson*'s application to § 924(c)(3)(B), this Court sitting *en banc* in *Graham* could not have denied under plain error a defendant's *Johnson* challenge to a § 924(c) conviction. *See also United States v. Fuertes*, 805 F.3d 485, 499 n.5 (4th Cir. 2015) (declining to decide § 924(c)(3)(B)'s constitutionality and observing that in *Johnson* "the Supreme Court held unconstitutionally vague the version of the residual clause set forth in 18 U.S.C. § 924(e)(2)(B), but the Court had no occasion to review the version of the residual clause set forth at 18 U.S.C. § 924(c)(3)(B)."). Recently, the Supreme Court discussed 18 U.S.C. § 16, which has similar wording as § 924(c), and did not treat half of that statute, § 16(b), as unconstitutionally vague. *Torres v. Lynch*, 136 S. Ct. 1619, 1629-30 (2016). The dissent in *Torres* likewise did not raise any question about § 16(b)'s validity. *Id.* at 1637 & n.1. Likewise, the only court of appeals to apply

18

*Johnson* to § 924(c) has rejected the challenge to the statute, *United States v. Taylor*, 814 F.3d 340, 378 (6th Cir. 2016). And the Fifth Circuit recently heard en banc argument on § 16(b)'s constitutionality after granting rehearing in *United States v. Gonzalez-Longoria*, 813 F.3d 225 (5th Cir. 2016). *Cf. Dimaya v. Lynch*, 803 F.3d 1110, 1120 (9th Cir. 2015) (same), *gov. cert. petition filed*, no. 15-1498 (June 10, 2016). Further, the Supreme Court has not summarily granted, vacated, and reversed any petitions raising a challenge to Section 924(c)(3)(B), which suggests that the Court does not believe that it has already resolved the applicability of *Johnson*'s logic to § 924(c)(3)(B).

As this Court's opinion in *Vassell* illustrates, a statute of limitations defense may be considered at the prima facie stage, and here, as a matter of law, defendant is foreclosed by § 2255(f)(3). And as the Eighth Circuit recently concluded, "Section 2255(h)(2) should be construed *in pari material* with § 2255(f)(3). *Donnell*, 2016 WL 3383831 at *2.

The limitations on successive § 2255s that the government described above work together to produce a sensible, rational system. When the Supreme Court has specifically recognized a right and itself made that right retroactive, it is comparatively much easier for courts of appeals to apply that newly recognized retroactive right in successive petitions—including by dealing with old cases—within the 30-day clock for ruling on such motions. The volume of affected cases is more manageable too by virtue of the targeted application of precedent. And by the same token, when the statutory scheme described by the government is followed, a premature filing that fails

to fit under the limitations under § 2255(h)(2) and § 2255(f)(3) should not be deemed under § 2244(b)(1) to preclude a later filing for a successive § 2255 *if the Supreme Court later recognizes a new, retroactive extension of a constitutional claim.* *Hernandez v. United States*, 226 F.3d 839, 841 (7th Cir. 2000).

The course this Court is taking instead is far less supported by the statutory language and is less workable and fair. Defendants who are not challenging ACCA sentences and fail to come up with and pursue extensions of *Johnson* by next week will presumably barred in the future by the statute of limitations, even if the Supreme Court later recognizes those extensions. Meanwhile, district courts will be left to rule on an array of unsettled extensions of *Johnson* under § 2255(h)(2) and § 2255(f)(3) when the more orderly process of waiting for controlling Supreme Court precedent could have been followed, which would reduce the expenditure of judicial resources and guarantee far greater uniformity and fairness in outcomes. Also, if this Court's approach is consistently applied, § 2244(b)(1) should apply more broadly. And there will be great disparities with other circuits. In short, the government respectfully disagrees with this Court's reading of the standards controlling successive § 2255s. But for this present case, under both the government's view of § 2255(h) and § 2255(f)(3), and this Court's view of those statutes, this defendant's application must be denied as unauthorized. Because of space and time constraints, the government will not repeat here its additional arguments that murder under 18 U.S.C. § 1959 remains a proper predicate under § 924(c)(3)(A).

Respectfully submitted,

Dana J. Boente
United States Attorney

By:  _____/s/_____
Richard D. Cooke
Assistant United States Attorney
U.S. Attorney's Office
Eastern District of Virginia
919 East Main Street, Suite 1900
SunTrust Building
Richmond, Virginia 23219
(804) 819-5471

## Certificate of Service

I certify that on June 21, 2016, I filed electronically the foregoing with the Clerk of the Court using the CM/ECF system, which will send notice of the filing to all counsel of record.

_____/s/_____
Richard D. Cooke
Assistant United States Attorney
U.S. Attorney's Office
Eastern District of Virginia
919 East Main Street, Suite 1900
SunTrust Building
Richmond, Virginia 23219
(804) 819-5471
richard.cooke@usdoj.gov

21

FILED:  June 22, 2016

## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

_____

No. 16-13
(3:92-cr-00068-JRS-2)

_____

In re: CORY JOHNSON

Movant

_____

O R D E R

_____

Movant has filed a motion under 28 U.S.C. § 2244 for an order authorizing

the district court to consider a second or successive application for relief under 28

U.S.C. § 2255.

The court denies the motion.

Entered at the direction of Judge Wilkinson with the concurrence of Judge

King and Judge Duncan.

For the Court

/s/ Patricia S. Connor, Clerk

575a