# Appendix 3C

**Case No.**

_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

_____

**IN RE COREY JOHNSON,**

**Movant**

_____

**APPLICATION FOR AUTHORIZATION TO FILE
A SUCCESSIVE MOTION UNDER 28 U.S.C. § 2255
PURSUANT TO *JOHNSON V. UNITED STATES*, 135 S. CT. 2551 (2015)**

_____

Donald P. Salzman
Skadden Arps Slate Meagher & Flom, LLP
1440 New York Ave. NW
Washington, DC 20005
(202) 371-7983
donald.salzman@skadden.com

*Attorney for Petitioner*

Movant, Corey Johnson[1], through undersigned counsel, respectfully asks this Court, pursuant to 28 U.S.C. § 2244(b)(3), to authorize him to file the attached successive Motion to Vacate Conviction Under 28 U.S.C. § 2255(h)(2) Pursuant to *Johnson v. United States,* 135 S. Ct. 2551 (2015) (Appendix 1). Mr. Johnson makes this request so that he may immediately assert a challenge to his convictions for using or carrying a firearm during and in relation to a "crime of violence," in violation of 18 U.S.C. § 924(c).

Specifically, Corey Johnson seeks to challenge his § 924(c) convictions under *Johnson v. United States,* 135 S. Ct. 2551 (2015), and *Welch v. United States,* 136 S. Ct. 1257 (2016). *Johnson* held that the residual clause of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), is unconstitutionally vague. From *Johnson,* it follows that 18 U.S.C. § 924(c)(3)(B), which defines the "crime of violence" element for purposes of a § 924(c) offense, is also unconstitutionally vague. Thus, after *Johnson,* Corey Johnson's § 924(c) convictions cannot be sustained.

In *Welch,* the Supreme Court expressly held that *Johnson* applies retroactively to cases on collateral review such as Corey Johnson's. *Welch,* 136 S. Ct. at 1265. Further, Corey Johnson has filed this application and the attached §

---

[1] Mr. Johnson's actual first name is "Corey" but it was misspelled as "Cory" in his indictment, in various pleadings filed before this Court, and in the subsequent decisions following his convictions. Mr. Johnson is using the correct spelling of his name in this pleading.

2255 motion within one year after the Supreme Court issued its decision in *Johnson* on June 26, 2015.

As explained below, Mr. Johnson can make the *prima facie* showing required by 28 U.S.C. §§ 2244(b)(3) and 2255(h)(2).  This Court therefore should allow the district court an opportunity to consider the merits of his application.

## INTRODUCTION

On February 3, 1993, Corey Johnson was convicted of twenty-seven counts in the above-captioned indictment, including five counts of using or carrying a firearm during and in relation to a crime of violence or a drug trafficking crime in violation of 18 U.S.C. § 924(c) (Counts 9, 12, 15, 20, and 26) and seven counts of intentional killings committed in the course of a continuing criminal enterprise in violation of 21 U.S.C. § 848(e)(1), each of which was a separate crime of violence. He was also convicted of eleven additional counts of murder, maiming, or assault in the course of a racketeering influenced and corrupt organizations activity in violation of 18 U.S.C § 1959(a), which were also separate crimes of violence.  The jury subsequently sentenced Mr. Johnson to seven separate death sentences as a result of his convictions for crimes of violence.

Post-*Johnson,* however, intentional killings under 21 U.S.C. § 848(e)(1)(A) do not qualify as a categorical "crime of violence" within the meaning of § 924(c), nor do murders, maiming, and assaults under 18 U.S.C. 1959(a).  This is explained

in much greater detail in Part I of Mr. Johnson's proposed successive § 2255 motion. Because § 848 murder is not a "crime of violence" within the constitutionally valid construction of § 924(c), Mr. Johnson is innocent of the § 924(c) offenses. As explained in Part III of his proposed successive § 2255 motion, Corey Johnson's death sentences are similarly void because they were certainly influenced by his improper conviction for multiple § 924(c) offenses, and he must be resentenced by a jury for those convictions.

As explained in detail in Part IA of Mr. Johnson's proposed § 2255 motion, the relevant portion of § 924(c) includes two alternative clauses defining a "crime of violence." The first, § 924(c)(3)(A), is commonly referred to as the "force" or "elements" clause. It applies to any felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another[.]" The second, § 924(c)(3)(B), is commonly referred to as the residual clause. It applies to any felony "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."

This second definition, the residual clause, is indistinguishable in all material respects from the residual clause of the ACCA that the Supreme Court in *Johnson* deemed unconstitutionally vague. *See Johnson,* 135 S. Ct. at 2557. Courts have already invalidated a residual clause identical to that in § 924(c). The

residual clause of 18 U.S.C § 16(b) is the mirror image of the residual clause in § 924(c), and the Fifth, Seventh and Ninth Circuits have all struck it down following *Johnson. See United States v. Gonzalez-Longoria,* 813 F.3d 225 (5th Cir. 2016); *United States v. Vivas-Ceja,* 808 F.3d 719 (7th Cir. 2015); *Dimaya v. Lynch,* 803 F.3d 1110 (9th Cir. 2015).

Still further, at least two district courts have considered § 924(c)'s residual clause itself and have found it void for vagueness in light of *Johnson. See United States v. Lattanaphom,* __ F. Supp. 3d __, 2016 WL 393545 (E.D. Cal. Feb. 2, 2016); *United States v. Edmundson,* __ F. Supp. 3d __, 2015 WL 9311983 (D. Md. Dec. 30, 2015). These cases compel the same result in Mr. Johnson's case. Because § 924(c)'s residual clause is void for vagueness, it cannot constitutionally define a "crime of violence" for purposes of a § 924(c) conviction.

Furthermore, as explained in detail in Part IIB of Mr. Johnson's successive § 2255 motion, intentional killing under 21 U.S.C. § 848(e)(1)(A) and homicide, maiming, and assault under 18 U.S.C. § 1959(a) do not categorically qualify as "crimes of violence" under the remaining force or elements clause because they can be committed without the use of force, much less violent physical force. A defendant can also be convicted of homicide pursuant to § 848(e)(1)(A) if the intentional killing is actually perpetrated by another person, if the defendant "commands, induces, procures, or causes" the killing. And under § 1959(a), a

defendant can be convicted of murder committed by an accomplice even if the defendant did not participate in the killing under a felony murder principle, or can be convicted of felony murder, maiming, or assault during the commission of a felony that itself did not require the use of force.[2] Thus, homicide under § 848 and intentional killing, maiming, and assault under § 1959(a) do not require as essential elements the use, attempted use, or threatened use of physical force by the defendant.

Because § 924(c)'s residual clause is unconstitutional, Mr. Johnson's § 924(c) convictions and his death sentences pursuant to § 848(e)(1)(A): (1) violate due process; (2) violate the laws of the United States and result in a fundamental miscarriage of justice; and (3) were entered in excess of the district court's jurisdiction. However, because Mr. Johnson previously pursued a collateral attack on his conviction and sentence under 28 U.S.C. § 2255, he may not pursue relief based upon his *Johnson* claim in the district court without this Court's authorization.

Corey Johnson urges this Court to authorize him to file the attached successive § 2255 motion asserting a *Johnson* claim. Such authorization is appropriate when the petitioner makes a "*prima facie* showing" that his proposed claim relies on "a new rule of constitutional law, made retroactive to cases on

---

[2] *See, e.g. United States v. Gardner*, No. 14-4533 (4th Cir. May 18, 2016).

collateral review by the Supreme Court, that was previously unavailable."  28

U.S.C. § 2255(h)(2).

After *Welch,* issued on April 18, 2016, there can be no dispute that *Johnson*

announced a new substantive rule of constitutional law that applies retroactively to

cases on collateral review.  Mr. Johnson has made the required *prima facie*

showing that he should be authorized to pursue a successive § 2255 motion.

### PROCEDURAL HISTORY

**A.     Conviction and Sentencing.**

Mr. Johnson and six co-defendants, Richard Tipton, James H. Roane, Jr.,

Vernon L. Thomas, Jerry R. Gaiters, Sterling Hardy, and Sandra Reavis, were

jointly charged in this Court with conspiracy to possess with intent to distribute

more than 50 grams of cocaine base under 21 U.S.C. § 841(a)(1) (Count 1).  In

addition, some but not all of the defendants were separately charged with: (i)

engaging in a continuing criminal enterprise (hereafter "CCE") in violation of 21

U.S.C. § 848 (Count 2); (ii) while engaged in a CCE, knowingly, intentionally and

unlawfully killing nine separately named individuals in violation of 21 U.S.C. §

848(e)(1)(A) (Counts 3, 5, 8, 11, 17, 18, 19, 24, and 25); (iii) knowingly,

intentionally, and unlawfully causing the murder of ten separately named

individuals as part of an enterprise engaged in racketeering activity in violation of

18 U.S.C. § 1959 (Counts 4, 7, 10, 13, 14, 21, 22, 23, 27, and 28); (iv) using or

7

carrying a firearm during and in relation to a crime of violence or a drug trafficking crime in in violation of 18 U.S.C. § 924(c) (Count 6, 9, 12, 15, 20, and 26); (v) knowingly, intentionally, and unlawfully maiming two separately named individuals in violation of 18 U.S.C. § 1959 (Counts 29 and 30); (vi) knowingly, intentionally, and unlawfully committing assault resulting in serious bodily injury to an individual in violation of 18 U.S.C. § 1959 (Count 16); (vii) knowingly and intentionally distributing cocaine base in violation of 21 U.S.C. § 841(a)(1) (Count 31); and (viii) knowingly and intentionally possessing with intent to distribute more than 50 grams of cocaine base in violation of 21 U.S.C. § 841(a)(1) (Counts 32 and 33).[3]  The government sought the death penalty against Mr. Tipton, Mr. Johnson, and Mr. Roane pursuant to 21 U.S.C. § 848(e)(1) and the jury returned death verdicts against all three men.[4]  Mr. Johnson, specifically, was sentenced to death by the jury on seven counts for the § 848 offenses.

---

[3] Prior to trial, Mr. Thomas' case was severed from his co-defendants' cases and he was tried and convicted in a separate trial.  Although the Government originally sought the death penalty against Mr. Thomas, it later withdrew its death notice prior to trial.  The Government did not seek the death penalty against Mr. Gaiters, Mr. Hardy, or Ms. Reavis.  Mr. Gaiters and Mr. Harvey pled guilty before trial.  Ms. Reavis was tried jointly with Mr. Tipton, Mr. Roane, and Mr. Smith, and she was convicted of the one count with which she was charged.

[4] The Presentence Report prepared in Mr. Johnson's case is attached as Appendix 2.  The sentencing phase transcripts from his case are attached as Appendices 3A to 3H.

8

## B.    Direct Appeal.

Mr. Johnson timely appealed to the Fourth Circuit, raising various issues relating to the guilt and penalty phases of his trial.  The court of appeals rejected all of his arguments and affirmed his convictions and death sentences.  *United States v. Tipton et. al.*, 90 F.3d 861 (4th Cir. 1996).  The United States Supreme Court denied certiorari.  *Roane v. United States,* 5520 U.S. 1253 (1997).

## C.    Previous § 2255 Motion.

Following the denial of certiorari, Mr. Johnson timely filed a motion for collateral relief under 28 U.S.C. § 2255 and later filed several amendments to that motion.[5]  He asserted in the motion and in the amendments to the motion the following claims: (i) error during the jury selection process on a variety of grounds; (ii) prosecutorial misconduct in violation of Mr. Johnson's due process rights on numerous grounds during the jury selection and during the guilt and sentencing phases of the trial; (iii) insufficient evidence to prove Mr. Johnson was a supervisor in a CCE conspiracy; (iv) ineffective assistance of counsel by his trial and appellate attorneys on a variety of grounds during the guilt and sentencing phases of the trial; and (v) constitutional challenges to his death sentences on

---

[5] Mr. Johnson's initial § 2255 motion was docketed under criminal case number 3:92CR68 and civil case number 3:97CV895.  Mr. Johnson's original § 2255 motion and three amended motions he filed are attached as Appendices 4A to 4D.

various grounds.  The district court denied relief.  *United States v. Roane*, No.

3:92CR68 (E.D. Va. May 1, 2003).

The Fourth Circuit affirmed the denial of relief.  *Roane v. United States,* 378

F.3d 382 (4th Cir. 2004).  The United States Supreme Court denied certiorari.

*Johnson v. United States,* 546 U.S. 810 (2005).

**D.**    ***Johnson v. United States.***

On June 26, 2015, the Supreme Court issued its decision in *Johnson,* 135 S.

Ct. 2551.  With *Johnson,* the Supreme Court overruled *Sykes v. United States,* 131

S. Ct. 2267 (2011), and *James v. United States,* 550 U.S. 192 (2007), finding

ACCA's residual clause too vague to provide adequate notice under the Due

Process Clause of the Fifth Amendment.  Specifically, *Johnson* held that "the

indeterminacy of the wide-ranging inquiry required by the residual clause both

denies fair notice and invites arbitrary enforcement by judges," therefore

"[i]ncreasing a defendant's sentence under the clause denies due process of law."

135 S. Ct. at 2557.

**E.**    ***Welch v. United States.***

After *Johnson* was decided, federal prisoners throughout the country sought

to challenge their ACCA-enhanced sentences, as well as convictions and sentences

imposed under materially indistinguishable residual clauses, such as that in 18

U.S.C. § 924(c).  This led to conflict over whether *Johnson* announced a new

10

585a

substantive rule, which would apply retroactively to cases on collateral review, or whether it only announced a new procedural rule, which would not necessarily apply retroactively.

On April 18, 2016, the Supreme Court resolved the issue, finding *Johnson*'s rule substantive and thus applicable retroactively to cases on collateral review. *Welch,* 136 S. Ct. at 1265. After *Johnson* and *Welch,* Mr. Johnson's § 924(c) convictions cannot be sustained, for the reasons stated in detail in his attached § 2255 motion. Mr. Johnson now requests authorization from this Court to file a successive § 2255 motion in the district court.

## LEGAL STANDARDS

This Court should grant Mr. Johnson's application for authorization to file a successive § 2255 motion in the district court because his motion is predicated on *Johnson,* and the Supreme Court expressly held in *Welch* that *Johnson* announced a new substantive rule that applies retroactively to cases on collateral review.

**A.    Mr. Johnson can make a sufficient showing of possible merit to warrant fuller exploration by the district court.**

The gatekeeping provision of the Antiterrorism and Effective Death Penalty Act of 1996 allows a federal prisoner to apply for leave to file a successive § 2255 motion based on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h)(2). Under this provision, a federal prisoner must make a *prima*

11

*facie* showing that the motion to be filed is based on: (1) a new rule of constitutional law; (2) that was previously unavailable; (3) and has been made retroactive by the Supreme Court to cases on collateral review. *See Tyler v. Cain,* 533 U.S. 656, 662 (2001).

This Court has specified that, "*prima facie* showing" of the three requirements to merit the filing of a successor petition under § 2255(h)(2) means "simply a sufficient showing of possible merit to warrant a fuller exploration by the district court." *In re Williams*, 330 F.3d 277, 281 (4th Cir. 2003) (citation omitted). To be clear, the "showing of possible merit" does not refer to the merits of the claims asserted in the petition. Rather, this standard only "relates to the possibility" that the gatekeeping "requirements for the filing of a second or successive petition" under § 2255(h)(2) will be satisfied. *Id.* at 282. In other words, an applicant need only make a prima facie showing that the § 2255(h)(2) standard is met—not a prima facie showing that his claim has merit. While this determination "may entail a cursory glance at the merits . . . the focus of the inquiry must always remain on the [§ 2255(h)(2)] standards." *Id.* As further detailed below, Mr. Johnson easily satisfies the gatekeeping requirements of § 2255(h)(2).

### 1. *Johnson* announced a new rule of constitutional law that was previously unavailable.

First, the Supreme Court's decision in *Johnson* announced a new rule. A case announces a new rule if its result was not "*dictated* by precedent existing at the time the defendant's conviction became final." *Chaidez v. United States,* 133 S. Ct. 1103, 1107 (2013) (quoting *Teague v. Lane,* 489 U.S. 288, 301 (1989)). In *Johnson,* the Supreme Court expressly overruled its prior decisions in *Sykes* and *James*, which had held that ACCA's residual clause was not void for vagueness. *See Johnson,* 135 S. Ct. at 2563 ("Our contrary holdings in *James* and *Sykes* are overruled."). As the Supreme Court has made clear, "[t]he explicit overruling of an earlier holding no doubt creates a new rule." *Whorton v. Bockting,* 549 U.S. 406, 416 (2007) (citation omitted). Further, the Supreme Court has put to rest any possible dispute on this front. In *Welch v. United States,* announced on April 18, 2016, the Court proclaimed: "It is undisputed that *Johnson* announced a new rule." 136 S. Ct. at 1264. *Welch* also put to rest any dispute that *Johnson*'s rule is one of "constitutional law," or that this rule was previously unavailable to Mr. Johnson. *See id.*

### 2. *Johnson* is retroactive, and the Supreme Court has "made" it retroactive to cases on collateral review.

*Welch* also answers the final question this Court must consider before authorizing Mr. Johnson to file his successive § 2255 motion. In *Welch,* the Supreme Court explained that *Johnson*'s rule is substantive, because that rule means the residual clause "can no longer mandate or authorize any sentence. *Johnson* establishes, in other words, that 'even the use of impeccable factfinding procedures could not legitimate' a sentence based on that clause." 136 S. Ct. at 1265 (quoting *United States* v. *United States Coin & Currency*, 401 U. S. 715, 724 (1971)). As such, the Court held, "*Johnson* is thus a substantive decision and so has retroactive effect under *Teague* in cases on collateral review." *Id.*; *accord Woods,* 805 F.3d at 1154.

### 3. *Johnson* invalidates § 924(c)'s residual clause.

Not only does *Johnson* narrow the scope of the ACCA's residual clause, but also, as relevant here, it narrows the scope of 18 U.S.C. § 924(c), and "necessarily carr[ies] a significant risk that a defendant stands convicted of an act that the law does not make criminal." *Schriro v. Summerlin,* 542 U.S. 348, 352 (2004) (internal quotation marks omitted). Section 924(c) criminalizes using or carrying a firearm during and in relation to a "crime of violence." After *Johnson,* certain

14

predicate offenses cannot be categorized as "crimes of violence" consistent with the Due Process Clause. *Johnson* therefore alters what conduct § 924(c) makes criminal.

Here, Mr. Johnson stands convicted of an act that the law does not make criminal, because *Johnson* establishes that the so-called "crime of violence" underlying his § 924(c) conviction cannot constitutionally be considered a crime of violence. *See Bousley v. United States,* 523 U.S. 614, 620 (1998). Indeed, in a recent mandate in *Freeman v. United States,* No. 15-3687 (2d Cir. Jan. 26, 2016), upon the government's concession, the Second Circuit granted a motion to authorize a successive § 2255 motion based on a *Johnson* challenge to a § 924(c) conviction. The Seventh Circuit did the same in a § 924(c) conviction challenge in *Ruiz v. United States,* No. 16-1193 (7th Cir. Feb. 19, 2016).

## B.    Mr. Johnson is entitled to authorization under 28 U.S.C. § 2255(h)(2).

The analysis above demonstrates that Mr. Johnson has made the *prima facie* showing required under 28 U.S.C. § 2244(b)(3)(C), and his application satisfies § 2255(h)(2) because he has made a "sufficient showing of possible merit to warrant a fuller exploration by the district court."

WHEREFORE, because Mr. Johnson has presented a *prima facie* showing of a tenable claim that all the requirements of § 2255(h)(2) are satisfied, he respectfully requests that his application be granted and that he be authorized forthwith to file in the United States District Court for the Eastern District of Virginia the attached successive motion pursuant to 28 U.S.C. § 2255.

Respectfully submitted,

/s/Donald P. Salzman
Donald P. Salzman
1440 New York Ave. NW
Washington, DC 20005
(202) 371-7983
donald.salzman@skadden.com

Counsel for Corey Johnson

16

**CERTIFICATE OF SERVICE**

I hereby certify that on May 19, 2016, the foregoing Application for

Authorization to File a Successive Motion Under 28 U.S.C. § 2255 Pursuant to

*Johnson v. United States*, 135 S. Ct. 2551 (2015) was served on the following by

Federal Express:

Dana J. Boente
United States Attorney for the
Eastern District of Virginia
919 E Main St, Suite 1900
Richmond, VA  23219


/s/Donald P. Salzman
Donald P. Salzman

17

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | | |
|---|---|---|
| **COREY JOHNSON**[1], | : | |
| **Movant** | : | |
| | : | |
| **v.** | : | **Case No. 3:92CR68** |
| | : | |
| | : | |
| **UNITED STATES OF AMERICA,** | : | |
| **Respondent.** | : | |

**MOTION TO VACATE CONVICTION UNDER 28 U.S.C. § 2255
PURSUANT TO *JOHNSON V. UNITED STATES*, 135 S. CT. 2551 (2015)**

Movant, Corey Johnson, through his undersigned counsel, hereby files a motion to set aside the judgment against him on Counts 9, 12, 15, 20, and 26, in case number in the above-captioned case, pursuant to 28 U.S.C. § 2255. As explained below, Mr. Johnson's convictions under 18 U.S.C. § 924(c) must be vacated in light of the Supreme Court's recent decisions in *Johnson v. United States,* 135 S. Ct. 2551 (2015) and *Welch v. United States,* 136 S. Ct. 1257 (2016).

**INTRODUCTION**

On February 3, 1993, Corey Johnson was convicted of twenty-seven counts in the above-captioned indictment, including five counts of using or carrying a firearm during and in relation to a crime of violence or a drug trafficking crime in violation of 18 U.S.C. § 924(c), seven counts charging federal homicide offenses in violation of 21 U.S.C. § 848(e)(1), and eleven counts of murder, maiming, and assault in violation of 18 U.S.C. § 1959(a). The jury subsequently sentenced Mr. Johnson to seven death sentences, one for each count under § 848(e)(1).

---

[1] Mr. Johnson's actual first name is "Corey" but it was misspelled as "Cory" in his indictment, in various pleadings filed before this Court, and in the subsequent decisions following his convictions. Mr. Johnson is using the correct spelling of his name in this pleading.

On June 26, 2015, the Supreme Court held in *Johnson* that the residual clause of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), is unconstitutionally void for vagueness. That clause, the Court held, cannot constitutionally define a "crime of violence" for purposes of the ACCA's sentence-enhancing provisions. *Johnson,* 135 S. Ct. at 2557. On April 18, 2016, the Supreme Court held that *Johnson* announced a new substantive rule that applies retroactively to cases on collateral review. *Welch,* 136 S. Ct. at 1265.

The residual clause of § 924(c), the crime of violence statute under which Corey Johnson was convicted, is materially indistinguishable from the clause *Johnson* invalidated. After *Johnson,* intentional killing, as defined by 21 U.S.C. § 848(e)(1) and murder, maiming, assault pursuant to 18 U.S.C. § 1959(a), the predicates for the § 924(c) crimes with which Mr. Johnson was charged, categorically fail to qualify as "crimes of violence." Therefore, Mr. Johnson's § 924(c) convictions are invalid. Once these convictions have been vacated, Corey Johnson is entitled to be resentenced on his remaining convictions.

The relevant portion of § 924(c) includes two alternative clauses defining "crimes of violence." The first, § 924(c)(3)(A), is commonly referred to as the "force" or "elements" clause. It applies to any felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another[.]" The second, § 924(c)(3)(B), is commonly referred to as the residual clause. It applies to any felony "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."

This second definition, the residual clause, is indistinguishable in all material respects from the residual clause of the ACCA that the Supreme Court in *Johnson* deemed unconstitutionally vague. *See Johnson,* 135 S. Ct. at 2557. Indeed, at least three federal courts

2

of appeals have applied *Johnson* to invalidate the residual clause of another statute, 18 U.S.C. §

16(b), a clause that is identical to that of § 924(c).[2]  *See United States v. Gonzalez-Longoria,* 813

F.3d 225, 235 (5th Cir. 2016); *United States v. Vivas-Ceja,* 808 F.3d 719, 722-23 (7th Cir. 2015);

*Dimaya v. Lynch,* 803 F.3d 1110, 1117-20 (9th Cir. 2015).  And relying on those circuits'

reasoning, at least two district courts have held § 924(c)'s residual clause to be void for

vagueness as well.  *See United States v. Lattanaphom,* __ F. Supp. 3d __, 2016 WL 393545, *3-

4, *6 (E.D. Cal. Feb. 2, 2016); *United States v. Edmundson,* __ F. Supp. 3d __, 2015 WL

9311983, *3 (D. Md. Dec. 30, 2015).

These cases compel the same result in Corey Johnson's case.  Because § 924(c)'s residual

clause is void for vagueness, it cannot constitutionally define "crimes of violence" for purposes

of § 924(c) convictions.

Furthermore, intentional killing under 21 U.S.C. §848(e)(1) and murder, maiming, and

assault under 18 U.S.C § 1959(a) do not categorically qualify as "crimes of violence" under the

remaining force clause.  This is because under both § 848(e)(1) and 18 U.S.C § 1959(a), the

killing can be accomplished by non-violent means, as can maiming and assault under § 1959.

For example, both homicide crimes can be committed by withholding a person's life-preserving

medication or locking someone in a car on a hot day.  Section 848 can also be committed by the

accused counseling, commanding or inducing someone else to kill another individual.  And §

---

[2] Like § 924(c)(3), § 16 defines a "crime of violence" as:

(a)    an offense that has as an element the use, attempted use, or threatened use of
       physical force against the person or property of another, or
(b)    any other offense that is a felony and that, by its nature, involves a substantial risk
       that physical force against the person or property of another may be used in the
       course of committing the offense.

18 U.S.C. § 16.

3

1959 can be violated by murders involving the felony murder doctrine without the specific intent to kill and can be based on felonies that do not require the use of physical force. Similarly, § 1959 maiming and assault offenses do not require the actual use of violent physical force. Sections 848(e)(1) and 1959(a) therefore do not require as essential elements the use, attempted use, or threatened use of physical force. Intentional killing under § 848(e)(1) and murder, maiming, and assault under § 1959 categorically fail to qualify as "crimes of violence," and Mr. Johnson's convictions under § 924(c) cannot stand.

Because § 924(c)'s residual clause is unconstitutional, Mr. Johnson's § 924(c) convictions and the death sentences he received after the sentencing phase of his trial (1) violate due process; (2) violate the laws of the United States and result in a fundamental miscarriage of justice; and (3) were entered in excess of the district court's jurisdiction. Further, Corey Johnson is entitled to relief under 28 U.S.C. § 2255(h)(2) because *Johnson* established a "new rule of constitutional law" that has been "made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h)(2).

Accordingly, Mr. Johnson respectfully asks this Court to grant his § 2255 motion and vacate his § 924(c) convictions and death sentence.

Below, Mr. Johnson provides more detailed support for this motion.

4

## STATEMENT OF RELEVANT FACTS

### A.    Conviction and Sentencing.

Mr. Johnson and six co-defendants, Richard Tipton, James H. Roane, Jr., Vernon L. Thomas, Jerry R. Gaiters, Sterling Hardy, and Sandra Reavis, were jointly charged in this Court with conspiracy to possess with intent to distribute more than 50 grams of cocaine base under 21 U.S.C. § 841(a)(1) (Count 1).  In addition, some but not all of the defendants were separately charged with (i) engaging in a continuing criminal enterprise (hereafter "CCE") in violation of 21 U.S.C. § 848 (Count 2); (ii) while engaged in a CCE, knowingly, intentionally and unlawfully causing the murder of nine separately named individuals in violation of 21 U.S.C. § 848(e)(1)(A) (Counts 3, 5, 8, 11, 17, 18, 19, 24, and 25); (iii) knowingly, intentionally, and unlawfully causing the murder of ten separately named individuals as part of an enterprise engaged in racketeer-influenced and corrupt organizations (hereafter "RICO") activity in violation of 18 U.S.C. § 1959 (Counts 4, 7, 10, 13, 14, 21, 22, 23, 27, and 28); (iv) using or carrying a firearm during and in relation to a crime of violence or a drug trafficking crime in violation of 18 U.S.C. § 924(c) (Counts 6, 9, 12, 15, 20, and 26); (v) knowingly, intentionally, and unlawfully maiming two separately named individuals as part of an enterprise engaged in RICO activity in violation of 18 U.S.C. § 1959 (Counts 29 and 30); (vi) knowingly, intentionally, and unlawfully committing assault resulting in serious bodily injury to an individual as part of an enterprise engaged in RICO activity in violation of 18 U.S.C. § 1959 (Count 16); (vii) knowingly and intentionally distributing cocaine base in violation of 21 U.S.C. § 841(a)(1) (Count 31); and (viii) knowingly and intentionally possessing with intent to distribute more than 50 grams of

5

597a

cocaine base in violation of 21 U.S.C. § 841(a)(1) (Counts 32 and 33).[3] The government sought the death penalty against Mr. Tipton, Mr. Johnson, and Mr. Roane pursuant to 21 U.S.C. § 848(e)(1) and the jury returned death verdicts against all three men. Mr. Johnson, specifically, was sentenced to death by the jury on seven counts for the § 848 murder offenses.

**B.     Direct Appeal.**

Mr. Johnson timely appealed to the Fourth Circuit, raising various issues relating to the guilt and penalty phases of his trial. The court of appeals rejected all of his arguments and affirmed his convictions and death sentence. *United States v. Tipton et. al.*, 90 F.3d 861 (4th Cir. 1996). The United States Supreme Court denied certiorari. *Roane v. United States,* 520 U.S. 1253 (1997).

**C.     Previous § 2255 Motion.**

Following the denial of certiorari, Mr. Johnson timely filed a motion for collateral relief under 28 U.S.C. § 2255 and later filed several amendments to that motion.[4] He asserted in the motion and in the amendments to the motion the following claims: (i) error during the jury selection process on a variety of grounds; (ii) prosecutorial misconduct in violation of Mr. Johnson's due process rights on numerous grounds during the jury selection and during the guilt and sentencing phases of the trial; (iii) insufficient evidence to prove Mr. Johnson was a supervisor in a CCE conspiracy; (iv) ineffective assistance of counsel at the trial and appellate

---

[3] Prior to trial, Mr. Thomas' case was severed from his co-defendants' cases and, after Mr. Tipton, Mr. Roane, and Mr. Johnson were tried, Mr. Thomas was tried and convicted in a separate trial. Although the Government originally sought the death penalty against Mr. Thomas, it later withdrew its death notice prior to trial. The Government did not seek the death penalty against Mr. Gaiters, Mr. Hardy, or Ms. Reavis. Mr. Gaiters and Mr. Harvey pled guilty before trial. Ms. Reavis was tried jointly with Mr. Tipton, Mr. Roane, and Mr. Smith, and she was convicted of the one count charged against her.

[4] Mr. Johnson's initial § 2255 motion was docketed under criminal case number 3:92CR68 and civil case number 3:97CV895.

6

stages on a variety of grounds during the guilt and sentencing phases of the trial; and (v) constitutional challenges to his death sentences on various grounds.  This Court denied relief. *United States v. Roane*, No. 3:92CR68 (E.D. Va. May 1, 2003).

The Fourth Circuit affirmed the denial of relief.  *Roane v. United States,* 378 F.3d 382 (4th Cir. 2004).  The United States Supreme Court denied certiorari.  *Johnson v. United States,* 546 U.S. 810 (2005).

### D.    *Johnson v. United States.*

On June 26, 2015, the Supreme Court issued its decision in *Johnson,* 135 S. Ct. 2551. In *Johnson,* the Supreme Court overruled *Sykes v. United States,* 131 S. Ct. 2267 (2011) and *James v. United States,* 550 U.S. 192 (2007), finding ACCA's residual clause too vague to provide adequate notice under the Due Process Clause of the Fifth Amendment.  Specifically, *Johnson* held that "the indeterminacy of the wide-ranging inquiry required by the residual clause both denies fair notice and invites arbitrary enforcement by judges," therefore "[i]ncreasing a defendant's sentence under the clause denies due process of law."  135 S. Ct. at 2557.

### E.    *Welch v. United States.*

After *Johnson* was decided*,* federal prisoners throughout the country sought to challenge ACCA-enhanced sentences, as well as convictions and sentences imposed under materially indistinguishable residual clauses, such as that in 18 U.S.C. § 924(c).  This led to conflict over whether *Johnson* announced a new substantive rule, which would apply retroactively to cases on collateral review, or whether it only announced a new procedural rule, which would not necessarily apply retroactively.  On April 18, 2016, the Supreme Court resolved the issue, finding  *Johnson*'s rule substantive and thus applicable retroactively to cases on collateral

7

review. *Welch,* 136 S. Ct. at 1265. After *Johnson* and *Welch,* Corey Johnson's § 924(c)

convictions cannot be sustained.

## ARGUMENT

**I.      In light of *Johnson,* Corey Johnson's § 924(c) convictions cannot be sustained because the predicate crimes underlying those convictions do not qualify as "crimes of violence."**

Mr. Johnson's convictions for using or carrying a firearm during and in relation to

"crimes of violence" are void because the "crime of violence" element cannot be satisfied here.

After *Johnson,* the predicate offenses of federal intentional killing, murder, maiming, and assault

cannot, as a matter of law, qualify as "crimes of violence" for purposes of § 924(c). As

explained below, intentional killing under 21 U.S.C. § 848(e)(1) and murder, maiming, and

assault under 18 U.S.C. § 1959(a) categorically fail to qualify as predicate "crimes of violence"

under § 924(c) because they do not meet the definition of the force clause and because the

unconstitutional residual clause cannot define a valid federal crime.

**A.      Section 924(c)'s residual clause is materially identical to ACCA's residual clause and therefore like ACCA's clause is  unconstitutionally void for vagueness.**

Section 924(c) defines a "crime of violence" in two ways:

(3)      For purposes of this subsection, the term "crime of violence" means an offense that is a felony and –

(A)      has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(B)      that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3).

The first clause, § 924(c)(3)(A), is known as the force or elements clause. The second, § 924(c)(3)(B), is the residual clause.

The ACCA, 18 U.S.C. § 924(e), provides for an enhanced penalty for those convicted of possessing a firearm after sustaining three or more convictions for a "serious drug offense" or a "violent felony." ACCA's definition of "violent felony" includes the residual clause struck down in *Johnson,* a clause that is materially indistinguishable from that in § 924(c)'s residual clause. The ACCA defines a "violent felony" as:

> [A]ny crime punishable by imprisonment for a term exceeding one year . . . that
>
> (i) has as an element the use, attempted use, or threatened use against the person of another, or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*[.]

18 U.S.C. § 924(e)(2)(B) (emphasis added).

Section 924(c)'s residual clause suffers from the same flaws that rendered ACCA's residual clause unconstitutionally vague under the required categorical approach. As with ACCA's residual clause, § 924(c)'s clause "require[s] courts to assess the hypothetical risk posed by an abstract generic version of the offense." *Welch,* 136 S. Ct. at 1262. "[T]he 'indeterminacy of the wide-ranging inquiry' made the residual clause more unpredictable and arbitrary in its application than the Constitution allows." *Id.* (quoting *Johnson,* 135 S. Ct. at 2557).

The constitutional guarantee of due process, the *Johnson* Court found, cannot tolerate "condemn[ing] someone to prison for 15 years to life," the punishment prescribed under ACCA, based upon "so shapeless a provision." *Johnson,* 135 S. Ct. at 2560. Likewise, due process

9

601a

cannot tolerate condemning a person to death based upon § 924(c)'s equally shapeless residual clause.

Moreover, courts have already invalidated a residual clause identical to that in § 924(c). The residual clause of 18 U.S.C § 16(b) is the mirror image of that of § 924(c), and the Fifth, Seventh and Ninth Circuits have all struck it down following *Johnson. See United States v. Fuertes*, 805 F.3d. 485, 498-500 (4th Cir. 2015); *see also United States v. Gonzalez-Longoria,* 813 F.3d 225 (5th Cir. 2016); *United States v. Vivas-Ceja,* 808 F.3d 719 (7th Cir. 2015); *Dimaya v. Lynch,* 803 F.3d 1110 (9th Cir. 2015). Still further, at least two district courts have considered § 924(c)'s residual clause itself and have found it void for vagueness in light of *Johnson. See United States v. Lattanaphom,* __ F. Supp. 3d __, 2016 WL 393545 (E.D. Cal. Feb. 2, 2016); *United States v. Edmundson,* __ F. Supp. 3d __, 2015 WL 9311983 (D. Md. Dec. 30, 2015). This Court should do the same.

1. *Johnson* **expressly overruled the "ordinary case" approach to determining whether a felony qualifies as a "crime of violence."**

The Supreme Court began its analysis in *Johnson* by noting that the so-called categorical approach mandates the use of a two-step framework to determine whether a crime is a violent felony within the meaning of ACCA. *Johnson,* 135 S. Ct. at 2557, 2562. As the Seventh Circuit described it: "In the first step, the court must determine 'the kind of conduct that the crime involves in "the ordinary case"'" as opposed to the facts on the ground in the defendant's . . . case." *Vivas-Ceja,* 808 F.3d at 721 (quoting *Johnson,* 135 S. Ct. at 2557). The second step also depends on the ordinary case. Specifically, the "court must gauge whether that ordinary case of the crime 'presents a serious potential risk of physical injury.'" *Id.*

But this required approach to ACCA's residual clause "conspire[d] to make it unconstitutionally vague." *Johnson,* 135 S. Ct. at 2557. The first step is problematic, the

10

*Johnson* Court explained, because too much uncertainty exists about what constitutes the "ordinary case" of a crime. *Id.* "The residual clause offers no reliable way to choose between [] competing accounts of what 'ordinary' . . . involves." *Id.* at 2558. In fact, the Court explained further, statistical analysis of reported cases, Google, and gut instinct are all equally unreliable in identifying the "ordinary case." *Id.* at 2557 (quoting *United States v. Mayer,* 560 F.3d 948, 952 (9th Cir. 2009) (Kozinski, J., dissenting from denial of rehearing en banc)).

The second step, too, is fatally flawed because even if the "ordinary case" could indeed be determined, there would still be too much "uncertainty about how much risk it takes" before such "ordinary case" should be deemed sufficiently serious to be categorized as a violent felony. *Vivas-Ceja,* 808 F.3d at 722 (quoting *Johnson,* 135 S. Ct. at 2558).

Significantly, the Court's critique of the second step did not turn on the type of risk specified in ACCA's invalidated residual clause, namely, the "serious potential risk of *physical* injury." Rather, as with the first step, the Court's analysis turned on the shapeless "ordinary case" inquiry: "It is one thing to apply an imprecise 'serious potential risk' standard to real-world facts; it is quite another to apply it to a judge-imagined [ordinary case] abstraction." *Johnson,* 135 S. Ct. at 2558. Risk assessment, the Court made clear, is not inherently unconstitutional. *See id.* at 2561. But because risk assessment under ACCA's residual clause is based not on the facts of the actual case but on the amorphous "ordinary case," the clause is unconstitutionally vague. The indeterminacy, unpredictability, and arbitrariness inherent in the "ordinary case" analysis is simply more than the Due Process Clause can bear, held the Court. *Id.* at 2558.

*Johnson* thus upended not just ACCA's residual clause, but also the "ordinary case" analysis compelled by such a statutory framework. In other words, the only way to apply the

11

residual clause is to use the "ordinary case" analysis, and the "ordinary case" analysis is impossible to apply in a constitutional manner.

**2. For the reasons identified in *Johnson,* § 924(c)(3)(B) also is unconstitutionally vague.**

Notwithstanding that § 924(c)'s residual clause is not a mirror image of ACCA's, the two clauses are functionally the same. The difference in exact wording does not affect the constitutional analysis that shows both to be void for vagueness.

For one thing, courts regularly equate ACCA's "violent felony" definition with other statutes defining crimes of violence, including 18 U.S.C. § 16(b), which as noted above is identical to § 924(c)(3)(B). *See, e.g., Chambers v. United States,* 555 U.S. 122, 133 n.2 (2009) (Alito, J., concurring) (collecting cases); *see also United States v. Ayala*, 601 F.3d 256, 267 (4th Cir. 2010) (relying on an ACCA case to interpret the definition of a crime of violence under § 924(c)(3)(B)); *United States v. Aragon*, 983 F.2d 1306, 1314 (4th Cir. 1993) (same).

Further, although the risk at issue in ACCA is risk of injury while the risk at issue in § 924(c) is that physical force will be used, both statutes require that risk be assessed via the "ordinary case" method. It is this analytical framework that infects both statutes with a due process problem.

Under § 924(c), just as under ACCA, courts must follow the same two-step process. First, the court must envision the "ordinary case" embodied by a felony. Second, the court must assess the quantum of risk posed by such "ordinary case." As the Fourth Circuit explained in the context of reviewing § 16(b) (which is identical to § 924(c)):

> [E]very set of conceivable facts covered by first-degree burglary does not have to present a serious risk of injury for it to qualify as a crime of violence. It is sufficient if "the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another." *James,* 550 U.S. at 208. As long as an offense is of a type that, *by its nature,* presents a

12

604a

substantial risk that physical force against the person or property of another may
be used, it satisfies the requirements of 18 U.S.C. § 16(b).

*United States v. Avila,* 770 F.3d 1100, 1107 (4th Cir. 2014) (emphasis added). At least three

circuits have held that because the shapeless "ordinary case" approach applies to cases under §

16(b), that statute's residual clause is void after *Johnson*. *See Gonzalez-Longoria,* 813 F.3d at

235; *Vivas-Ceja,* 808 F.3d at 722-23; *Dimaya,* 803 F.3d at 1117-20.

It follows that the same analysis applies to the identical residual clause of § 924(c), and

thus *Avila* controls here. Even more, consistent with *Avila*, in *Fuertes*, 805 F.3d at 498, 500 n.6,

the Fourth Circuit directly applied the "ordinary case" inquiry to the § 924(c) residual clause.

*See also United States v. Naughton*, 621 F. App'x. 170, 178 (4th Cir. 2015) (applying the

ordinary case inquiry to § 924(c)(3)(B)). Thus, as Judge Grimm explained in *Edmundson*, the "§

924(c) residual clause suffers from exactly the same double indeterminacy as the ACCA residual

clause." *Edmundson*, 2015 WL 9311983, at *4. Section 924(c)'s residual clause, just like that of

§ 16(b) and ACCA, suffers from the "double indeterminacy" that the *Johnson* court held the Due

Process Clause cannot tolerate.

Indeed, in the course of litigating *Johnson,* the United States conceded that the residual

clauses contained in ACCA and § 16(b) (and necessarily in the identical § 924(c)) pose the same

problem:

> Although Section 16 refers to the risk that force will be used rather than that
> injury will occur, it is equally susceptible to petitioner's central objection to the
> residual clause. Like the ACCA, Section 16 requires a court to identify the
> ordinary case of the commission of the offense and to make a commonsense
> judgment about the risk of confrontations and other violent encounters.

Supplemental Brief for the United States at 22-23, *Johnson v. United States,* No. 13-7120 (U.S.

Mar. 30, 2015), 2015 WL 1284964. The United States was correct in its analysis, and this Court

should hold it here to the same concession.

13

605a

In sum, § 924(c), like ACCA, requires courts to apply "ordinary case" analysis to assess the risk involved in a predicate offense. Because this analysis involves the same flawed steps that brought down the ACCA residual clause, § 924(c)(3)(B) also cannot survive constitutional scrutiny. Under the due process principles articulated in *Johnson*, § 924(c)'s residual clause cannot be used to support a conviction under that statute. Mr. Johnson's convictions under § 924(c)—and the jury's decision to impose death sentences that was certainly influenced by the multiple convictions for using firearms in relation to those crimes of violence—must be overturned because the convictions turn on a determination that the predicate murders and other predicate crimes with which he was charged are "crime[s] of violence." And federal homicides, maiming, and assaults, the section that follows will demonstrate, qualify as crimes of violence only under the unconstitutional residual clause; they cannot satisfy the remaining force or elements clause.

**B.      Homicide convictions pursuant to § 848(e)(1)(A) and § 1959(a) and maiming and assault convictions under § 1959(a) fail to qualify categorically as "crimes of violence" under the force clause of § 924(c) because they may be committed without the use of violent or strong physical force.**

**1.  The categorical approach applies to determining whether an offense qualifies as a "crime of violence" under the force clause.**

In determining whether an offense qualifies as a "crime of violence" under the force clause of § 924(c), courts must employ the categorical approach. *See Descamps v. United States,* 133 S. Ct. 2276, 2283 (2013). This approach requires that courts "look only to the statutory definitions—*i.e.*, the elements—of a defendant's [offense] and *not* to the particular facts underlying [the offense]." *Id.* In addition, under the categorical approach, an offense can only qualify as a "crime of violence" if all of the criminal conduct covered by a statute, including the least culpable conduct, matches or is narrower than the "crime of violence" definition. *See, e.g.,*

14

606a

*United States v. Torres-Villalobos,* 487 F.3d 607, 616 (8th Cir. 2007); *see also United States v. Torres-Miguel,* 701 F.3d 165, 167 (4th Cir. 2012). If the most innocuous conduct penalized by a statute does not constitute a "crime of violence," then the statute categorically fails to qualify as a "crime of violence."

Given this, an offense will qualify as a "crime of violence" under the force clause of § 924(c) only if it has, as an element, "the use, attempted use, or threatened use of physical force" against another person. 18 U.S.C. § 924(c)(3)(A). "Physical force," in turn, has two requirements. First, "physical force" must involve *violent* force—that is, "strong physical force," which is "capable of causing physical pain or injury to another person." *Johnson v. United States,* 559 U.S. 133, 140 (2010). Second, the use of such force "must be intentional, not just reckless or negligent." *United States v. Dixon,* 805 F.3d 1193, 1197 (9th Cir. 2015); *see also Leocal v. Ashcroft,* 543 U.S. 1, 12-13 (2004).

It is not enough that the statute includes some requirement of specific intent, such as the intent to deprive a person of property, or even the intent to cause injury. To qualify as a crime of violence under the "force" or "elements" clause, the statute must have as a required element the intent to use strong physical force.

Applying these standards to Mr. Johnson's case requires vacatur of both his convictions under § 924(c) and the corresponding death sentences he received as a result of his convictions for his crimes of violence constituting intentional killing under 21 U.S.C. § 848(e)(1). As detailed below, the predicate offenses for which Mr. Johnson was convicted categorically fail to qualify as crimes of violence under § 924(c)'s force clause because intentional killing under this statutory provision may be perpetrated without the use of violent or physical force. Mr.

15

Johnson's other convictions for murder, maiming, and assault also fall short of qualifying as crimes of violence for identical reasons.

### 2. The federal homicide statutes do not require the use or threatened use of violent physical force.

Section 848(e)(1)(A) establishes the death penalty as one of the penalties for a murder committed in the course of a continuing criminal enterprise. Specifically, § 848(e)(1)(A) states:

> any person engaging in or working in furtherance of a continuing criminal enterprise, or any person engaging in an offense punishable under section 841(b)(1)(A) of this title or section 960(b)(1) of this title who intentionally kills or counsels, commands, induces, procures, or causes the intentional killing of an individual and such killing results, shall be sentenced to any term of imprisonment, which shall not be less than 20 years, and which may be up to life imprisonment, or may be sentenced to death[.]

Similarly, 18 U.S.C. § 1959 prohibits murder in connection with a RICO conspiracy under specific circumstances. Neither of these homicide offenses categorically require the use of violent physical force to sustain a conviction and neither can satisfy § 924(c)'s force clause.

Intentional homicide can be committed without any physical touching of the victim, much less the use of any force. "[H]uman experience suggests numerous examples of intentionally causing physical injury without the use of force, such as a doctor who deliberately withholds vital medicine from a sick patient." *Chrzanoski v. Ashcroft,* 327 F.3d 188, 195-96 (2d Cir. 2003) (analyzing Connecticut's third degree assault statute that could criminalize an "injury caused not by physical force, but by guile, deception, or even deliberate omission . . . [by the] placement of a tranquilizer in the victim's drink[]" (citation omitted)). Other examples of intentional killings without force are locking someone in a hot car, withholding food from them, or poisoning them. *See Torres-Miguel*, 701 F.3d at 169-70 (citing *United States v. Cruz-Rodriguez*, 625 F.3d 274, 277 (5th Cir. 2010); *United States v. Perez-Vargas,* 414 F.3d 1282, 1286 (10th Cir. 2005) (analyzing Colorado's third-degree assault with a deadly weapon statute

16

that could be violated by exposing someone to hazardous chemicals). These intentional acts—withholding medication or food, leaving someone locked in a dangerous place, or poisoning—by their nature can be committed surreptitiously through deceit or by acts that involve no physical contact with or force against the victim.

The Fourth Circuit's decision in *Torres-Miguel* is directly on point. In that case, the Fourth Circuit unequivocally held that the threat of any physical injury, even "death or serious injury" does not *necessarily* require the use or threatened use of physical force, let alone "violent force." 701 F.3d at 168. The issue in *Torres-Miguel* was whether the defendant's prior conviction for the California crime of willfully threatening to commit a crime which "*will result in death or great bodily injury to another*" qualified as a violent felony under a force clause materially indistinguishable from that in § 924(c). *Id.* at 167 (citing Cal. Penal Code § 422(a)). The court held, without qualification, that "[a]n offense that *results* in physical injury, but does not involve the use or threatened use of force, simply does not meet the . . . definition of crime of violence." *Id.* at 168. "[A] crime may *result* in death or serious injury," the court explained, "without involving *use* of physical force." *Id.*

Referencing decisions from various federal courts of appeals, the *Torres-Miguel* court identified many possible ways in which physical injury—even death—may result without the use or threatened use of "violent force." *Id.* at 168-69 (collecting cases). "For example, as the Fifth Circuit has noted, a defendant can violate statutes like § 422(a) by threatening to poison another, which involves no use or threatened use of force." *Id.* (citing *Cruz-Rodriguez,* 625 F.3d at 276 (5th Cir. 2010)).

The reasoning in these cases applies equally to intentional killing under § 848(e)(1)(A) and murder under § 1959 because the statutes fail to require the use of physical force, and

17

certainly do not require the "violent force" that is a prerequisite to constitutional application of the force clause. *See United States v. Rice,* 813 F.3d 704, 707 (8th Cir. 2016) (Kelly, J., dissenting) (citing *Johnson,* 559 U.S. at 139).

Thus, because "the full range of conduct" covered by § 848(e)(1)(A) and § 1959 do not require "violent force," they categorically cannot qualify as "crimes of violence" under § 924(c)(3)'s force clause. *See Torres-Miguel,* 701 F.3d at 171. And it makes no difference that the possibility of violating the homicide statutes without the use or threat of violent force may be slim. Because that possibility exists, this Court cannot, as a matter of law, find that § 848(e)(1)(A) intentional killing and § 1959 murder are "crimes of violence."

### 3. Section 848(e)(1)(A) fails to satisfy the force clause because it authorizes the death penalty for an intentional killing committed by a person other than the defendant.

Section 848(e)(1)(A) permits a jury to sentence a member of a CCE to death even if the accused does not intentionally take the life of the victim him or herself. Instead, death is an available punishment under this provision if "[a]ny person engaging in or working in furtherance of a continuing criminal enterprise . . . counsels, commands, induces, procures, or causes the intentional killing of an individual and such killing results[.]" The murders for which Corey Johnson was convicted that served as predicate violent felonies for his convictions under § 924(c), therefore, categorically, do not satisfy the force clause of that statute.

Causing another person participating in a continuing criminal enterprise to commit an intentional killing—whether through an agreement, through some sort of inducement, or by way of an order or command—simply does not meet the force requirement necessary for a § 924(c) conviction. This type of behavior is the equivalent of a conspiracy, because it does not require the actual violent physical force to be committed by the individual charged with the § 924(c)

18

610a

offense, but instead involves persuading in some fashion another person to commit the murder. Conspiracies never qualify as "crimes of violence" under the force clause, no matter what the object is of the conspiracy. *See United States v. Melvin*, No. 13-4857, slip op. at 2-3 (4th Cir. Oct. 26, 2015) (per curiam) (finding conspiracy to commit robbery with a dangerous weapon not a violent felony); *United States v. Gonzalez-Ruiz*, 794 F.3d 832 (7th Cir. 2015) (finding conspiracy to commit armed robbery not violent felony); *United States v. Luong*, 2016 WL 1588495 (E.D. Cal. Apr. 20, 2016) (conspiracy to commit Hobbs Act robbery not 924(c) crime of violence); *United States v. Edmundson*, __ F. Supp. 3d__ 2015 WL 9311983 (D. Md. Dec. 30, 2015) (same).[5]

The jury in Corey Johnson's case was expressly instructed that it could convict him of the § 848 murders if it found that "Cory [sic] Johnson . . . . while engaged in or working in furtherance of a Continuing Criminal Enterprise, intentionally killed, *counseled, commanded, induced, procured, or caused the intentional killing of certain individuals*." (emphasis added). Trial Tr. vol. 16, 3215, Feb. 2, 1993. Similarly, nowhere on the verdict form that the jury used to record its verdicts related to Corey Johnson was the jury asked to find whether Corey Johnson killed any of the victims himself; instead the verdict form was couched in passive language, as this representative example of the verdict form related to Count 8 shows:

> Do you find that the government has proven, beyond a reasonable doubt, that a Continuing Criminal Enterprise existed as charged in the indictment?

*    *    *

---

[5] Cases before the Supreme Court's 2015 *Johnson* decision also held conspiracy charges did not meet the force requirement, *See United States v. White*, 571 F.3d 365 (4th Cir. 2009); *United States v. Fell*, 511 F.3d 1035 (10th Cir. 2007); *United States v. Gore*, 636 F.3d 728 (5th Cir. 2011); *United States v. Chandler*, 743 F.3d 648 (9th Cir. 2014) (implies conspiracy does not satisfy force clause or enumerated offenses).

19

If you indicated that a Continuing Criminal Enterprise <u>did</u> exist, you must now determine whether defendant CORY [sic] JOHNSON is Guilty or Not Guilty of the crime of engaging in that continuing criminal enterprise as charged in Count 2, and enter your finding below.

\*      \*      \*

Count 8: Killing of Peyton Maurice Johnson while Engaged In or Working in Furtherance of a Continuing Criminal Enterprise

\*      \*      \*

_____
(Guilty or Not Guilty)

Verdict at 1-2.

Because § 848 permits a murder conviction based on the intentional killing by a person other than the defendant—if encouraged, directed, or in some other way, caused by the defendant—it cannot qualify as a "crime of violence" under § 924(c)'s force clause.[6]

### 4. Section 1959(a) fails to satisfy the force clause because it encompasses felony murder that can be committed by another person and felony murders, maimings, and assaults without the use of violent physical force.

Like convictions for intentional killings covered by § 848, murder convictions pursuant to § 1959(a) do not require that the accused actually commit the homicide. In addition, murder under this statute can encompass felony murder based on the commission of underlying felonies, which themselves do not necessarily require the use of violent physical force, and maiming and

_____

[6] Neither 21 U.S.C. § 848 nor 18 U.S.C. § 1959 are divisible statutes and, therefore, application of the categorical approach requires finding that these provisions fail to require violent or physical force for a defendant to be convicted of an § 848 intentional killing or a § 1959 murder, maiming, or assault. *See Taylor v. United States,* 495 U.S. 575, 602 (1990) (modified categorical approach therefore applies to only "a narrow range of cases"—those involving statutes encapsulating separate proscriptions, at least one of which constitutes a crime of violence); *Johnson v. United States*, 559 U.S. 133 (2010)*; United States v. Del Carmen Gomez,* 690 F.3d 194 (4th Cir. 2012) (Maryland child abuse statute not divisible). However, even under the modified categorical approach, a murder conviction under § 848 would fail to satisfy the force clause because the jury instructions and verdict form permitted the jury to find that someone else committed the § 848 murders for which it convicted Corey Johnson.

20

assault similarly can be committed without force. For these reasons, § 1959(a) does not satisfy the categorical approach and Corey Johnson's convictions for the § 1959 offenses cannot qualify as crimes of violence under § 924(c)'s force clause.

Section 1959(a) convictions include conduct that is encompassed by the doctrine of felony murder. *United States v. Palacios*, 1999 U.S. App. LEXIS 5206 *5-6 (2nd Cir. Mar. 4, 1999). In fact, § 1959(a) convictions for murder can be sustained even when the accused did not participate in the killing or intend to kill. Id. at *6-7 ("Edwin need not have intended to kill Vulfson or even have participated in his killing; so long as the victim was killed 'in the course of and in furtherance of' the robbery"). Thus, for the same reasons why § 848 intentional killings fail the categorical approach because they encompass acts committed by others, as explained in section B.3. above, § 1959(a) too fails that categorical analysis due to the felony murder doctrine.

Moreover, the fact that murders under § 1959(a) may be committed in the perpetration of, or an attempt to perpetrate, felony offenses is an additional reason why § 1959(a) murders do not constitute crimes of violence pursuant to § 924(c). This is true because the underlying felonies for first degree felony murder do not necessarily require the use or threatened use of violent physical force. For example, first-degree murder may be committed in the attempt to perpetrate a robbery, which categorically fails to qualify as a "violent felony" under the ACCA "force" clause because robbery does not always require violent touching. *See, e.g. United States  v. Gardner*, No. 14-4533 (4th Cir. May 18, 2016). This is true for two independent reasons: (1) the offense can be committed by putting someone in fear of injury to *property* rather than violent physical force against a person, and (2) the offense can also be accomplished by nothing more

21

613a

than a larceny combined with *de minimis* force, i.e., offensive touching or putting someone in fear of an offensive touching, combined with an assault).[7]

Maiming and assault under § 1959(a) fail for exactly the same reason. Although there have been federal prosecutions for maiming offenses, there do not appear to be reported published decisions analyzing the elements of maiming under § 1959(a).[8] However, maiming is a form of assault that does not require actual violent physical force. *See United States v. Royal*, 731 F.3d 333, 341-42 (4th Cir. 2013). Moreover, the intent to maim element does not convert assault into a "violent felony" because it can be accomplished merely by causing *injury* rather than the use of strong physical force. The Fourth Circuit's decision in *Torres-Miguel*, 701 F.3d at 168, is directly on point. There, the Fourth Circuit unequivocally held that the threat of *any physical injury,* even "serious bodily injury or *death*," does not necessarily require the use of physical force – let alone "violent force."

Because a § 1959(a) murder does not require the use or threatened use of violent physical force, but can be committed by causing death during the commission of a felony, and because maiming and assault under § 1959(a) also do not require the use of violent force, they do not qualify as crimes of violence under § 924(c)'s force clause.

---

[7] *See, e.g., Giles v. State*, 8 Md. App. 721, 723 (1970) (holding that Maryland robbery can be accomplished simply by putting someone in fear of "injury to the person *or to the property, as for example, a threat to burn down a house*." (emphasis added)); *see also Snowden v. State*, 321 Md. 612, 618 (1991) (explaining that Maryland robbery is a larceny combined with an assault).

[8] The closest federal offense appears to be 18 U.S.C. § 114, which involves maiming within maritime and territorial jurisdiction. In relevant part, that statute states that : "Whoever . . . with intent to torture . . .  maim, or disfigure, cuts, bites, or slits the nose, ear, or lip, or cuts out or disables the tongue, or puts out or destroys an eye, or cuts off or disables a limb or any member of another person. . ." shall face imprisonment.

22

**II.    Mr. Johnson is entitled to relief under 28 U.S.C. § 2255 because his claim under** *Johnson* **is cognizable, timely, and satisfies the successive petition requirements of §** **2255(h)(2).**

**A.    Mr. Johnson's claim is cognizable under § 2255(a).**

A federal prisoner may obtain relief under 28 U.S.C. § 2255(a) if his conviction "was imposed in violation of the Constitution or laws of the United States," or is in excess of this Court's jurisdiction. Mr. Johnson's convictions violate the Due Process Clause of the Fifth Amendment, violate federal law, and exceed this Court's jurisdiction. This Court therefore should grant him relief under § 2255(a).

First, for all the reasons explained above, Mr. Johnson's convictions on the § 924(c) charges violate due process because they depended on the unconstitutionally vague residual clause. Second, as also explained above, 21 U.S.C. § 848(e)(1)(A) and 18 U.S.C. § 1959(a) categorically cannot satisfy § 924(c)'s force clause. Mr. Johnson's indictment therefore failed to state an offense under § 924(c), and Mr. Johnson now stands convicted of offenses that are no longer criminal. His convictions, therefore, violate the laws of the United States and result in a fundamental miscarriage of justice. This is precisely the type of error that is cognizable under § 2255(a). *See Davis v. United States,* 417 U.S. 333, 346-47 (1974) (holding that when an intervening decision establishes that a prisoner was convicted of "an act that the law [no longer] make[s] criminal," "such a circumstance 'inherently results in a complete miscarriage of justice' and 'present(s) exceptional circumstances' that justify collateral relief under § 2255").

Third, Mr. Johnson's convictions exceed this Court's jurisdiction because not only did the indictment fail to state § 924(c) offenses, but also it affirmatively alleged conduct that is outside that statute's reach. That is, Counts 9, 12, 15, 20 and 26 of the indictment alleged that Mr. Johnson used or carried a firearm during or in relation to crimes of violence or a drug

23

615a

trafficking offenses. Because the crimes of violence alleged in the indictment, including intentional killing under § 848 and murder, maiming, and assault under § 1959, as discussed above, categorically cannot qualify as "crimes of violence" for purposes of § 924(c), this Court had no jurisdiction to try Mr. Johnson on those offenses. In turn, § 924(c) convictions can never be sustained based on the underlying homicide, maiming, and assault offenses pursuant to § 848 and § 1959, no matter what the facts are.

Simply put, Counts 9, 12, 15, 20, and 26 altogether fail to state § 924(c) offenses. Mr. Johnson's conviction on those counts therefore are a legal nullity that were entered in excess of this Court's jurisdiction, and they must be vacated. *See United States v. Brown,* 752 F.3d 1344, 1352 (11th Cir. 2014) (a jurisdictional defect exists "when the indictment affirmatively alleges conduct that does not constitute a crime at all because that conduct falls outside the sweep of the charging statute" (citation omitted)); *United States v. Barboa,* 777 F.2d 1420, 1423 n.3 (10th Cir. 1985).

**B.     Mr. Johnson's motion for relief is timely.**

Section 2255(f) requires that § 2255 motions be filed within a one-year limitations period. That period runs from the latest applicable triggering event. 28 U.S.C. § 2255(f). Among these triggers is "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review[.]" *Id.,* § 2255(f)(3).

The Supreme Court decided *Johnson* on June 26, 2015. Corey Johnson has filed this application within one year of that date. Further, on April 18, 2016, the Supreme Court expressly made *Johnson*'s new rule retroactively applicable to cases on collateral review. *Welch v. United States,* 136 S. Ct. 1257, 1265 (2016). This motion therefore is timely filed.

24

**C.     Mr. Johnson's successive § 2255 motion satisfies the requirements of 28 U.S.C. § 2255(h)(2) because *Johnson* announced a new, previously unavailable rule of constitutional law, and the Supreme Court has made *Johnson* retroactive to cases on collateral review.**

Section 2255(h)(2) imposes a gatekeeping restriction on second or successive motions. Before filing such a motion, the petitioner must obtain permission to do so from the appropriate circuit court of appeals. *See* 28 U.S.C. § 2255(h)(2). The court of appeals must certify that the successive motion contains a claim based on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." *Id.*; *see also* 28 U.S.C. § 2244(b)(3)(C).

Mr. Johnson files this successive § 2255 motion after having requested authorization to do so from the Fourth Circuit under § 2255(h)(2). Because Mr. Johnson has made a *prima facie* showing that he has satisfied § 2255(h)(2), the Fourth Circuit's certification should be forthcoming. *See In re Williams*, 330 F.3d 277, 281 (4th Cir. 2003). Mr. Johnson can do more than make out a *prima facie* showing, however. He can demonstrate conclusively that his motion meets all the requirements of § 2255(h)(2). To do so, he need only point to the Supreme Court's recent decision in *Welch*. There, the Supreme Court itself held that *Johnson* announced a new constitutional rule, that this rule was previously unavailable, and that *Johnson*'s rule is substantive and applies retroactively to cases on collateral review. *Welch,* 136 S. Ct. at 1265.

25

**III.    Mr. Johnson's invalid § 924(c) convictions also invalidate his death sentences on the convictions upon which the jury returned sentences of death.**

Mr. Johnson was convicted of committing seven separate intentional killings for which the jury returned verdicts pursuant to 21 U.S.C. § 848(e)(1)(A).[9] The invalidation of Mr. Johnson's § 924(c) convictions requires that he be resentenced on all of the other counts which contributed to the jury's death sentences.

When a defendant has been convicted and sentenced on multiple charged offenses, one of which subsequently is invalidated, he must be resentenced on the valid conviction "unless it can be ascertained from the record that a trial court's sentence on a valid conviction was not affected" by the invalid offense. *Bourgeois v. Whitley,* 784 F.2d 718, 721 (5th Cir. 1986). The Eighth Circuit has explained that "the critical issue" in this inquiry "is whether the sentence imposed [on the valid count] might have been different if the sentencing judge had known at the time of the sentencing that the . . . conviction [on another count] was invalid." *James v. United States,* 476 F.2d 936, 937 (8th Cir. 1973) (per curiam).

This principle applies with equal force in the case of jury sentencing. The record in Mr. Johnson's case shows at least a reasonable likelihood that the inclusion of the unconstitutional § 924(c) counts influenced the jury's decision to sentence him to death on the § 848 counts. Each of the § 924(c) counts in the indictment references § 848. More importantly, immediately after being instructed on the meaning of a "crime of violence" under § 924(c) for the use of a firearm in relation to any crime of violence or drug trafficking offense, Corey Johnson's jury was instructed that:

> The offenses alleged in Counts Three, Four, Five, Seven, Eight, Ten, Eleven, Thirteen, Fourteen, Sixteen, Seventeen, Eighteen, Nineteen, Twenty-one, Twenty-

___

[9] The jury also convicted Corey Johnson of murder pursuant to 18 U.S.C. § 1959 on Counts 10, 13, 14, 21, 22, 23, 24, 25, 27, and 28.

26

two, Twenty-three, Twenty-four, Twenty-five, Twenty-seven, Twenty-eight, Twenty-nine, Thirty, Thirty-one, and Thirty-three are crimes of violence or drug trafficking crimes.[10]

Of those offenses, Counts 8, 11, 17, 18, 19, 24, and 25 allege violations of § 848(e)(1)(A), which are the charges on which the jury returned death sentences for Corey Johnson. And Counts 10, 13, 14, 21, 22, 23, 27, 28, 29, and 30 are the other charges on which the jury convicted Corey Johnson of crimes of violence pursuant to § 1959. Yet none of those crimes actually constitute crimes of violence for purposes of § 924(c).

This starkly shows that Mr. Johnson's jury was allowed to consider not just that he participated in murders, but that those murders and other assaults were "crimes of violence" for purposes of § 924(c). The jury was told that those "crimes of violence" were so egregious that using a gun in connection with them amounted to separate felonies. And yet, those so-called "crimes of violence" were not crimes at all, and should never have been presented to the jury, during either stage of Mr. Johnson's trial. It is inconceivable that the cumulative weight of the multiple § 924(c) crimes of violence upon which the jury was instructed to deliberate, none of which actually constituted a crime, did not impact the jury's decision to impose a sentence of death on the crimes of violence constituting the § 848 murders.

Given the likelihood that the invalid convictions influenced the jury's sentencing verdict on the remaining counts, this Court must order that Mr. Johnson be resentenced by a jury. As the Supreme Court recently made clear in *Hurst v. Florida,* 136 S. Ct. 616 (2016), the Sixth Amendment requires that a jury, and not the court, determine whether a defendant should be sentenced to death. *Hurst,* 136 S. Ct. at 624. The Court was unequivocal: "The Sixth

---

[10] Trial Tr. vol. 16, 3223, Feb. 2, 1993.

27

Amendment protects a defendant's right to an impartial jury. This right required Florida to base [the defendant's] death sentence on a jury's verdict, not a judge's fact finding." *Id.*

After *Hurst,* any death sentence rendered by a court is unconstitutional. An appellate or post-conviction court that finds non-structural error in the defendant's death sentence therefore must remand for a new penalty phase before a jury. It may not engage in post hoc reweighing, or otherwise make its own determination about whether the defendant deserves a death sentence. To the extent any prior Supreme Court decisions, such as *Brown v. Sanders,* 546 U.S. 212, 224-25 (2006), *Stringer v. Black,* 503 U.S. 222, 237 (1992), or *Clemons v. Mississippi,* 494 U.S. 738, 745-46 (1990), authorized such judicial refashioning of a compromised death sentence, *Hurst* necessarily overruled them.

What is more, given the unparalleled need for reliability in capital sentencing, allowing Mr. Johnson's death sentence on the remaining counts to stand despite the jury's exposure to the invalid § 924(c) counts and their prejudicial elements would implicate the Eighth Amendment. The Supreme Court's decision in *Johnson v. Mississippi,* 486 U.S. 578 (1988), provides an instructive analogy. There, the Court held that when a prior conviction used as aggravation in support of a death sentence has subsequently been overturned, the defendant's death sentence violates the Eighth Amendment. As the Court explained, "[t]he fundamental respect for humanity underlying the Eighth Amendment's prohibition against cruel and unusual punishment gives rise to a special need for reliability in the determination that death is the appropriate punishment in any capital case." *Id.* at 584 (internal quotation marks omitted) (citations omitted).

Because the petitioner's prior conviction in *Johnson v. Mississippi* was invalid, the Court deemed it "apparent that the [prior] conviction provided no legitimate support for the death

28

620a

sentence imposed on petitioner." *Id.* at 586. Equally apparent, the Court said, was "that the use of that conviction in the sentencing hearing was prejudicial." *Id.*

And while the prosecutor in *Johnson v. Mississippi* had repeatedly pointed to the prior conviction in his closing argument, the Supreme Court said the now-voided conviction's use as aggravation would have violated the Eighth Amendment no matter what. "Even without that express argument, there would be a possibility that the jury's belief that petitioner had been convicted of a prior felony would be 'decisive' in the 'choice between a life sentence and a death sentence.'" *Id.* (quoting *Gardner v. Florida,* 430 U.S. 349, 359 (1977)).

The same principles apply here. The unconstitutional § 924(c) convictions had a profoundly prejudicial impact on Mr. Johnson's case as a whole, and undermines confidence in his death sentences on the remaining counts.

Mr. Johnson likely was prejudiced even before his case ever reached the jury. When the Department of Justice considered whether to authorize the death penalty against Mr. Johnson, it was presented with an indictment alleging five separate § 924(c) counts and seven capital offenses for crimes of violence, including federal intentional killing, plus additional murder, maiming, and assault offenses, all of which fail the Supreme Court's categorical approach to the force element of those crimes. The Department's capital-case review process was skewed by the presence of the unconstitutional charges, just as the jury's sentencing decision was skewed in *Johnson v. Mississippi.*

This Court should vacate Mr. Johnson's sentence in its entirety and order that he be resentenced before a jury on only the remaining counts after his § 924(c) convictions are vacated.

## CONCLUSION AND PRAYER FOR RELIEF

For all the reasons set forth above, Mr. Johnson respectfully asks this Court to vacate his convictions and sentences on Counts 9, 12, 15, 20, and 26, the invalid charges under 18 U.S.C. § 924(c). Mr. Johnson further requests the following relief:

a)     That this Court vacate his death sentences on Counts 8, 11, 17, 18, 19, 24, and 25 and remand this case for a new penalty phase trial on those counts.

b)     That this Court grant him leave to amend this motion, including by submitting a supplemental memorandum of law to support it.

c)     That this Court schedule a status conference on this motion at the Court's earliest convenience, and order that he be personally present at such conference.

d)     Any other relief that may be necessary to correct Mr. Johnson's invalid conviction and sentence.

Dated: May 19, 2016                                    Respectfully submitted,

Darren M. Welch
Skadden Arps Slate Meagher & Flom, LLP
1440 New York Avenue, NW
Washington, DC  20005
(202) 371-7804
darren.welch@skadden.com

Donald P. Salzman*
Skadden Arps Slate Meagher & Flom, LLP
1440 New York Avenue, NW
Washington, DC  20005
(202) 371-7983
donald.salzman@skadden.com
*pro hac vice motion to be filed

*Counsel for Corey Johnson*

30

622a

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

In re: CORY JOHNSON

Movant

)
)
)
)
)
)

No. 16-4

**United States' Response to Successive § 2255**

Defendant Corey Johnson seeks leave to file a successive habeas petition under 28 U.S.C. § 2255, challenging his convictions under 18 U.S.C. § 924(c). He argues (1) that his § 924(c) convictions depend on a crime-of-violence predicate offense— namely, murder; (2) that murder qualifies as a crime of violence solely under § 924(c)(3)(B); and (3) that § 924(c)(3)(B) is unconstitutionally vague under *Johnson v. United States*, 135 S. Ct. 2551 (2015), which invalidated the residual clause of the Armed Career Criminal Act and applies retroactively in ACCA cases under *Welch v. United States*, 136 S. Ct. 1257 (2016). Defendant's motion should be denied. Each step in his argument fails.

A defendant seeking permission to file a successive § 2255 must show that "it appears reasonably likely that the motion satisfies the stringent requirements for the filing of a second or successive petition." *In re Williams*, 330 F.3d 277, 281 (4th Cir. 2003) (citations and internal brackets omitted). But even under the prima-facie standard, this Court will not "authorize a successive § 2255 motion that is plainly barred as a matter of law." *In re Vassell*, 751 F3d 267, 271 (4th Cir. 2014) (rejecting

1

that defendant satisfied prima facie showing for successive § 2255 when claim was barred by statute of limitations).

Even though the prima-facie showing requires only a reasonable likelihood that the defendant can satisfy the standards for a successive § 2255, the requirements for successive § 2255s are highly stringent. A successive § 2255 requires, as relevant here, that a defendant be entitled to relief under "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h)(2). This standard is satisfied "only when the Supreme Court declares the collateral availability of the rule in question." *United States v. Thomas*, 627 F.3d 534, 536 n.1 (4th Cir. 2010) (quoting *In re Vial*, 115 F.3d 1192, 1197 (4th Cir. 1997) (en banc); citing *Tyler v. Cain*, 533 U.S. 656, 662 (2001)). Just as most defendants cannot show a reasonable likelihood that the Supreme Court will reverse their convictions, so too most defendants cannot show a reasonable likelihood that they satisfy the narrow requirements for a successive habeas petition.

Defendant's application for a successive § 2255 fails for multiple reasons. First, his § 924(c) convictions all have separate, valid drug-trafficking predicates, and even on direct appeal, this Court has rejected out of hand *Johnson* challenges to § 924(c) convictions when the § 924(c) convictions were supported by both a valid drug-trafficking predicate and a contested crime of violence. *See, e.g., United States v. Hare*, ---F.3d---, 2016 WL 1567051, *10 (4th Cir. Apr. 19, 2016). *See also In re Thomas*, ---F.3d---, 2016 WL 3000325, *3 (11th Cir. May 25, 2016) (denying application for successive

§ 2255 motion challenging ACCA sentence where defendant's sentence was supported by prior convictions that did not depend on the ACCA's residual clause).

Second, *Johnson* expressly limited its ruling to invalidating the ACCA's residual clause, 135 S. Ct. at 2561, 2563, and in evaluating successive § 2255 motions, appellate courts "are confined to a consideration of constitutional law as it presently stands." *In re Garner*, 612 F.3d 533, 536 (6th Cir. 2010) (citing *In re Neville*, 440 F.3d 220, 221 (5th Cir. 2006) (per curiam)). And the Supreme Court just two weeks ago discussed 18 U.S.C. § 16, which has similar wording as § 924(c), and did not treat half of that statute, § 16(b), as unconstitutionally vague. *Torres v. Lynch*, 136 S. Ct. 1619, 1629-30 (2016). The dissent in *Torres* likewise did not raise any question about § 16(b)'s validity. *Id.* at 1637 & n.1.

Although defendants may argue on direct appeal that § 924(c)(3)(B) is unconstitutionally vague, a successive habeas petition is not a forum for courts to announce new extensions of Supreme Court constitutional rulings. Just as the defendant in *Garner* who was older than age 18 at the time of his offense, but claimed to have the mental capacities of a juvenile, could not invoke in a successive § 2255 the rule against executing juveniles, *see* 612 F.3d at 536, so too defendants cannot extend *Johnson* to § 924(c) in a successive § 2255. The standards for successive habeas petitions do not invert the second prong of plain error on direct appeal, *see, e.g., United States v. Graham*, ---F.3d---, 2016 WL ------ *--n.1, slip op. 5 n.1 (4th Cir. May 31, 2016) (en banc) (rejecting *Johnson* challenge to § 924(c) on direct appeal as barred under

3

second prong of plain error), and permit an unresolved extension of existing precedent to suffice to authorize a successive habeas petition—the tail end of § 2255 review. *See, e.g., United States v. Frady*, 456 U.S. 152, 166 (1982) ("We reaffirm the well-settled principle that to obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal."). The *possibility* that *Johnson* may later be extended to invalidate § 924(c)(3)(B) is not enough to support a successive habeas petition. Defendants seeking relief in a successive § 2255 must wait until settled precedent accepts the theory they advance, using a theory of relief that the Supreme Court itself has made retroactive. This requirement holds at the prima facie stage and thereafter, for even once a successive § 2255 motion is authorized, a defendant must still satisfy in the district court the standards in § 2255(h). *See, e.g., United States v. Winestock*, 340 F.3d 200, 205 (4th Cir. 2003) (after an appellate court authorizes successive habeas petition, the district "court must examine each claim and dismiss those that are barred under . . . § 2255 ¶ 8 [now § 2255(h)].").

Relying on the government's arguments about the limits on successive § 2255s and *Garner* and *Neville*, the First Circuit recently denied, after oral argument, an application for a successive § 2255 motion under *Johnson* challenging a § 924(c) conviction. *Turner v. United States*, no. 16-1145, (1st Cir. May 4, 2016). In keeping with the First Circuit's ruling in *Turner* and the Sixth and Fifth Circuits' rulings in *Garner* and *Neville*, this Court should not authorize defendants to seek to extend *Johnson* to 924(c) in the context of a successive § 2255. *See also In re Griffin*, ---F.3d---,

4

2016 WL 30002293, *5 (11th Cir. May 25, 2016) (denying application to file successive § 2255 that sought to extend *Johnson* to sentence imposed under mandatory guidelines and concluding extension was barred in successive habeas petition even apart from circuit precedent rejecting vagueness challenges to guidelines). Although the First Circuit has not ruled yet on the merits of whether *Johnson* invalidates § 924(c)(3)(B), the First Circuit correctly concluded that successive § 2255 motions may not be authorized for § 924(c) challenges under present law. Indeed, the only circuit specifically to rule on § 924(c)(3)(B)'s validity after *Johnson* has rejected such an extension of *Johnson*. *See United States v. Taylor*, 814 F.3d 340, 376-79 (6th Cir. 2016). Settled law does not establish the availability of relief in defendant's case.

Third, murder is correctly classified as a crime of violence under § 924(c)(3)(A), and defendant's arguments that murder could qualify as a crime of violence only under § 924(c)(3)(B) turns not on constitutional law and is instead a matter of statutory interpretation. But new rules of statutory interpretation fail to satisfy § 2255(h)(2). *In re Vial*, 115 F.3d at 1195; *In re Thomas*, 2016 WL 3000325 at *3.

Moreover, as explained more fully below, defendant is wrong as a matter of statutory interpretation. His narrow view of "physical force" under § 924(c) cannot be squared with Supreme Court precedent—such as the Court's recent acknowledgement that arson offenses involve "physical force." *Torres*, 136 S. Ct. at 1629-30 (majority); 1637 & n.1 (dissent). And in enacting the ACCA, Congress identified murder as an offense covered by the elements clause of the ACCA.

Congress concluded that offenses that have as "an element the use, attempted use or threatened use of physical force against a *person*" would "include such felonies involving physical force against a person such as murder, rape, assault, robbery, etc." *United States v. Mathis*, 963 F.2d 399, 407 (D.C. Cir. 1992) (quoting H.R. Rep. No. 849, 99th Cong., 2d Sess. 3 (1986)). The result is not different under § 924(c)(3)(A), which contains even *broader* language than the elements clause of the ACCA because § 924(c)(3)(A) expressly covers force against both persons and property.

Fourth, defendant has valid death sentences for his convictions under 21 U.S.C. § 848(e), which do not depend on a crime-of-violence classification. His challenge to separate § 924(c) convictions cannot be a basis for habeas relief. The facts that supported the § 924(c) convictions were appropriately before the jury and would have been before the jury regardless of the § 924(c) counts. A more forgiving harmlessness standard applies on collateral review, *United States v. Smith*, 723 F.3d 510, 512 (4th Cir. 2013) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)), and any error in imposing a consecutive sentence that follows a *now-final* death sentence is harmless on collateral review. Likewise, a defendant cannot maintain habeas litigation based on a special assessment. *United States v. Ross*, 801 F.3d 374, 381 (3d Cir. 2015) (A "special assessment does not constitute any meaningful restriction on" a defendant's "liberty, let alone a severe restriction cognizable under section 2255.").

## I.

Defendant and two codefendants were sentenced to death in 1993 after more than three weeks of trial and sentencing proceedings.  Their convictions and death sentences were affirmed on direct appeal.  *United States v. Tipton*, 90 F.3d 861 (4th Cir. 1996), *cert. denied*, 520 U.S. 1253 (1997).  And their challenges to their convictions and death sentences were also denied under § 2255.  *United States v. Roane*, 378 F.3d 382 (4th Cir. 2004), *cert. denied*, 546 U.S. 810 (2005).  Defendants remain today subject to valid death sentences.[1]

Defendant's criminal conduct was exceptionally serious—even for homicide defendants.  As this Court noted in defendant's direct appeal, the jury convicted him "of all seven of the capital murders with which he was charged under [21 U.S.C.] § 848(e)." *Tipton*, 90 F.3d at 869.  Defendant was "also convicted of conspiracy to possess cocaine base with the intent to distribute (21 U.S.C. § 846), engaging in a CCE (21 U.S.C. § 848(a)), eleven counts of committing acts of violence (including the seven killings charged under § 848(e)) in aid of racketeering activity (18 U.S.C. § 1959), five counts of using a firearm in relation to a crime of violence or drug trafficking offense (18 U.S.C. § 924(c)), and two counts of possession of cocaine base with the intent to distribute (21 U.S.C. § 841(a)(1))." *Tipton*, 90 F.3d at 869-70.

Notably, as both defendant's indictment and the jury instructions reflected, defendant's five convictions under § 924(c) each had multiple predicate offenses that

---

[1] No execution date has been set because of ongoing litigation over the federal lethal injection protocol.  *See, e.g., Roane v. Leonhart*, 741 F.3d 147 (D.C. Cir. 2014).

included both crimes of violence and drug-trafficking offenses. Defendant's § 924(c)

offenses are as follows:

| § 924(c) count | Date | Predicate offenses |
|---|---|---|
| Count 9 | Jan. 14, 1992 | Count 1 (21 U.S.C. § 846)<br>Count 8 (21 U.S.C. § 848(e)(1)(A))<br>Count 10 (18 U.S.C. § 1959) |
| Count 12 | Jan. 29, 1992 | Count 1 (21 U.S.C. § 846)<br>Count 11 (21 U.S.C. § 848(e)(1)(A))<br>Count 13 (18 U.S.C. § 1959) |
| Count 15 | Feb. 1, 1992 | Count 1 (21 U.S.C. § 846)<br>Count 14 (18 U.S.C. § 1959)<br>Count 16 (18 U.S.C. § 1959) |
| Count 20 | Feb. 1, 1992 | Count 1 (21 U.S.C. § 846)<br>Counts 17-19 (21 U.S.C. § 848(e)(1)(A))<br>Counts 21-23 (18 U.S.C. § 1959) |
| Count 26 | Feb. 19, 1992 | Count 1 (21 U.S.C. § 846)<br>Counts 24-25 (21 U.S.C. § 848(e)(1)(A))<br>Counts 27-30 (18 U.S.C. § 1959) |

In his application for a successive § 2255 motion, defendant challenges only his

convictions under § 924(c)—counts 9, 12, 15, 20, and 26. Again, he did not receive a

death sentence on those counts, and he fails to show that the existence of the § 924(c)

counts—as opposed to the facts supporting those counts—affected the death

sentence imposed for his convictions under § 848. Even if defendant could vacate the

§ 924(c) counts, that should have no effect on his death sentence and hence should

not provide a basis for successive habeas relief. But as explained next, defendant's

arguments fail for a series of additional grounds.

## II.

### 1.    *Defendant's § 924(c) counts are supported by valid drug-trafficking predicates not even arguably affected by* **Johnson.**

Defendant's application for a successive § 2255 should be denied because defendant still has valid *drug-trafficking* predicates for each of his § 924(c) convictions. Defendant cites to no authority that would authorize a successive challenge to those drug-trafficking predicates, and he barely acknowledges that his § 924(c) convictions had drug-trafficking predicates. But the indictment charged the drug-trafficking predicates for the § 924(c) counts; the jury instructions identified both crimes of violence *and drug-trafficking offenses* as predicates for the § 924(c) counts, trial tr. at 3222-23; and he was found guilty of the relevant drug-trafficking predicates.

Critically, both count 1, charging a violation of 21 U.S.C. § 846, and counts 8, 11, 17-19 , and 24-25, charging violations of 21 U.S.C. § 848(e)(1)(A), qualify as drug-trafficking offenses. Section 924(c)(2) defines a "drug-trafficking crime" for § 924(c). Section 924(c)(2) provides, "For purposes of this subsection, the term 'drug trafficking crime' means any felony punishable under the Controlled Substances Act (21 U.S.C. § 801 et seq.). . . ." Defendant's predicate offenses under 21 U.S.C. § 848(e)(1)(A) satisfy § 924(c)(2) because § 848(e) is a felony punishable under the Controlled Substances Act. *Cf. United States v. Nelson*, 484 F.3d 257 (4th Cir. 2007) (applying analogous reasoning that § 924(c) may count as a felony drug offense under § 841(b)(1)(B)). In short, defendant's § 924(c) convictions in counts 9, 12, 20, and 26

are all supported by convictions under § 848(e)(1)(A), as charged in counts 8, 11, 17, 18, 19, 24, and 25 of the indictment.

Defendant's § 924(c) conviction in count 15 is also supported by a predicate offense charged in count 1, a violation of 21 U.S.C. § 846. Section 846 is, of course, another violation of the Controlled Substances Act and hence counts as a drug-trafficking crime. Although this Court held in defendant's direct appeal that count 1 merged with another drug-trafficking offense, count 2, charging a violation of § 848, *see Tipton*, 90 F.3d at 891, that merger offers defendant no relief. Both § 846 charged in count 1 and § 848 charged in count 2 are drug-trafficking offenses, and regardless, a separate § 846 conviction need not stand as a separate offense to sustain the § 924(c) conviction. *See, e.g., United States v. Hopkins*, 310 F.3d 145, 152-53 (4th Cir. 2002) (affirming § 924(c) conviction where charged predicate was assault with a weapon under 18 U.S.C. § 111(b), even though jury convicted only on lesser included offense of § 111(a), assault without a weapon).

As noted above, even on direct appeal, this Court has rejected challenges to § 924(c) convictions based on *Johnson* when the § 924(c) conviction was supported by a drug-trafficking predicate offense. *Hare*, ---F.3d---, 2016 WL 1567051 at *10. And each of defendant's five § 924(c) convictions included a separate drug-trafficking offense listed in the indictment as predicates for each respective § 924(c), and the jury found defendant guilty of those drug-trafficking offenses. Specifically, defendant was convicted of the drug-trafficking crimes charged under 21 U.S.C. § 846 and

10

§ 848(e)(1)(A) in counts 1, 8, 11, 17, 18, 19, 24, and 25.  This point alone terminates

defendant's argument that he should be permitted to file a successive § 2255.  This

Court will not "authorize a successive § 2255 motion that is plainly barred as a matter

of law." *In re Vassell*, 751 F.3d at 271.  To the extent defendant quarrels with the jury

instructions, first, under this Court's precedent, the classification of an offense as a

crime of violence or drug-trafficking crime is for the court, not the jury, *United States v.*

*Adkins*, 937 F.2d 947, 950 n.2 (4th Cir. 1991), and second, a successive § 2255 cannot

be authorized for an alleged error in jury instructions.

> **2.    *Courts may not extend* Johnson *to other legal contexts outside the ACCA in a successive habeas petition.***

*Johnson* invalidated "the 'residual clause' *of the ACCA*," *Pakala v. United States*,

804 F.3d 139, 139 (1st Cir. 2015) (per curiam) (emphasis added), based on "[t]wo

features" that "conspire[d]" to make it vague:  (1) the difficulty of determining how

much risk is required, and (2) the application of a risk-based standard to a

hypothetical "ordinary case." *Johnson*, 135 S. Ct. at 2557, 2558.  The Supreme Court

emphasized, however, that its ruling should not be understood to raise doubts about

(much less invalidate) other laws using similar risk-based language.  *Id.* at 2561 ("The

Government and the dissent next point out that dozens of federal and state criminal

laws use terms like 'substantial risk,' 'grave risk,' and 'unreasonable risk,' suggesting

that to hold the residual clause unconstitutional is to place these provisions in

constitutional doubt. . . .  Not at all.").  *Welch* reaffirmed this point, emphasizing that

*Johnson* "cast no doubt on the many laws that 'require gauging the riskiness of conduct

in which an individual defendant engages in a particular occasion.'"  136 S. Ct. at 1261.   Because *Johnson* did not address § 924(c)(3)(B)'s residual clause, it did not invalidate that clause of its own force.  *See Taylor*, 814 F.3d at 378 (*Johnson* "stressed that its reasoning did not control other statutes that refer to predicate crimes"; rejecting vagueness challenge to Section 924(c)).

To be sure, *Johnson*'s reasoning provides an additional basis for challenging other differently worded residual clauses in different statutes, and some courts have extended *Johnson* in this manner.   *See United States v. Vivas-Ceja*, 808 F.3d 719, 723 (7th Cir. 2015) ("Applying *Johnson*'s reasoning here, we conclude that Section 16(b) is unconstitutionally vague."); *Dimaya v. Lynch*, 803 F.3d 1110, 1120 (9th Cir. 2015) (same).  Although the merits are not before the Court at this time, *see, e.g., Evans-Garcia v. United States*, 744 F.3d 235, 237 (1st Cir. 2014), it is enough to note that these decisions cannot bear the weight defendant assigns to them because they were decided on direct appeal (or on a petition for review of an agency determination), a setting where appellate courts appropriately decide whether to modify or refine precedent.  *See generally United States v. George*, 676 F.3d 249, 258 (1st Cir. 2012) ("[D]irect review is more defendant-friendly than post-judgment review.").  This is a successive collateral attack on a final judgment, however, and defendant must shoulder a far greater burden here out of respect for the heightened finality interests at stake.  *Id.* ("[A]n initial habeas petition is easier for a criminal defendant to litigate than a successive one.").  To meet that burden, it is not enough for defendant to

12

634a

argue what the law *should* be; rather, he must present a claim that is based on what the law *is* and has been recognized to be. Where a claim depends on the *extension* of precedent, it follows that authorization cannot be granted because the Court would need to announce a new rule of law for the first time in the defendant's own case, which it cannot do. *Cf. Tyler*, 533 U.S. at 667 (holding that the Supreme Court cannot "today" make a new rule retroactive in the defendant's own case for purposes of a successive application).

The statutes regulating successive § 2255 motions support this view. Acting in their gatekeeping capacity, the courts of appeals are not asked to conduct a plenary merits review in these cases; instead, they need only decide whether the defendant has made a "prima facie showing" that his claim satisfies one of two narrow sets of statutory criteria. 28 U.S.C. § 2244(b)(3)(C). And in making that determination, Congress has imposed strict procedural limitations: the proceedings are truncated, often non-adversarial, and subject to expedited disposition. 28 U.S.C. § 2244(b)(3)(D) (applications must generally be decided within 30 days). The 30-day time frame for decision in particular is evidence that Congress generally intended the courts of appeals, acting as gatekeepers, to make a quick up-or-down determination after comparing the defendant's allegations to the statutory conditions for authorization without the need to undertake difficult legal analysis. *See Ashley v. United States*, 266 F.3d 671, 673 (7th Cir. 2001) ("[s]hortness of time" for resolving successive applications "implies a mechanical process; all the court need do is look up an answer

13

in the United States Reports"); *cf. Tyler*, 533 U.S. at 664 (AEDPA's "stringent time limit" means that the courts of appeals should not have to undertake "the difficult legal analysis that can be required to determine questions of retroactivity in the first instance"). Accordingly, when an application depends on the extension of precedent rather than its application, authorization should be denied.

This Court should deny defendant's application because it is "clear as a matter of law," from both *Johnson*'s holding and its express disavowal of an intent to cast doubt on the constitutionality of other statutes, that defendant's "identified constitutional rule"—*i.e.*, *Johnson*'s rule invalidating the ACCA's residual clause— "does not apply" to defendant's situation because defendant is not challenging an ACCA-enhanced sentence. There may be reasonable arguments why the *Johnson* rule *should* be extended to a situation like defendant's, but that is insufficient to justify a successive collateral attack. *In re Garner* illustrates this point. Garner sought leave to file a successive collateral attack based on *Roper v. Simmons*, 543 U.S. 551 (2005), which held that the Eighth Amendment forbids the execution of a defendant who was 18 at the time of his crime. Although Garner conceded that he was more than 18 years old at the time of his crime, he argued that his death sentence was invalid under *Roper* because he had the mental age of a 14-year-old. The Sixth Circuit denied Garner's application because *Roper* had not articulated the rule of law upon which Garner's claim was based: "[t]he *Roper* Court did not hold that the Eighth Amendment prohibits a death sentence for an offender with a 'mental age' of less than 18. Rather,

14

*Roper* clearly held that a sentence of death may not be imposed upon an offender with a *chronological* age of less than 18." *Id.* at 535-536 (emphasis in original). And while the court acknowledged reasonable policy arguments supporting Garner's novel mental-age rule, "in this analysis," the court, acting as a gatekeeper, is "confined to a consideration of constitutional law as it presently stands," and because Garner's claim depended on a novel "extension of the law," Garner, by definition, had not made a *prima facie* showing. *Id.*; *see also In re Neville*, 440 F.3d 220 (5th Cir. 2006) (denying leave to file successive motion that sought an extension of a new rule). The same reasoning applies here. And nothing in *Welch* leads to a different result. Defendant's application should therefore be denied.

The denial of a defendant's application is without prejudice to his right to file a new application in the event the law changes. *See Hernandez v. United States*, 226 F.3d 839, 841 (7th Cir. 2000). The courts of appeals to consider *Johnson*'s applicability to statutes other than the ACCA have divided on that question, and the Fifth Circuit recently heard en banc argument on § 16(b)'s constitutionality after granting rehearing in *United States v. Gonzalez-Longoria*, 813 F.3d 225 (5th Cir. 2016). The existence of a circuit conflict creates a reasonable probability that the Supreme Court will grant certiorari, *see* S. Ct. R. 10(a), and that likelihood is enhanced by the fact that the conflict concerns the constitutionality of a federal statute. If and when the Supreme Court eventually grants review and holds that *Johnson* extends to statutes like § 924(c), then a defendant could, within a year of that new decision, file a new application

15

requesting leave to file a successive § 2255 motion invoking that new rule of law. Of course, even then, defendant's claim would fail for the other reasons stated in this response, but other defendants seeking to challenge a § 924(c) conviction could obtain authorization for a successive § 2255 then.

### 3.  *Murder offenses satisfy § 924(c)(3)(A), and regardless that question of statutory interpretation fails to satisfy the standard for a successive § 2255.*

No federal court has held after *Johnson* that murder is not a crime of violence. Defendant argues that murder does not satisfy § 924(c)(3)(A) because (1) murder may be accomplished through poisoning, (2) poisoning allegedly does not involve "physical force," and (3) murder is not divisible. He also argues that when a defendant is convicted via an aiding-and-abetting theory, the defendant's conviction falls outside § 924(c)(3)(A), and that maiming in aid of racketeering is not a crime of violence. The government will start with this last point.

Maiming in aid of racketeering under § 1959(a)(2) and murder in aid of racketeering under § 1959(a)(1) are separate offenses, have separate elements, and carry different penalties—a statutory maximum of 30 years versus a sentence of mandatory life. Notably, every one of defendant's § 924(c) counts was supported by a count expressly charging *murder* in aid of racketeering. Counts 10, 13, 14, 21, 22, 23 and 28 all charged murder in aid of racketeering; the jury found the requisite intentional killings, as the verdict forms show; and life was imposed for each count, a sentence above § 1959(a)(2)'s maximum.

16

The aiding-and-abetting argument fares no better. Aiding-and-abetting liability makes the aider and abettor liable to the same extent as the principal. *See, e.g., Rosemond v. United States*, 134 S. Ct. 1240, 1249 (2014). When a principal's § 924(c) offense involves the principal committing a predicate crime of violence that satisfies § 924(c)(3)(A), the principal's offense is complete, and the aider and abettor need not separately engage in conduct satisfying all the elements of § 924(c). *Id.* at 1246-47. If defendant's theory were right, literally no federal offense could satisfy § 924(c)(3)(A) because 18 U.S.C. § 2 can always apply to § 924(c)—as well as simply to the predicate crime of violence. But that is obviously false.

Defendant's argument that murder can be accomplished without force should be rejected too. First, defendant's narrow view of force would erroneously imply that murder has never been properly classified as a crime of violence under § 924(c)—even without *Johnson*. Section 924(c)(3)(B), like § 16(b), turns on "a substantial risk that *physical force* against the person or property of another may be used in the course of committing the offense." Section 924(e)(2)(B)(ii) of the ACCA, in contrast, applies to "any crime" that "involves conduct that presents a serious potential risk of *physical injury* to another." Because both prongs of the crime-of-violence definitions in § 924(c)(3) and § 16 turn on "physical force," defendant's theory that murder can be accomplished without force, particularly when combined with his nondivisibility argument, would imply that murder could never be a crime of violence under either statute even before *Johnson*. But again that is obviously wrong.

17

More fundamentally, defendant's theory cannot be reconciled with either Supreme Court precedent or the structure and legislative history of the statute. Courts "must, as usual, 'interpret the relevant words not in a vacuum, but with reference to the statutory context.'" *Torres*, 136 S. Ct. at 1626 (quoting *Abramski*, 134 S. Ct. 2259, 2267 (2014)). While interpreting the ACCA's elements clause, the Supreme Court has defined "physical force" as "force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010). But the Court did not limit the means of causing injury, and the Court later *rejected* a defendant's argument that "although '[p]oison may have 'forceful physical properties' as a matter of organic chemistry, . . . no one would say that a poisoner 'employs' force or 'carries out a purpose by means of force' when he or she sprinkles poison in a victim's drink.'" *United States v. Castleman*, 134 S. Ct. 1405, 1415 (2014). More recently, in concluding that arson may involve "physical force" within the meaning of § 16, the Supreme Court concluded that some state arson offenses would fall outside the scope of § 16 not because burning property does not involve "physical force," but because § 16 is limited to physical force against the "property of another." Hence, § 16 "would not reach arson in the many States defining that crime to include the destruction of one's own property." *Torres*, 136 S. Ct. at 1630. And as the dissent in *Torres* noted, this Court has already agreed with the broad reading of "physical force" under § 16. *Id.* at 1637 n.1 (citing *Mbea v. Gonzales*, 482 F.3d 276, 279 (4th Cir. 2007)).

The legislative history of § 924(c) confirms this reading. When the crime of violence standard was added to § 924(c) in 1984, *see, e.g., Bailey v. United States*, 516 U.S. 137, 147-48 (1995), a Senate report explained that § 924(c) would reach offenses such as bank robbery under 18 U.S.C. § 2113(a) and assaulting a federal officer under 18 U.S.C. § 111. "As amended by Part D, Section 924(c) provides for a mandatory, determinate sentence for a person who uses or carries a firearm during and in relation to any federal 'crime of violence,' including offenses such as bank robbery or assault on a federal officer." S. Rep. 98-225, 98th cong., 1st sess., 1984 U.S.S.C.A.N. 3182, 3491 (Aug. 4, 1983). These are offenses that satisfy the elements clause of § 924(c), as confirmed by the legislative history of the ACCA. As the D.C. Circuit has noted, Congress concluded that offenses that have as "an element the use, attempted use or threatened use of physical force against a *person*" would "include such felonies involving physical force against a person such as murder, rape, assault, robbery, etc." *Mathis*, 963 F.2d at 407 (quoting H.R. Rep. No. 849, 99th Cong., 2d Sess. 3 (1986)). It is profoundly unpersuasive that assaulting a federal officer under § 111 would count as a crime of violence under § 924(c)(3), but that murder does not.

Likewise, using the slight force needed to pull the trigger of a gun, causing death, constitutes a use of physical force. *Castleman*, 134 S. Ct. at 1415 (citing that example). *Cf. Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004) (interpreting § 16(a) and concluding that "a person would 'use . . . physical force against' another when pushing him"). Indeed, "Specifying that 'physical force' must rise to the level of bodily injury

19

does not suggest that without the qualification 'physical force' would consist of the merest touch.  It might consist, for example, of only that degree of force necessary to inflict pain—a slap in the face, for example." *Johnson*, 559 U.S. at 143.

Defendant's view would also gut the federal solicitation statute, 18 U.S.C. § 373, which was enacted in 1984 when Congress added the crime of violence standard to § 924(c), and § 373 has *solely* an elements clause.  Yet § 373 does cover solicitation to commit murder.  *United States v. Cardwell*, 433 F.3d 378 (4th Cir. 2005).  Defendant argues that felony-murder liability eliminates murder from § 924(c)(3)(A) and § 373.  But that is wrong.  First, the jury in this case was not instructed on felony-murder liability, illustrating its divisibility, and felony-murder law would satisfy § 924(c)(3)(A) even if applied through § 1959(a)(1).  *See, e.g., Wooden v. Commonwealth*, 284 S.E.2d 811 (Va. 1981).  Defendant's arguments also rely on *United States v. Torres-Miguel*, 701 F.3d 165 (4th Cir. 2012), and other cases that do not construe § 924(c), predate Supreme Court cases like *Castleman* and *Torres*, and would result, on defendant's view, in no federal offense ever satisfying § 924(c)(3)(A).  Even this Court's recent ruling in *United States v. McNeal*, 818 F.3d 141, 152-53 (4th Cir. 2016), holding that bank robbery satisfies § 924(c)(3)(A), would be wrong on defendant's view because bank robbery can be accomplished by shoving a bank teller to the ground while robbing the bank.  But both bank robbery and murder are paradigmatic crimes of violence, as Congress recognized.

Respectfully submitted,

Dana J. Boente
United States Attorney

By:         /s/
Richard D. Cooke
Assistant United States Attorney
U.S. Attorney's Office
Eastern District of Virginia
919 East Main Street, Suite 1900
SunTrust Building
Richmond, Virginia 23219
(804) 819-5471

## Certificate of Service

I certify that on June 1, 2016, I filed electronically the foregoing with the Clerk of the Court using the CM/ECF system, which will send notice of the filing to all counsel of record.

/s/
Richard D. Cooke
Assistant United States Attorney
U.S. Attorney's Office
Eastern District of Virginia
919 East Main Street, Suite 1900
SunTrust Building
Richmond, Virginia 23219
(804) 819-5471
richard.cooke@usdoj.gov



IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division



JUL 2 0 1992

CLERK, U.S. DISTRICT COURT
RICHMOND, VA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) CRIMINAL NO. 3:92CR68 |
| | ) |
| RICHARD TIPTON aka Whittey | ) 21 USC § 846 |
| (Counts 1-7, 11-30, 32-33) | ) Conspiracy |
| | ) (Count 1) |
| CORY JOHNSON aka "O" aka "CO" | ) |
| (Counts 1, 2, 8-32) | ) 21 USC § 848 |
| | ) Continuing Criminal Enterprise |
| JAMES H. ROANE, JR., aka "J.R." | ) (Count 2) |
| (Counts 1, 2, 5-16, 32) | ) |
| | ) 21 USC § 848(e)(1)(A) & 18 USC § 2 |
| VERNON LANCE THOMAS | ) Murder in Furtherance of CCE |
| aka Anthony Mack aka "V" | ) (Counts 3,5,8,11,17,18,19,24,25) |
| (Counts 1, 2, 11-16, 24-30, 32) | ) |
| | ) 18 USC § 924(c) |
| JERRY R. GAITERS | ) Use of Firearm in Relation to Crime of |
| (Counts 1, 17-23, 32) | ) Violence or Drug Trafficking Crime |
| | ) (Counts 6,9,12,15,20,26) |
| STERLING HARDY | ) |
| (Counts 1, 14-16, 32) | ) 18 USC §§ 1959 & 2 |
| | ) Violent Crimes in Aid of Racketeering |
| SANDRA REAVIS | ) (Counts 4,7,10,13,14,16,21-23,27-30) |
| (Count 1) | ) |
| | ) 21 USC § 841(a)(1) |
| | ) Distribution of Crack |
| | ) (Count 31) |
| | ) |
| | ) 21 USC § 841(a)(1) & 18 USC § 2 |
| | ) Possession w/Intent to Distribute Crack |
| | ) (Counts 32-33) |

00085

644a

SECOND SUPERSEDING INDICTMENT

JULY 1992 TERM - At Richmond

COUNT ONE

THE GRAND JURY CHARGES that from on or about January, 1989, the exact date being unknown to the grand jury, and continuously thereafter up to and including the filing of this indictment, in the Eastern District of Virginia, and elsewhere, the defendants, RICHARD TIPTON, aka Whittey, CORY JOHNSON, aka "O," aka "CO", VERNON LANCE THOMAS, aka Anthony Mack, aka "V", JAMES H. ROANE, JR., aka "J.R.", JERRY GAITERS, STERLING HARDY, and SANDRA REAVIS, did unlawfully, knowingly, and intentionally combine, conspire, confederate, and agree with each other and with other persons, both known and unknown to the grand jury to commit the following offenses against the United States of America:

1.     To knowingly, intentionally, and unlawfully possess with the intent to distribute, and to distribute, a Schedule II narcotic controlled substance, that is, at least fifty (50) grams or more of a mixture or substance described in Title 21, United States Code, Section 841(b)(1)(A)(ii), which contains cocaine base, in violation of Title 21, United States Code, Section 841(a)(1).

WAYS, MANNERS, AND MEANS OF THE CONSPIRACY

The ways, manners, and means by which the conspirators carried out the purpose of the conspiracy includes, but are not limited to, the following:

1.     It was part of the conspiracy that defendants and co-conspirators would cause cocaine to be purchased in New York City, and elsewhere, and transported to Richmond, Virginia, where the cocaine was to be distributed.

2

00086

645a

2.    It was further part of the conspiracy that once the defendants and co-defendants would receive cocaine in Richmond, Virginia, they would cook the cocaine in such a way to make it cocaine base ("crack" or "cook-em-up"), which cocaine was intended to be distributed on the streets of Richmond, Virginia.

3.    It was further part of the conspiracy that the defendants and co-defendants would induce other individuals to work for them selling the crack cocaine on the streets of Richmond, Virginia.

4.    It was further part of the conspiracy to engage in a pattern of violent activity, including murder, assaults, and threats of violence to further the goals of the conspiracy. To that end, members of the conspiracy bought, possessed, and transferred firearms, which firearms were used in their violent activities.

## OVERT ACTS

In furtherance of this conspiracy, and to bring about the objects and goals of the conspiracy, the defendants, co-conspirators, and unindicted co-conspirators committed overt acts in the Eastern District of Virginia and elsewhere, including, but not limited to, the following:

1.    In or about December, 1991, defendants RICHARD TIPTON, aka Whittey, and CORY JOHNSON, aka "O," aka "CO", assaulted an individual known to the grand jury over a cocaine debt.

2.    On or about January 5, 1992, RICHARD TIPTON, aka Whittey, murdered Douglas A. Talley.

3

00087

3.    On or about January 13, 1992, RICHARD TIPTON, aka Whittey, and JAMES H. ROANE, JR., aka "J.R." murdered Douglas Moody.

4.    On or about January 13, 1992, an individual known to the grand jury, disposed of the knife used by JAMES ROANE, JR., aka "J.R.", to kill Doug Moody.

5.    On or about January 14, 1992, members of the conspiracy caused an individual known to the grand jury to purchase one Glock handgun and two Tech 9mm handguns from Southern Gun World in Richmond, Virginia.

6.    On or about January 14, 1992, JAMES ROANE, JR., aka "J.R." and CORY JOHNSON, aka "O," aka "CO", murdered Peyton Maurice Johnson.

7.    On or about January 15, 1992, CORY JOHNSON, aka "O," aka "CO", distributed a certain amount of cocaine base ("crack" or "cook em up") in Richmond, Virginia.

8.    On or about January 29, 1992, RICHARD TIPTON aka Whittey, JAMES ROANE, JR., aka "J.R.", and CORY JOHNSON, aka "O," aka "CO", VERNON LANCE THOMAS, aka Anthony Mack, aka "V", murdered Louis J. Johnson, Jr., in Richmond, Virginia.

9.    On or about January 31, 1992, CORY JOHNSON, aka "O," aka "CO", assaulted an individual known to the grand jury over a drug debt, and solicited that individual to kill Dorothy Armstrong.

10.    On or about February 1, 1992, JAMES ROANE, JR., aka "J.R.", RICHARD TIPTON aka Whittey, CORY JOHNSON, aka "O," aka "CO", VERNON

4

00088

LANCE THOMAS, aka Anthony Mack, aka "V",and STERLING HARDY murdered Torrick Brown and shot Martha McCoy in Richmond, Virginia.

11.    On or about February 1, 1992, RICHARD TIPTON aka Whittey, CORY JOHNSON, aka "O," aka "CO", and JERRY GAITERS murdered Bobby Long, Anthony Carter, and Dorothy Mae Armstrong aka Mousey, in Richmond, Virginia.

12.    On or about February 2, 1992, defendants RICHARD TIPTON aka Whittey, CORY JOHNSON, aka "O," aka "CO", STERLING HARDY, VERNON LANCE THOMAS, aka Anthony Mack, aka "V", JAMES H. ROANE, JR., aka "J.R.", and JERRY GAITERS possessed with the intent to distribute crack cocaine.

13.    On or about February 13, 1992, STERLING HARDY solicited the murders of certain individuals.

14.    On or about February 19, 1992, RICHARD TIPTON, aka Whittey, CORY JOHNSON, aka "O," aka "CO", and VERNON LANCE THOMAS, aka Anthony Mack, aka "V", murdered Curtis Thorne, Linwood Chiles, and shot, seriously wounding, Gwendolyn Green and Priscilla Green, in Richmond, Virginia.

15.    On or about April 10, 1992, RICHARD TIPTON, aka Whittey, possessed with the intent to distribute crack cocaine in Richmond, Virginia.

(In violation of Title 21, United States Code, Section 846).

## COUNT TWO

THE GRAND JURY FURTHER CHARGES that from at least January, 1991, and continuously thereafter up to and including the date of the filing of this indictment, in the Eastern District of Virginia, and elsewhere, the defendants RICHARD TIPTON,

5

00089

648a

aka Whittey, CORY JOHNSON, aka "O", aka "CO," JAMES H. ROANE, JR., aka "JR," and VERNON LANCE THOMAS, aka Anthony Mack, aka "V", unlawfully, intentionally, and knowingly, did engage in a Continuing Criminal Enterprise, that is, they did violate Title 21, United States Code, Section 841 and 846, including, but not limited to, those violations alleged in the instant indictment, which are realleged and incorporated by reference herein, and did commit other violations of said statutes, which violations were part of a continuing series of violations of said statutes undertaken by RICHARD TIPTON, aka Whittey, CORY JOHNSON, aka "O", aka "CO," JAMES H. ROANE, JR., aka "JR," and VERNON LANCE THOMAS, aka Anthony Mack, aka "V", in concert with at least five other persons with respect to whom they occupied positions of organizer, supervisor, and manager, and from which continuing series of violations the defendant, RICHARD TIPTON aka Whittey, CORY JOHNSON, aka "O", aka "CO," JAMES H. ROANE, JR., aka "JR," and VERNON LANCE THOMAS, aka Anthony Mack, aka "V", obtained substantial income and resources.

(In violation of Title 21, United States Code, Section 848.)

## COUNT THREE

THE GRAND JURY FURTHER CHARGES that on or about January 5, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendant RICHARD TIPTON aka Whittey, while engaged in and working in furtherance of a Continuing Criminal Enterprise, 21 USC § 848(a), knowingly, intentionally, and unlawfully killed and counseled, commanded, induced, procured, and caused the intentional killing of Douglas A. Talley, and such killing resulted.

6

00090

649a

(In violation of Title 21, United States Code, Section 848(e)(1)(A) and Title 18, United States Code, Section 2.).

## COUNT FOUR

THE GRAND JURY FURTHER CHARGES that on or about January 5, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendant, RICHARD TIPTON aka Whittey, did knowingly, intentionally, and unlawfully cause the murder of Douglas Talley, as consideration for the receipt of, and as consideration for a promise and agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining and increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in narcotic or other dangerous drugs.

(In violation of Title 18, United States Code, Sections 1959 and 2.)

## COUNT FIVE

THE GRAND JURY FURTHER CHARGES that on or about January 13, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants RICHARD TIPTON aka Whittey, and JAMES H. ROANE, JR., aka "J.R.", while engaged in and working in furtherance of a Continuing Criminal Enterprise, 21 USC § 848(a), knowingly, intentionally, and unlawfully killed and counseled, commanded, induced, procured, and caused the intentional killing of Douglas Moody, and such killing resulted.

(In violation of Title 21, United States Code, Section 848(e)(1)(A) and Title 18, United States Code, Section 2.).

7

00091

## COUNT SIX

THE GRAND JURY FURTHER CHARGES that on or about January 13, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants RICHARD TIPTON, aka Whittey, and JAMES H. ROANE, JR., aka "J.R.", did knowingly, willfully, and unlawfully use a firearm, during and in relation to a crime of violence or a drug trafficking crime, which is a felony prosecutable in a court of the United States, that is, a violation of Title 21, United States Code, Section 846 and 848, and Title 18, United States Code, Section 1959, as set forth in Counts One, Five and Seven of this Indictment. (In violation of Title 18, United States Code, Sections 924(c) and 2.)

## COUNT SEVEN

THE GRAND JURY FURTHER CHARGES that on or about January 13, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON, aka Whittey, and JAMES H. ROANE, JR., aka "J.R.", did knowingly, intentionally, and unlawfully cause the murder of Douglas Moody, as consideration for the receipt of, and as consideration for a promise and agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining and increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in narcotic or other dangerous drugs.

(In violation of Title 18, United States Code, Sections 1959 and 2.)

8

00092

## COUNT EIGHT

THE GRAND JURY FURTHER CHARGES that on or about January 14, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants JAMES H. ROANE, JR., aka "J.R.", CORY JOHNSON, aka "O," aka "CO", and while engaged in and working in furtherance of a Continuing Criminal Enterprise, 21 USC § 848(a), knowingly, intentionally, and unlawfully killed and counseled, commanded, induced, procured, and caused the intentional killing of Peyton Maurice Johnson, and such killing resulted.

(In violation of Title 21, United States Code, Section 848(e)(1)(A) and Title 18, United States Code, Section 2.).

## COUNT NINE

THE GRAND JURY FURTHER CHARGES that on or about January 14, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants JAMES H. ROANE, JR., aka "J.R.", and CORY JOHNSON, aka "O," aka "CO", did knowingly, willfully, and unlawfully use a firearm, during and in relation to a crime of violence or a drug trafficking crime, which is a felony prosecutable in a court of the United States, that is a violation of Title 21, United States Code, Sections 846 and 848, and Title 18, United States Code, Section 1959, as set forth in Counts One, Eight and Ten of this Indictment.

(In violation of Title 18, United States Code, Sections 924(c) and 2.)

9

00093

## COUNT TEN

THE GRAND JURY FURTHER CHARGES that on or about January 14, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, JAMES H. ROANE, JR., aka "J.R." and CORY JOHNSON, aka "O," aka "CO", did knowingly, intentionally, and unlawfully cause the murder of Peyton Maurice Johnson, as consideration for the receipt of, and as consideration for a promise and agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining and increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in narcotic or other dangerous drugs.

(In violation of Title 18, United States Code, Sections 1959 and 2.)

## COUNT ELEVEN

THE GRAND JURY FURTHER CHARGES that on or about January 29, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants RICHARD TIPTON aka Whittey, JAMES H. ROANE, JR., aka "J.R.", CORY JOHNSON, aka "O," aka "CO", and VERNON LANCE THOMAS, aka Anthony Mack, aka "V", while engaged in and working in furtherance of a Continuing Criminal Enterprise, 21 USC § 848(a), knowingly, intentionally, and unlawfully killed and counseled, commanded, induced, procured, and caused the intentional killing of Louis J. Johnson, Jr., and such killing resulted.

(In violation of Title 21, United States Code, Section 848(e)(1)(A) and Title 18, United States Code, Section 2.).

10

00094

653a

## COUNT TWELVE

THE GRAND JURY FURTHER CHARGES that on or about January 29, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON aka Whittey, JAMES H. ROANE, JR., aka "J.R.", CORY JOHNSON, aka "O," aka "CO", and VERNON LANCE THOMAS, aka Anthony Mack, aka "V", did knowingly, willfully, and unlawfully use a firearm, during and in relation to a crime of violence or a drug trafficking crime, which is a felony prosecutable in a court of the United States, that is a violation of Title 21, United States Code, Sections 846 and 848, and Title 18, United States Code, Section 1959, as set forth in Counts One, Eleven and Thirteen of this Indictment.

(In violation of Title 18, United States Code, Sections 924(c) and 2.)

## COUNT THIRTEEN

THE GRAND JURY FURTHER CHARGES that on or about January 29, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON aka Whittey, JAMES H. ROANE, JR., aka "J.R.", CORY JOHNSON, aka "O," aka "CO", and VERNON LANCE THOMAS, aka Anthony Mack, aka "V", did knowingly, intentionally, and unlawfully cause the murder of Louis J. Johnson, Jr., as consideration for the receipt of, and as consideration for a promise and agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining and increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in

11

00095

654a

narcotic or other dangerous drugs.

(In violation of Title 18, United States Code, Sections 1959 and 2.)

## COUNT FOURTEEN

THE GRAND JURY FURTHER CHARGES that on or about February 1, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON aka Whittey, JAMES H. ROANE, JR., aka "J.R.", CORY JOHNSON, aka "O," aka "CO", VERNON LANCE THOMAS, aka Anthony Mack, aka "V", and STERLING HARDY, did knowingly, intentionally, and unlawfully cause the murder of Torrick Brown, Jr., as consideration for the receipt of, and as consideration for a promise and agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining and increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in narcotic or other dangerous drugs.

(In violation of Title 18, United States Code, Sections 1959 and 2.)

## COUNT FIFTEEN

THE GRAND JURY FURTHER CHARGES that on or about February 1, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON aka Whittey, JAMES H. ROANE, JR., aka "J.R.", CORY JOHNSON, aka "O," aka "CO", VERNON LANCE THOMAS, aka Anthony Mack, aka "V", and STERLING HARDY, did knowingly, willfully, and unlawfully use a firearm, during and in relation to a crime of violence or a drug trafficking crime, which is a felony prosecutable in a court

12

00096

of the United States, that is a violation of Title 21, United States Code, Section 846, and Title 18, United States Code, Section 1959, as set forth in Counts One, Fourteen and Sixteen of this Indictment.

(In violation of Title 18, United States Code, Sections 924(c) and 2.)

## COUNT SIXTEEN

THE GRAND JURY FURTHER CHARGES that on or about February 1, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON aka Whittey, JAMES H. ROANE, JR., aka "J.R.", CORY JOHNSON, aka "O," aka "CO", VERNON LANCE THOMAS, aka Anthony Mack, aka "V", and STERLING HARDY, did knowingly, intentionally, and unlawfully commit assault resulting in serious bodily injury to Martha McCoy, as consideration for the receipt of, and as consideration for a promise and agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining and increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in narcotic or other dangerous drugs.

(In violation of Title 18, United States Code, Sections 1959 and 2.)

## COUNT SEVENTEEN

THE GRAND JURY FURTHER CHARGES that on or about February 1, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants RICHARD TIPTON aka Whittey, CORY JOHNSON, aka "O," aka "CO", and JERRY GAITERS, while engaged in and working in furtherance of a Continuing Criminal Enterprise, 21

13

00097

USC § 848(a), knowingly, intentionally, and unlawfully killed and counseled, commanded, induced, procured, and caused the intentional killing of Bobby Long, and such killing resulted.

(In violation of Title 21, United States Code, Section 848(e)(1)(A) and Title 18, United States Code, Section 2.).

## COUNT EIGHTEEN

THE GRAND JURY FURTHER CHARGES that on or about February 1, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants RICHARD TIPTON aka Whittey, CORY JOHNSON, aka "O," aka "CO", and JERRY GAITERS, while engaged in and working in furtherance of a Continuing Criminal Enterprise, 21 USC § 848(a), knowingly, intentionally, and unlawfully killed and counseled, commanded, induced, procured, and caused the intentional killing of Anthony Carter, and such killing resulted.

(In violation of Title 21, United States Code, Section 848(e)(1)(A) and Title 18, United States Code, Section 2.).

## COUNT NINETEEN

THE GRAND JURY FURTHER CHARGES that on or about February 1, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants RICHARD TIPTON aka Whittey, CORY JOHNSON, aka "O," aka "CO", and JERRY GAITERS, while engaged in and working in furtherance of a Continuing Criminal Enterprise, 21 USC § 848(a), knowingly, intentionally, and unlawfully killed and counseled, commanded,

14

00098

657a

induced, procured, and caused the intentional killing of Dorothy Mae Armstrong, and such killing resulted.

(In violation of Title 21, United States Code, Section 848(e)(1)(A) and Title 18, United States Code, Section 2.).

## COUNT TWENTY

THE GRAND JURY FURTHER CHARGES that on or about February 1, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON aka Whittey, CORY JOHNSON, aka "O," aka "CO", and JERRY GAITERS, did knowingly, willfully, and unlawfully use a firearm, during and in relation to a crime of violence or a drug trafficking crime, which is a felony prosecutable in a court of the United States, that is a violation of Title 21, United States Code, Sections 846 and 848, and Title 18, United States Code, Section 1959, as set forth in Counts One, Seventeen, Eighteen & Nineteen and Twenty-One through Twenty-Three of this Indictment.

(In violation of Title 18, United States Code, Sections 924(c) and 2.)

## COUNT TWENTY-ONE

THE GRAND JURY FURTHER CHARGES that on or about February 1, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON aka Whittey, CORY JOHNSON, aka "O," aka "CO", and JERRY GAITERS, did knowingly, intentionally, and unlawfully cause the murder of Bobby Long, as consideration for the receipt of, and as consideration for a promise and agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity,

15

00099

and for the purpose of gaining entrance to and maintaining and increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in narcotic or other dangerous drugs.

(In violation of Title 18, United States Code, Sections 1959 and 2.)

## COUNT TWENTY-TWO

THE GRAND JURY FURTHER CHARGES that on or about February 1, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON aka Whittey, CORY JOHNSON, aka "O," aka "CO", and JERRY GAITERS, did knowingly, intentionally, and unlawfully cause the murder of Anthony Carter, as consideration for the receipt of, and as consideration for a promise and agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining and increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in narcotic or other dangerous drugs.

(In violation of Title 18, United States Code, Sections 1959 and 2.)

## COUNT TWENTY-THREE

THE GRAND JURY FURTHER CHARGES that on or about February 1, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON aka Whittey, CORY JOHNSON, aka "O," aka "CO", and JERRY GAITERS, did knowingly, intentionally, and unlawfully cause the murder of Dorothy Mae Armstrong, as consideration for the receipt of, and as consideration for a promise and

16

agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining and increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in narcotic or other dangerous drugs.

(In violation of Title 18, United States Code, Sections 1959 and 2.)

## COUNT TWENTY-FOUR

THE GRAND JURY FURTHER CHARGES that on or about February 19, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants RICHARD TIPTON, aka Whittey, VERNON LANCE THOMAS, aka Anthony Mack, aka "V", and CORY JOHNSON, aka "O," aka "CO", while engaged in and working in furtherance of a Continuing Criminal Enterprise, 21 USC § 848(a), knowingly, intentionally, and unlawfully killed and counseled, commanded, induced, procured, and caused the intentional killing of Curtis Thorne, and such killing resulted.

(In violation of Title 21, United States Code, Section 848(e)(1)(A) and Title 18, United States Code, Section 2.).

## COUNT TWENTY-FIVE

THE GRAND JURY FURTHER CHARGES that on or about February 19, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants RICHARD TIPTON, aka Whittey, VERNON LANCE THOMAS, aka Anthony Mack, aka "V", and CORY JOHNSON, aka "O," aka "CO", while engaged in and working in furtherance of a Continuing Criminal Enterprise, 21 USC § 848(a), knowingly,

17

00101

intentionally, and unlawfully killed and counseled, commanded, induced, procured, and caused the intentional killing of Linwood Chiles, and such killing resulted.

(In violation of Title 21, United States Code, Section 848(e)(1)(A) and Title 18, United States Code, Section 2.).

## COUNT TWENTY-SIX

THE GRAND JURY FURTHER CHARGES that on or about February 19, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON, aka Whittey, VERNON LANCE THOMAS, aka Anthony Mack, aka "V", and CORY JOHNSON, aka "O," aka "CO", did knowingly, willfully, and unlawfully use a firearm, during and in relation to a crime of violence or a drug trafficking crime, which is a felony prosecutable in a court of the United States, that is a violation of Title 21, United States Code, Section 846 and 848, and Title 18, United States Code, Section 1959, as set forth in Counts One, Twenty-Four, Twenty-Five and Twenty-Seven through Thirty of this Indictment.

(In violation of Title 18, United States Code, Sections 924(c) and 2.)

## COUNT TWENTY-SEVEN

THE GRAND JURY FURTHER CHARGES that on or about February 19, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON, aka Whittey, VERNON LANCE THOMAS, aka Anthony Mack, aka "V", and CORY JOHNSON, aka "O," aka "CO", did knowingly, intentionally, and unlawfully cause the murder of Curtis Thorne, as consideration for the receipt of, and as

18

00102

661a

consideration for a promise and agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining and increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in narcotic or other dangerous drugs.

(In violation of Title 18, United States Code, Sections 1959 and 2.)

## COUNT TWENTY-EIGHT

THE GRAND JURY FURTHER CHARGES that on or about February 19, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON, aka Whittey, VERNON LANCE THOMAS, aka Anthony Mack, aka "V", and CORY JOHNSON, aka "O," aka "CO", did knowingly, intentionally, and unlawfully cause the murder of Linwood Chiles, as consideration for the receipt of, and as consideration for a promise and agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining and increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in narcotic or other dangerous drugs.

(In violation of Title 18, United States Code, Sections 1959 and 2.)

## COUNT TWENTY-NINE

THE GRAND JURY FURTHER CHARGES that on or about February 19, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON, aka Whittey, VERNON LANCE THOMAS, aka Anthony Mack, aka "V", and CORY JOHNSON, aka "O," aka "CO", did knowingly, intentionally, and

19

00103

unlawfully cause the maiming of Priscilla Green, as consideration for the receipt of, and as consideration for a promise and agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining and increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in narcotic or other dangerous drugs.

(In violation of Title 18, United States Code, Sections 1959 and 2.)

## COUNT THIRTY

THE GRAND JURY FURTHER CHARGES that on or about February 19, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON, aka Whittey, VERNON LANCE THOMAS, aka Anthony Mack, aka "V", and CORY JOHNSON, aka "O," aka "CO", did knowingly, intentionally, and unlawfully cause the maiming of Gwendolyn Green, as consideration for the receipt of, and as consideration for a promise and agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining and increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in narcotic or other dangerous drugs.

(In violation of Title 18, United States Code, Sections 1959 and 2.)

## COUNT THIRTY-ONE

THE GRAND JURY FURTHER CHARGES that on or about January 15, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendant, CORY

20

JOHNSON, aka "O," aka "CO", did knowingly and intentionally distribute a Schedule II narcotic controlled substance, that is, a mixture and substance described in Title 21, United States Code, Section 841(b)(1)(A)(ii), which contains cocaine base, commonly known as "crack," or "cook em up."

(In violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.)

## COUNT THIRTY-TWO

THE GRAND JURY FURTHER CHARGES that on or about February 2, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON aka Whittey, CORY JOHNSON, aka "O," aka "CO", STERLING HARDY, VERNON LANCE THOMAS, aka Anthony Mack, aka "V", JAMES ROANE, JR., aka "J.R.", and JERRY GAITERS, did knowingly and intentionally possess with the intent to distribute a Schedule II narcotic controlled substance, that is, more than fifty (50) grams of a mixture and substance described in Title 21, United States Code, Section 841(b)(1)(A)(ii), which contains cocaine base, commonly known as "crack," or "cook em up."

(In violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.)

## COUNT THIRTY-THREE

THE GRAND JURY FURTHER CHARGES that on or about April 10, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD

21

00105

TIPTON aka Whittey, did knowingly and intentionally possess with the intent to distribute a Schedule II narcotic controlled substance, that is, more than fifty (50) grams of a mixture and substance described in Title 21, United States Code, Section 841(b)(1)(A)(ii), which contains cocaine base, commonly known as "crack," or "cook em up."

(In violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.)

A TRUE BILL:

ISI *Christopher F. Snead*
**FOREPERSON**

RICHARD CULLEN
UNITED STATES ATTORNEY

By:

Howard C. Vick, Jr.
Assistant United States Attorney

William Parcell
Special Assistant U.S. Attorney

22

00106

665a

3221

As I've outlined for you, those offenses are in Counts Four, Seven, Ten, Thirteen, Fourteen, Sixteen, Twenty-one, Twenty-two, Twenty-three, Twenty-seven, Twenty-eight, Twenty-nine, and Thirty of the indictment.

"Racketeering activity" means any act or threat involving murder or dealing in narcotic or other dangerous drugs. An enterprise includes any group of individuals associated in fact which is engaged in or the activities of which affect interstate commerce. The phrase "anything of pecuniary value" means anything of value in the form of money or negotiable instrument, a commercial interest, or anything else the primary significance of which is economic advantage.

It is charged in the indictment that within the Eastern District of Virginia, between on or about January 13th, 1992 and on or about February 19th, 1992, the defendants Richard Tipton, Cory Johnson, James H. Roane, Jr., Vernon Lance Thomas, and Sterling Hardy used a firearm during and in relationship -- or in relation to the commission of a crime of violence or a drug-trafficking crime.

Now again, as I mentioned with respect to some of the charges I discussed earlier, no single

05945

3222

defendant is charged in each of these counts. The verdict form will assist you in keeping track of which defendants are charged in which counts and in giving individual consideration to each defendant for each count against him or her.

Let me read the firearms statute. And the firearms violations are contained in Counts Six, Nine, Twelve, Fifteen, Twenty, and Twenty-six. Title 18 United States Code Section 924(c)(1) provides in pertinent part: Whoever during and in relation to any crime of violence or drug trafficking crime for which he may be prosecuted in a Court of the United States uses or carries a firearm shall be guilty of a crime against the United States.

In order to sustain its burden of proof of the crime of using or carrying a firearm during and in relation to a crime of violence or drug trafficking crime as charged in Counts Six, Nine, Twelve, Fifteen, Twenty, and Twenty-six of the indictment, the government must prove the following two essential elements beyond a reasonable doubt: One, the defendant committed the crime as charged in the indictment; and two, during and in relation to the commission of that crime, the defendant knowingly used or carried a firearm.

05946

3223

The term "crime of violence" means an offense that is a felony and has as one of its essential elements the use, the attempted use, or threatened use of physical force against the person or property of another, or an offense that by its very nature involves a substantial risk that such physical force may be used in committing the offense.

The term "drug trafficking crime" means an offense that is a felony and involves the distribution, manufacture, or importation of any controlled substances, or the conspiracy to distribute, import, or manufacture controlled substances.  The offenses alleged in Counts Three, Four, Five, Seven, Eight, Ten, Eleven, Thirteen, Fourteen, Sixteen, Seventeen, Eighteen, Nineteen, Twenty-one, Twenty-two, Twenty-three, Twenty-four, Twenty-five, Twenty-seven, Twenty-eight, Twenty-nine, Thirty, Thirty-one, Thirty-two, and Thirty-three are crimes of violence or drug trafficking crimes.

Title 18 United States Code Section 92(1)(a)(3) defines firearm is including any weapon which will or is designed to, or may readily be converted to expel a projectile by the action of an explosive, the frame or receiver of any such weapon.  You need not find that the firearm was loaded or that it was operable

05947

FILED:  June 6, 2016

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

No. 16-4
(3:92-cr-00068-JRS-2)
_____

In re: CORY JOHNSON

      Movant

_____

O R D E R

_____

Movant has filed a motion under 28 U.S.C. § 2244 for an order authorizing

the district court to consider a second or successive application for relief under 28

U.S.C. § 2255.

The court denies the motion.

Entered at the direction of Judge Wilkinson with the concurrence of Judge

King and Judge Duncan.

For the Court

/s/ Patricia S. Connor, Clerk